**Ralph C. Spooner, OSB No. 732880**
E-mail:  rspooner@smapc.com
SPOONER & MUCH, P.C.
530 Center Street N.E., Suite 712
Salem, OR 97301
Phone: 503-378-7777
Fax:    503-588-5899

Of Attorney for Defendant State Farm
Mutual Automobile Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TRAVIS BATTEN,<br><br>                Plaintiff,<br><br>                        vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>                Defendant. | Case No. 3:19-cv-01200-MC<br><br>***Consolidated with*:**<br>Case No. 1:18-cv-00676-MC<br><br>**DECLARATION OF RALPH C. SPOONER IN SUPPORT OF STATE FARM'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

I, Ralph C. Spooner, do hereby state as follows:

1.      I make this Declaration based on personal knowledge, and I am competent

to testify to the matters herein.

2.      I am one of the attorneys for defendant State Farm Mutual Automobile

Insurance Company ("State Farm") in the above-captioned case.

3.      I make this Declaration in support of State Farm's Motion for Partial

Summary Judgment.

4.      Attached as Exhibit 1 to this Declaration is a true and correct copy of State Farm policy, numbered 274 2245-A12-37E ("F150 policy"), issued to Travis R. Batten, that was in full force and effect on October 31, 2017.

5.      Attached as Exhibit 2 to this Declaration is a true and correct copy of State Farm policy, numbered 110 5075-C11-37A ("Pickup policy"), issued to Travis R. Batten, that was in full force and effect on October 31, 2017.

6.      Attached as Exhibit 3 to this Declaration is a true and correct copy of State Farm policy, numbered 065 0652-F10-37C ("4Runner policy"), issued to Travis R. Batten, that was in full force and effect on October 31, 2017.

7.      On December 4, 2018, State Farm tendered payment in the amount of $250,000 to plaintiff for UIM benefits under the 4Runner policy.

8.      Attached as Exhibit 4 to this Declaration is a true and correct copy of the $250,000 check issued under the 4Runner policy to plaintiff referenced in paragraph 7 above.

9.      Attached as Exhibit 5 to this Declaration is a true and correct copy of Senate Bill 411 ("SB 411") as introduced during the 2015 Regular Session of the Oregon State Legislature, as found on January 15, 2020 at https://olis.leg.state.or.us/liz/2015R1/Downloads/MeasureDocument/SB411/Introduced.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 2 – DECLARATION OF RALPH C. SPOONER IN SUPPORT OF STATE FARM'S MOTION FOR
        PARTIAL SUMMARY JUDGMENT

10.    Attached as Exhibit 6 to this Declaration is a true and correct copy of the "-1" amendment to SB 411 as recommended by the Senate Committee on Business And Transportation on February 17, 2015 during the 2015 Regular Session of the Oregon State Legislature, as found on January 15, 2020 at https://olis.leg.state.or.us/liz/2015R1/Downloads/MeasureDocument/SB411/Senate%20Amendments.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

DATED this 17th day of January, 2020.

s/ Ralph C. Spooner
RALPH C. SPOONER, OSB# 732880
Of Attorney for Defendant State Farm Mutual
Automobile Insurance Company
E-mail: rspooner@smapc.com
Fax: (503) 588-5899

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of the foregoing **DECLARATION OF**

**RALPH C. SPOONER IN SUPPORT OF STATE FARM'S MOTION FOR PARTIAL**

**SUMMARY JUDGMENT** to the following:

Michael Brian, OSB No. 710309
Brian Law Firm LLC
1611 E Barnett Rd
Medford, OR  97504
Fax: 541-770-5560
E-mail address: michael@brianlawfirm.com
   Attorney for *Plaintiff*

Travis Eiva, OSB No. 052440
Zemper Eiva Law, LLC
101 E Broadway, Suite 303
Eugene, OR 97401
Fax:  458-205-8658
E-mail address: travis@zempereiva.com
   Co-Counsel for *Plaintiff*

Donald J. Verfuth, OSB No. 066480
Stephanie M. Ries, OSB No 111734
Gordon Rees Scully Mansukhani, LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Fax" 206-689-2822
Email addresses: dverfuth@grsm.com,
sries@grsm.com
   Attorneys for *Defendant Illinois National Insurance Company*

☒    by emailing a copy to said attorney at the above email address with consent of counsel;
☐    by mailing a copy in a sealed, first-class, postage prepaid envelope, addressed to said attorneys at the above address and deposited in the U.S. Mail;
☒    by serving correct copies thereof, certified by me as such, to attorneys via the United States District Court for the District of Oregon's CM/ECF filing system.

DATED this 17th day of January, 2020.

s/ Ralph C. Spooner
RALPH C. SPOONER, OSB# 73288
Spooner & Much, P.C.
Attorneys for Defendant State Farm
E-mail: rspooner@smapc.com
Fax: (503) 588-5899



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 274 2245-A12-37E including any endorsements, if applicable, for the policy term(s) October 6, 2017 to January 12, 2018 and insuring TRAVIS R BATTEN based on available records.

The policy was in effect on the loss date of October 31, 2017.

_Jolene Sd_
_____
Jolene Sand
Underwriter
Date:___December 22, 2017___

1004516                                                         2000  143551  200  03-21-2012

Exhibit 1 - Page 1 of 62

**EXHIBIT**
**1**



**State Farm Mutual Automobile Insurance Company**

PO Box 5000
DuPont, WA 98327-5000

65610-1-A          MUTL  VOL

| DECLARATIONS PAGE |
| --- |

NAMED NSURED

AT2                    37-2134-1 A      A
                000771  0058
BATTEN, TRAVIS R

| POLICY NUMBER   274 2245-A12-37E |
| --- |
| POLICY PERIOD OCT 06 2017 to JAN 12 2018<br>12:01 A M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
█████015

AGENT

RORY WOLD INSURANCE AGENCY INC
2019 AERO WAY STE 101
MEDFORD, OR 97504-9789

PHONE: (541)773-1404  or  (541)773-1423

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
| --- | --- | --- | --- | --- | --- |
| 1978 | FORD | F150 SUPER | PICKUP | █████5781 | 603H50M000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
| --- | --- | --- |
| A P2 | Combined Premium | |
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000    $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P2 | Personal Injury Protec ion Coverage | |
| | (See Policy Schedule for Limits.) | |
| D | Comprehensive Coverage | |
| G | Collision Coverage - $250 Deductible | |
| H | Emergency Road Service Coverage | |
| U | Uninsured Motor Vehicle Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250 000    $500,000 | |

| Total premium for OCT 06 2017 to JAN 12 2018 | | This is not a bill. |
| --- | --- | --- |

### IMPORTANT MESSAGES

Replaced policy number 2742245-37D.

**Your total renewal premium for JUL 12 2017 to JAN 12 2018 is** █████

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details )

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9837B, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6091T      CERTIFICATE OF GUARANTEED RENEWAL.
6126BL     AMENDATORY ENDORSEMENT.
6937B.2    AMENDATORY ENDORSEMENT.

Agent:      RORY WOLD INSURANCE AGENCY INC
Telephone:  (541)773-1404
Prepared    OCT 10 2017      2134-AE6

See Reverse Side

00817 /02489
105-3866 2  04-2005  (o1a025hd)
IHSX0N   (o1a025te)          (o1a025tc)          (o1a025vc)

Exhibit 1 - Page 2 of 62

This policy is issued by State Farm Mutual Automobile Insurance Company.

### MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                                  President

B10

Exhibit 1 - Page 3 of 62



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Oregon**
Policy Form 9837B

Exhibit 1 - Page 4 of 62

# CONTENTS

**THIS POLICY** ................................................. 3

**DEFINITIONS** .............................................. 4

**LIABILITY COVERAGE** ........................... 5

Additional Definition ............................... 5
Insuring Agreement ................................... 6
Supplementary Payments ....................... 6
Limits ............................................................ 6
Nonduplication ......................................... 7
Exclusions .................................................. 7
If Other Liability Coverage Applies ................ 8
Required Out-of-State Liability Coverage ....... 9
Financial Responsibility Requirement .............. 9
Financial Responsibility Certification .............. 9

**PERSONAL INJURY PROTECTION COVERAGE** ............................................. 9

Additional Definitions ........................... 9
Insuring Agreement .................................. 11
Determining Medical Expenses ...................... 11
Arbitration ................................................. 11
Limits .......................................................... 11
Nonduplication ......................................... 12
Schedule ...................................................... 12
Exclusions .................................................. 12
If Other Personal Injury Protection Coverage or
Similar Vehicle Insurance Applies ................ 12
Our Payment Options ............................... 13

**MEDICAL PAYMENTS COVERAGE** .......... 14

Additional Definitions ....................... 14
Insuring Agreement ................................. 14
Determining Medical Expenses ..................... 15
Arbitration ................................................. 15
Limit .......................................................... 15
Nonduplication ......................................... 15
Exclusions .................................................. 15
If Other Medical Payments Coverage or
Similar Vehicle Insurance Applies ................ 16
Our Payment Options ............................... 17

**UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE** ............................... 17

Additional Definitions ....................... 17
Insuring Agreement ................................. 18

Deciding Fault and Amount ........................... 19
Arbitration ................................................. 19
Limits .......................................................... 19
Nonduplication ......................................... 20
Exclusions .................................................. 20
If Other Uninsured Motor Vehicle Coverage
of Any Kind Applies ................................. 21
Our Payment Options ............................... 22

**UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE** ............................................. 22

Additional Definitions ......................... 22
Insuring Agreement ................................. 23
Deciding Fault and Amount ........................... 23
Arbitration ................................................. 24
Limits .......................................................... 24
Nonduplication ......................................... 25
Exclusions .................................................. 25
If Other Uninsured Motor Vehicle
Coverage of Any Kind Applies ...................... 26
If Other Property Damage Coverage
of Any Kind Applies ................................. 27
Our Payment Options ............................... 27

**PHYSICAL DAMAGE COVERAGES** .......... 27

Additional Definitions ......................... 27
Insuring Agreements ............................... 28
Supplementary Payments – Comprehensive
Coverage and Collision Coverage ................ 29
Limits and Loss Settlement – Comprehensive
Coverage and Collision Coverage ................ 30
Limits – Car Rental and Travel Expenses
Coverage .................................................. 31
Nonduplication ......................................... 31
Exclusions .................................................. 31
If Other Physical Damage Coverage or Similar
Coverage Applies ..................................... 33
Financed Vehicle ...................................... 33
Our Payment Options ............................... 33

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ...................... 34

Additional Definitions ......................... 34
Insuring Agreement ................................. 34
Benefit ........................................................ 34

Exhibit 1 - Page 5 of 62

Death, Dismemberment and Loss of Sight Benefits Schedules............................................ 34
Exclusions.................................................... 34
Our Payment Options ................................... 35
**INSURED'S DUTIES**............................................ 35
Notice to Us of an Accident or Loss ............... 35
Notice to Us of a Claim or Lawsuit ................ 35
Insured's Duty to Cooperate With Us ............. 35
Questioning Under Oath ................................ 36
Other Duties Under the Physical Damage Coverages ...................................... 36
Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, and Death, Dismemberment and Loss of Sight Coverage................................... 36

**GENERAL TERMS** ...........................................37
When Coverage Applies...................................37
Where Coverage Applies..................................37
Newly Owned or Newly Leased Car...............37
Changes to This Policy....................................38
Premium.........................................................38
Renewal..........................................................39
Nonrenewal ...................................................39
Cancellation....................................................39
Assignment.....................................................39
Bankruptcy or Insolvency of the Insured ........39
Concealment or Fraud ....................................39
Our Right to Recover Our Payments...............40
Legal Action Against Us..................................40
Severability ....................................................41
Conformity With Oregon Statute.....................41

## THIS POLICY

1. This policy consists of:
   a. the most recently issued Declarations Page;
   b. the policy booklet version shown on that Declarations Page; and
   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:
   a. *us*; and
   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:
   a. based on payment of premium for the coverages chosen; and
   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:
      (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had:
         (a) vehicle insurance canceled or nonrenewed by an insurer; or
         (b) either:
            (i) a license to drive; or
            (ii) a vehicle registration suspended, revoked, or refused.
      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:
   a. the statements in 3.b. above are made by such named insured or applicant and are true; and
   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

3
9837B

Exhibit 1 - Page 6 of 62

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other forms of these words and phrases. Defined words and phrases are printed in boldface italics.

***Bodily Injury*** means bodily injury to a ***person*** and sickness, disease, or death that results from it.

***Car*** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

***Car Business*** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

***Fungi*** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

***Newly Acquired Car*** means a ***car*** newly ***owned by you***. A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newly acquired car*** is delivered to ***you***.

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***:

   a. ***you***;

   b. any ***resident relative***;

   c. any other ***person*** who resides primarily in ***your*** household; or

   d. an employer of any ***person*** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. ***you***; or

   b. any ***resident relative***

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

***Person*** means a human being.

***Private Passenger Car*** means:

1. a ***car*** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry ***persons*** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. that is not used for:

      (1) wholesale; or

      (2) retail

      pickup or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:

1. a relative of that named insured or his or her ***spouse*** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise

4
9837B

Exhibit 1 - Page 7 of 62

maintains his or her primary residence with that named insured; or

2. a minor who is being raised as a child of that named insured, his or her spouse, or a **person** described in 1. above.

See Personal Injury Protection Coverage for the definition of **Resident Relative** used there.

**Spouse** means a **person** legally united with another **person** either by:

1. marriage; or

2. domestic partnership

that is recognized by and valid under Oregon law.

**State Farm Companies** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

**Temporary Substitute Car** means a **car** that is in the lawful possession of the **person** operating it and that:

1. replaces **your car** for a short time while **your car** is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither **you** nor the **person** operating it own or have registered.

If a **car** qualifies as both a **non-owned car** and a **temporary substitute car**, then it is considered a **temporary substitute car** only.

**Trailer** means:

1. only those trailers:

   a. designed to be pulled by a **private passenger car**;

   b. not designed to carry **persons**; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a **car**.

**Us** means the Company issuing this policy as shown on the Declarations Page.

**We** means the Company issuing this policy as shown on the Declarations Page.

**You** or **Your** means the named insured or named insureds shown on the Declarations Page and includes the **spouse** of the first **person** shown as a named insured if the **spouse** resides primarily with that named insured.

See Personal Injury Protection Coverage for the definition of **You** or **Your** used there.

**Your Car** means the vehicle shown under "YOUR CAR" on the Declarations Page. **Your Car** does not include a vehicle that **you** no longer own or lease.

If a **car** is shown on the Declarations Page under "YOUR CAR", and **you** ask **us** to replace it with a **car** newly **owned by you**, then the **car** being replaced will continue to be considered **your car** until the earliest of:

1. the end of the 30th calendar day immediately following the date the **car** newly **owned by you** is delivered to **you**;

2. the date this policy is no longer in force; or

3. the date **you** no longer own or lease the **car** being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

**Insured** means:

1. **you** and **resident relatives** for:

   a. the ownership, maintenance, or use of:

      (1) **your car**;

      (2) a **newly acquired car**; or

      (3) a **trailer**; and

   b. the maintenance or use of:

      (1) a **non-owned car**; or

      (2) a **temporary substitute car**;

2. the first **person** shown as a named insured on the Declarations Page and that named insured's **spouse** who resides primarily with that named insured for the maintenance or use of a **car** that is **owned by**, or furnished by an employer to, a **person** who resides primarily in **your** household, but only if such **car** is neither **owned by**, nor furnished by an employer to, the first **person** shown as a named insured on the Declarations Page or that **person's spouse**;

5
9837B

Exhibit 1 - Page 8 of 62

3. any other *person* for his or her use of:

   a.  *your car*;
   b.  a *newly acquired car*;
   c.  a *temporary substitute car*; or
   d.  a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a.  damages an *insured* becomes legally liable to pay because of:

      (1) *bodily injury* to others; and
      (2) damage to property

      caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

   b.  attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

   c.  court costs charged to an *insured* and resulting from that part of a lawsuit:

      (1) that seeks damages payable under this policy's Liability Coverage; and
      (2) against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

   a.  investigate, negotiate, and settle any claim or lawsuit;
   b.  defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and
   c.  appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above,

the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

   a.  before a judgment, where owed by law, but only on that part of the judgment *we* pay; and
   b.  after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a.  pay for bonds that exceed this policy's applicable Liability Coverage limit;
   b.  furnish or apply for any bonds; or
   c.  pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a.  Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;
      (2) a mediation; or
      (3) a trial of a lawsuit; and

   b.  Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will

6
9837B

Exhibit 1 - Page 9 of 62

pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident. A *person's* damages for *bodily injury* are reduced by any amount that has already been paid as benefits under Personal Injury Protection Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
2. that have already been paid under any kind of Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;
2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;
4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply

to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;
10. FOR DAMAGE TO PROPERTY WHILE IT IS:
    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

    *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

Exhibit 1 - Page 10 of 62

13. WHILE USING A **TRAILER** WITH A MO-TOR VEHICLE IF THAT **INSURED** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

    a.  OFF PUBLIC ROADS AND BEING PRE-PARED IN PRACTICE FOR, OR OPERATED IN ANY RACING CON-TEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CON-TEST, OR ANY SIMILAR CONTEST; OR

    b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIV-ING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driv-ing, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same accident, then:

    a.  the Liability Coverage limits of such poli-cies will not be added together to deter-mine the most that may be paid; and

    b.  the maximum amount that may be paid from all such policies combined is the sin-gle highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. a.  The Liability Coverage provided by this policy applies as primary coverage for:

    (1)  the ownership, maintenance, or use of **your car** or a **trailer** attached to it; and

    (2)  the maintenance, or use of a **tempo-rary substitute car** or a **non-owned car** provided by a **person** in the busi-ness of selling, renting, leasing, or re-pairing motor vehicles to the **insured** in the course of that business but only if there is a written agreement be-tween the **insured** and that **person** that specifically indicates that the **insured** receiving the **temporary substitute car** or **non-owned car** is liable for any in-jury, death, or damage arising out of its use. Any similar coverage available

to the **person** providing the **temporary substitute car** or **non-owned car** is excess.

    b.  If:

    (1)  this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as primary coverage; and

    (2)  liability coverage provided by one or more sources other than the **State Farm Companies** also applies as pri-mary coverage for the same accident,

then **we** will pay the proportion of dam-ages payable as primary that **our** applica-ble limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as primary coverage.

    c.  If:

    (1)  more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Li-ability Coverage which applies to the accident as primary coverage; and

    (2)  liability coverage provided by one or more sources other than the **State Farm Companies** also applies as pri-mary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

    a.  If:

    (1)  this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as excess coverage; and

    (2)  liability coverage provided by one or more sources other than the **State Farm Companies** also applies as ex-cess coverage for the same accident,

then **we** will pay the proportion of dam-ages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as excess coverage.

8
9837B

Exhibit 1 - Page 11 of 62

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Requirement**

This policy provides liability coverage in compliance with, and is subject to, the Oregon Vehicle Code relating to financial responsibility requirements.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P1", "P2", "P3", "P4", or "P5" is shown under "SYMBOLS" on the Declarations Page. If a deductible applies, then it is shown on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*; and

3. any other *person* who suffers *bodily injury* while *occupying* or through being struck as a *pedestrian* by:

a. *your car*; or

b. a *newly acquired car* which is either the same type of vehicle as *your car* or is required to be insured by the *Personal Injury Protection Act*.

Such vehicle must be operated by *you* or with *your* permission and its use must be within the scope of such permission.

*Medical Services* mean expenses for necessary:

1. medical, surgical, X-ray, dental, ambulance, hospital and professional nursing; and

2. eyeglasses, hearing aids and prosthetic devices.

*Motor Vehicle* means a self propelled land motor vehicle or any type of trailer. It does not include a vehicle:

1. designed for use primarily off public roads except while on public roads;

2. operated on rails or crawler-treads; or

3. while located for use as a dwelling or other premises.

*Personal Injury Protection Act* means sections 742.520 through 742.544 of the Oregon Insurance Code and any amendments.

*Personal Injury Protection Benefits* mean accident related:

1. **Medical Expenses**, which are *reasonable medical expenses* for *medical services* incurred within one year of the date of the accident;

2. **Funeral Expenses**, which are reasonable and necessary expenses incurred within one year of the accident for funeral expenses;

3. **Loss of Income**, which covers the *insured's* actual loss of earnings, if the *insured* usually works for pay, because of inability to do the basic duties of his or her job.

9
9837B

Exhibit 1 - Page 12 of 62

The period of disability must continue for at least 14 days and ends on the earlier of:

a. the date the *insured* is able to return to his or her usual job; or

b. 52 weeks;

4. **Loss of Services Expenses**, which covers reasonable expenses actually incurred for essential services the *insured* would have performed without pay for his or her family, if the *insured* usually does not work for pay, except for the injury. The services must be performed by a *person* who is neither related to the *insured* nor a resident in the same household as the *insured*.

The period of disability must continue for at least 14 days and ends on the earlier of:

a. the date the *insured* is able to perform these essential services; or

b. the date payment has been made in the aggregate for 52 weeks; and

5. **Child Care Expenses** for an *insured* who is a parent of a minor child and is required to be hospitalized for a minimum of 24 hours.

Payments begin after the initial 24 hours of hospitalization and continue until the earlier of:

a. the date the *insured* can return to work, if he or she usually works for pay;

b. the date the *insured* is again able to perform essential services, if he or she does not usually work for pay; or

c. the date the limit shown in the **Schedule** for *Child Care Expenses* is exhausted.

*Pedestrian* means a *person* while not *occupying* a self-propelled vehicle other than a wheelchair or a similar low-powered motorized or mechanically propelled vehicle:

1. that is designed specifically for use by a physically disabled *person*; and

2. that is determined to be medically necessary for the occupant of the wheelchair or other low-powered vehicle.

*Reasonable Medical Expenses* mean fees for *medical services*:

1. if subject to Oregon Revised Statute section 742.525, billed in accordance with Oregon Revised Statute section 742.525; or

2. if not subject to Oregon Revised Statute section 742.525, that are the lowest of any one of the following charges:

a. the usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the

geographical area in which the charges were incurred;

b. The fee specified in any fee schedule:

(1) applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

(2) as prescribed or authorized by the law of the state where *medical services* are provided;

c. the fees agreed to by both the *insured's* healthcare provider and *us*; or

d. the fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

*Resident Relative* means a *person*, other than *you*, who resides primarily with a named insured on the Declarations Page and who is:

1. a relative of that named insured or his or her *spouse* by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a minor who is being raised as a child of that named insured, his or her *spouse*, or a *person* described in 1. above

*You* or *Your* means the named insured or named insureds shown on the Declarations Page and includes the *spouse* of that named insured if the *spouse* resides primarily with that named insured.

**Insuring Agreement**

*We* will pay *personal injury protection benefits* in accordance with the *Personal Injury Protection Act* for *bodily injury* to an *insured* caused by accident resulting from the occupancy, maintenance or use of a *motor vehicle*.

**Determining Medical Expenses**

*We* have the right to:

a. obtain and use:

(1) peer reviews; and

(2) medical bill reviews

to determine if the incurred charges are *reasonable medical expenses* for the *bodily injury* sustained;

b. use a medical examination of the injured *person* to determine if:

Exhibit 1 - Page 13 of 62

(1) the **bodily injury** was caused by a **motor vehicle** accident; and

(2) the expenses incurred are **reasonable medical expenses** for the **bodily injury** sustained; and

c. enter into a contract with a third party that has an agreement with the **insured's** healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to the amount the **insured** is entitled to collect for **personal injury benefits**, then the disagreement will be resolved, if both the **insured** and **we** mutually agree at the time of the disagreement, by arbitration.

2. Arbitration will take place in the county in which the **insured** resides unless the **insured** and **we** agree to another location.

   The **insured** and **we** will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the **insured** or **we** may petition a court that has jurisdiction to select the arbitrator.

   The cost of the arbitrator and other joint costs will be shared equally. However, the most the **insured** will pay for these shared costs is $100. **We** will pay the rest.

   **We** are not responsible for:

   a. attorney fees;

   b. expenses for witnesses or evidence; and

   c. expenses for transcripts of the arbitration

   that are incurred by the **insured**.

3. The arbitrator shall only decide whether incurred expenses and actual loss of earnings claimed by an **insured** are payable as **personal injury protection benefits** and the amount of such payment. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

   a. **us**; and

   b. the **insured**.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

The Personal Injury Protection Coverage limits are shown in the following **Schedule**.

1. The applicable amount shown below the Personal Injury Protection Coverage Symbol found on the Schedule that matches the Personal Injury Protection Coverage Symbol shown under "Symbols" on the Declarations Page for each **personal injury protection benefit** is the most **we** will pay for any one **insured** in any one accident.

   Any amount payable to **you** or **resident relatives** for Medical Expenses, Loss of Income, or Loss of Services Expenses will be reduced by any deductible that is shown on the Declarations Page. The deductible will be shared equally and be applied once per accident.

2. The most **we** will pay per month for Loss of Income is the lesser of:

   a. 70% of the actual loss of earnings from work or employment; or

   b. the amount shown in 3.(a) of the Schedule for **your** Personal Injury Protection Coverage Symbol.

3. The most **we** will pay for Child Care Expenses:

   a. per day is the amount shown in 5.(a) of the Schedule for **your** Personal Injury Protection Coverage Symbol; and

   b. subject to a. above, in total is the amount shown in 5.(b) of the Schedule for **your** Personal Injury Protection Coverage Symbol.

4. Any amount payable under Personal Injury Protection Coverage will be reduced by any amount paid or payable to or for the **insured** under any:

   a. workers' compensation law; or

   b. any similar medical or disability benefits law. This does not apply to benefits paid or payable under Medicare.

5. Personal Injury Protection Coverage will be excess over any other collateral benefits, including but not limited to insurance benefits, governmental benefits, or gratuitous benefits to which a **pedestrian insured** is entitled. This does not apply to:

   a. benefits paid or payable under Medicare; or

   b. **you** or **resident relatives**.

   If more than one policy applies, then 4. of **If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies** also applies in its entirety.

**Nonduplication**

The **insured** may not recover more than once for the same **personal injury protection benefit**.

11
9837B

Exhibit 1 - Page 14 of 62

**Schedule**

| Coverage Symbol | P1 | P2 | P3 | P4 | P5 |
|---|---|---|---|---|---|
| 1. Medical Expenses | $15,000 | $25,000 | $50,000 | $100,000 | $100,000 |
| 2. Funeral Expenses | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| 3. Loss of Income | | | | | |
| (a) Maximum monthly benefit | $1,250 | $1,250 | $1,250 | $1,250 | $1,500 |
| (b) Aggregate number of weeks | 52 | 52 | 52 | 52 | 52 |
| 4. Loss of Services Expenses | | | | | |
| (a) Maximum daily benefit | $30 | $30 | $30 | $30 | $30 |
| (b) Aggregate number of weeks | 52 | 52 | 52 | 52 | 52 |
| 5. Child Care Expenses | | | | | |
| (a) Daily benefit | $25 | $25 | $25 | $25 | $25 |
| (b) Maximum benefit | $750 | $750 | $750 | $750 | $750 |

**Exclusions**

THERE IS NO COVERAGE FOR:

1. AN *INSURED* WHO INTENTIONALLY CAUSES *BODILY INJURY* TO HIMSELF OR HERSELF;

2. *YOU* OR ANY *RESIDENT RELATIVE* FOR *BODILY INJURY* RESULTING FROM THE MAINTENANCE OR USE OF A *MOTOR VEHICLE*, INCLUDING A MOTORCYCLE OR MOPED, WHICH IS:

   a. *OWNED BY* OR FURNISHED OR AVAILABLE FOR REGULAR USE BY *YOU* OR ANY *RESIDENT RELATIVE*; AND

   b. NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

3. LOSS OF INCOME OR LOSS OF SERVICES EXPENSES FOR A *PEDESTRIAN* STRUCK OUTSIDE OF OREGON. This exclusion does not apply to *you*, *your spouse* or any *relative*;

4. AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

5. AN *INSURED* WHO IS PARTICIPATING IN ANY PREARRANGED OR ORGANIZED RACING OR SPEED CONTEST OR PRACTICE OR PREPARATION FOR ANY SUCH CONTEST;

6. AN *INSURED* WHO WILLFULLY CONCEALS OR MISREPRESENTS ANY MATERIAL FACT IN CONNECTION WITH A CLAIM FOR *PERSONAL INJURY PROTECTION BENEFITS*.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover the same *personal injury protection benefits* under both this coverage and other personal injury protection coverage, medical payments coverage, or similar vehicle insurance.

2. If Personal Injury Protection Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. a. The Personal Injury Protection Coverage provided by this policy applies as primary coverage:

   (1) for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it; or

   (2) for *you* and *resident relatives* who sustain *bodily injury* while a *pedestrian*.

12
9837B

Exhibit 1 - Page 15 of 62

b. If:

   (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then **we** will pay the proportion of **personal injury protection benefits** payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary.

c. If:

   (1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of **personal injury protection benefits** payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage.

a. If:

   (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides

Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then **we** will pay the proportion of **personal injury protection benefits** payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

b. If:

   (1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess for the same accident,

then the **State Farm Companies** will pay the proportion of **personal injury protection benefits** payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving **spouse**;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;

4. A **person** authorized by law to receive such payment; or

5. Any **person** or organization that provides the **medical services** and funeral services.

Exhibit 1 - Page 16 of 62

# MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives:*

   a. while *occupying*:

      (1) *your car*;

      (2) a *newly acquired car*;

      (3) a *temporary substitute car*;

      (4) a *non-owned car*; or

      (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

   b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used within the scope of *your* consent.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

   b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident if:

   a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

14
9837B

Exhibit 1 - Page 17 of 62

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. Arbitration will take place in the county in which the *insured* resides unless the *insured* and *we* agree to another location.

   The *insured* and *we* will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the arbitrator.

   The cost of the arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

   *We* are not responsible for:

   a. attorney fees;

   b. expenses for witnesses or evidence; and

   c. expenses for transcripts of the arbitration

   that are incurred by the *insured*.

3. The arbitrator shall only decide whether incurred charges are *medical expenses*. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or any kind of Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

15
9837B

Exhibit 1 - Page 18 of 62

b. any *resident relative*

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

16
9837B

Exhibit 1 - Page 19 of 62

then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

      then **we** will pay the proportion of **medical expenses** and funeral expenses payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

      then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving **spouse**;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;

4. A **person** authorized by law to receive such payment; or

5. Any **person** or organization that provides the **medical services** or funeral services.

## UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE

This policy provides Uninsured Motor Vehicle Bodily Injury Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;

2. **resident relatives**;

3. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **non-owned car** operated by:

      (1) a **person** shown as a named insured on the Declarations Page; or

      (2) a **spouse** of a **person** shown as a named insured on the Declarations Page if the **spouse** resides primarily with such **person**.

   Such vehicle must be used within the scope of **your** consent. Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

17
9837B

Exhibit 1 - Page 20 of 62

***Stolen Vehicle*** means either ***your car*** or a ***newly acquired car*** that is being operated without ***your*** consent by a ***person*** who does not have collectible motor vehicle bodily injury liability insurance.

***Uninsured Motor Vehicle*** means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or

   b. insured or bonded for bodily injury liability at the time of the accident;

      (1) but:

         (a) the limits are less than required by the financial responsibility law of Oregon; or

         (b) the insuring company:

            (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

            (ii) is or becomes insolvent; or

      (2) whose limits of insurance and self-insurance for bodily injury liability from all sources:

         (a) are less than the Uninsured Motor Vehicle Bodily Injury Coverage limits of this policy; or

         (b) have been reduced by payments to ***persons*** other than the ***insured*** to less than the Uninsured Motor Vehicle Bodily Injury Coverage limits of this policy;

2. the owner and driver of which remain unknown and which causes ***bodily injury*** to the ***insured***. If there is no physical contact between that land motor vehicle and the ***insured*** or the vehicle the ***insured*** is ***occupying***, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

   a. the ***insured***; or

   b. any other ***person*** who has a claim under this coverage; or

3. which is a ***stolen vehicle***.

***Uninsured Motor Vehicle*** does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a ***stolen vehicle***.

2. ***owned by***, or furnished or available for the regular or frequent use of ***you***;

3. ***owned by***, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. ***owned by*** or rented to any government or any of its political subdivisions or agencies;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

**Insuring Agreement**

1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** must be:

   a. sustained by an ***insured***; and

   b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle.

2. ***We*** will pay only if:

   a. the limits of liability under any bodily injury liability bonds or policies applicable at the time of the accident:

      (1) have been exhausted by payment of judgments or settlements; or

      (2) have been offered to the ***insured*** in settlement and ***we*** have refused ***our*** written consent for settlement, but the ***insured*** protects ***our*** right of subrogation to the claim against the tortfeasor; or

   b. The ***insured*** is offered a settlement less than the limits of the applicable bodily injury liability coverage and gives ***us*** credit for the realized and unrealized portion of the bodily injury liability limits as if the full limits had been received and ***we*** have either:

      (a) given ***our*** written consent for settlement; or

      (b) refused ***our*** written consent for settlement, but the ***insured*** protects ***our*** right of subrogation to the claim against the tortfeasor.

**Deciding Fault and Amount**

1. a. The ***insured*** and ***we*** must agree to the answers to the following two questions:

      (1) Is the ***insured*** legally entitled to recover compensatory damages from the owner or driver of the ***uninsured motor vehicle***?

18
9837B

Exhibit 1 - Page 21 of 62

(2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then:

(1) the disagreement may, if both the *insured* and *we* mutually agree at the time of the disagreement, be resolved by arbitration as described in **Arbitration** below; or

(2) the *insured* shall:

(a) file a lawsuit, in a state or federal court that has jurisdiction, against:

(i) *us*;

(ii) the owner and driver of the *uninsured motor vehicle*, if known; and

(iii) any other party or parties who may be legally liable for the *insured's* damages;

(b) consent to a jury trial if requested by *us*;

(c) agree that *we* may contest the issues of liability and the amount of damages; and

(d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Arbitration**

1. Arbitration will take place:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. another location, if both the *insured* and *we* agree.

2. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

The *insured* and *we* will each pay the cost of our own arbitrator and will pay fully:

a. attorney fees;

b. expenses for witnesses or evidence; and

c. expenses for transcripts of the arbitration

that either of us incur.

The cost of the third arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

3. The arbitrators shall only decide:

a. whether the *insured* is legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

b. the amount of damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*.

Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on the *insured* and *us*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

1. The Uninsured Motor Vehicle Bodily Injury Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury Coverage – Bodily Injury Limits – Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

19
9837B

Exhibit 1 - Page 22 of 62

(1) the limit shown under "Each Person" reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*; or

(2) the amount of all damages resulting from that *bodily injury* reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident."

2. These limits are reduced by:

a. the sum of all motor vehicle liability insurance proceeds paid and available to be paid to:

(1) or for the *insured*;

(2) an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

(3) the *insured's* medical providers; and

(4) attorneys as attorney fees on the claim of an *insured*.

b. the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy.

3. These Uninsured Motor Vehicle Bodily Injury Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Bodily Injury Coverage any damages:

1. that have already been paid to or for the *insured* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as benefits under Personal Injury Protection Coverage of this policy or other personal injury protection coverage; or

4. that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

This exclusion does not apply if *we* have refused *our* consent for settlement, in writing, and the *insured* protects *our* right of subrogation to the claim of the tortfeasor;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* or furnished for the regular use of one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

20
9837B

Exhibit 1 - Page 23 of 62

4. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1. If Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy and any kind of Uninsured Motor Vehicle Coverage provided by one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as primary coverage for *bodily injury* sustained by an *insured* while *occupying your car* or a certified self-insured vehicle under ORS 806.140 without available primary coverage.

    a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

    then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

    b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

    then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as excess coverage, but only to the extent the limit of this policy or the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above exceeds the primary coverage.

    a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

    then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

    b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

Exhibit 1 - Page 24 of 62

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving *spouse*;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE

This policy provides Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage if "UI" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

    a. *your car*;

    b. a *newly acquired car*;

    c. a *temporary substitute car*; or

    d. a *non-owned car* operated by:

      (1) a *person* shown as a named insured on the Declarations Page; or

      (2) a *spouse* of a *person* shown as a named insured on the Declarations Page if the *spouse* resides primarily with such *person*.

    Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Property Damage* – means damage to *your car* or a *newly acquired car*. *Property Damage* does not include loss of use.

*Stolen Vehicle* means either *your car* or a *newly acquired car* that is being operated without *your* consent by a *person* who does not have collectible motor vehicle bodily injury liability insurance.

*Uninsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

    a. not insured or bonded for bodily injury liability and property damage liability at the time of the accident; or

    b. insured or bonded for bodily injury liability and property damage liability at the time of the accident;

      (1) but:

        (a) the limits are less than required by the financial responsibility law of Oregon; or

        (b) the insuring company:

          (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

          (ii) is or becomes insolvent; or

      (2) with respect to *bodily injury* only, whose limits of insurance and self-insurance for bodily injury liability from all sources:

        (a) are less than the Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* of this policy; or

        (b) have been reduced by payments to *persons* other than the *insured* to less than the Underinsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* of this policy;

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured* or *property damage*. If there is no physical

22
9837B

Exhibit 1 - Page 25 of 62

contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

a.   the *insured*;

b.   any other *person* who has a claim under this coverage; or

c.   *you*, the driver, or any passenger in *your car* of a *newly acquired car* as to *property damage*; or

3.   which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1.   whose ownership, maintenance, or use is provided Liability Coverage by this policy.  This does not apply to a *stolen vehicle*;

2.   *owned by*, or furnished or available for the regular or frequent use of *you*;

3.   *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4.   *owned by* or rented to any government or any of its political subdivisions or agencies;

5.   designed for use primarily off public roads except while on public roads; or

6.   while located for use as a dwelling or other premises.

**Insuring Agreement**

1.   *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

a.   sustained by an *insured*; and

b.   caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

2.   *We* will pay compensatory damages for *property damage you* are legally entitled to recover from the owner or driver of an *uninsured motor vehicle* which is not a *stolen vehicle*.  The *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

3.   *We* will pay only if:

a.   the limits of liability under any bodily injury liability bonds or policies applicable at the time of the accident:

(1)   have been exhausted by payment of judgments or settlements; or

(2)   have been offered to the *insured* in settlement and *we* have refused *our* written consent for settlement, but the *insured* protects *our* right of subrogation to the claim against the tortfeasor; or

b.   The *insured* is offered a settlement less than the limits of the applicable bodily injury liability coverage and gives *us* credit for the realized and unrealized portion of the bodily injury liability limits as if the full limits had been received and *we* have either:

(a)   given *our* written consent for settlement, or

(b)   refused *our* written consent for settlement, but the *insured* protects *our* right of subrogation to the claim against the tortfeasor.

**Deciding Fault and Amount**

1.   a.   The *insured* and *we* must agree to the answers to the following two questions:

(1)   Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

(2)   If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

b.   If there is no agreement on the answer to either question in 1.a. above, then:

(1)   the disagreement may, if both the *insured* and *we* mutually agree at the time of the disagreement, be resolved by arbitration as described in **Arbitration** below; or

(2)   the *insured* shall:

(a)   file a lawsuit, in a state or federal court that has jurisdiction, against:

(i)   *us*;

(ii)   the owner and driver of the *uninsured motor vehicle*, if known; and

(iii)   any other party or parties who may be legally liable for the *insured's* damages;

23
9837B

Exhibit 1 - Page 26 of 62

(b) consent to a jury trial if requested by *us*;

(c) agree that *we* may contest the issues of liability and the amount of damages; and

(d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Arbitration**

1. Arbitration will take place:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. another location, if both the *insured* and *we* agree.

2. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

The *insured* and *we* will each pay the cost of our own arbitrator and will pay fully:

a. attorney fees;

b. expenses for witnesses or evidence; and

c. expenses for transcripts of the arbitration

that either of us incur.

The cost of the third arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

3. The arbitrators shall only decide:

a. whether the *insured* is legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

b. the amount of damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*.

Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a classwide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on the *insured* and *us*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

1. a. **Bodily Injury**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Bodily Injury Limits – Each Person, Each Accident".

(1) The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(a) the limit shown under "Each Person" reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*; or

(b) the amount of all damages resulting from that *bodily injury* reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*.

24
9837B

Exhibit 1 - Page 27 of 62

(2) Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident."

b. **Property Damage**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *property damage* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Property Damage Limit – Each Accident".

The limit shown is the most *we* will pay for all *property damage* resulting from any one accident.

2. These limits are reduced by:

a. the sum of all motor vehicle liability insurance proceeds paid and available to be paid to:

(1) or for the *insured*;

(2) an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

(3) the *insured's* medical providers; and

(4) attorneys as attorney fees on the claim of an *insured*.

b. the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy.

3. These Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage any damages:

1. that have already been paid to or for the *insured* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law;

3. that have already been paid as benefits under Personal Injury Protection Coverage of this policy or any other personal injury protection coverage;

4. that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy; or

5. that have already been paid under any policy of property insurance

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE*.

This exclusion does not apply if *we* have refused *our* consent for settlement, in writing, and the *insured* protects *our* right of subrogation to the claim of the tortfeasor;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* or furnished for the regular use of one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

25
9837B

Exhibit 1 - Page 28 of 62

b.   A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c.   ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5.   FOR PUNITIVE OR EXEMPLARY DAMAGES;

6.   FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7.   FOR THE FIRST:

a.   $300 OF **PROPERTY DAMAGE** RESULTING FROM AN ACCIDENT WITH A LAND MOTOR VEHICLE WHOSE OWNER OR DRIVER REMAINS UNKNOWN; OR

b.   $200 OF **PROPERTY DAMAGE** RESULTING FROM AN ACCIDENT WITH ANY OTHER LAND MOTOR VEHICLE.

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1.   If Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy and Uninsured Motor Vehicle Coverage of any kind provided by one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury** or **property damage**, then:

a.   such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b.   the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2.   The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as primary coverage for **bodily injury** sustained by an **insured** while **occupying your car** or a certified self-insured vehicle under ORS 806.140 without available primary coverage.

a.   If:

(1)   this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

(2)   uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

b.   If:

(1)   more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

(2)   uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

3.   Except as provided in 2. above, the Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as excess coverage, but only to the extent the limit of this policy or the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above exceeds the primary coverage.

a.   If:

(1)   this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

(2)   uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

26
9837B

Exhibit 1 - Page 29 of 62

b.  If:

(1)  more than one vehicle policy issued to *you* or any *resident relative* by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

(2)  uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

**If Other Property Damage Coverage of Any Kind Applies**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as excess coverage to any kind of coverage which applies to *property damage* but only in the amount by which it exceeds that other coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving *spouse*;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1.  Comprehensive Coverage if "D";

2.  Collision Coverage if "G";

3.  Emergency Road Service Coverage if "H";

4.  Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1.  *your car*;

2.  a *newly acquired car*;

3.  a *temporary substitute car*;

4.  a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5.  a *non-owned car* while it is:

a.  being driven by an *insured*; or

b.  in the custody of an *insured* if at the time of the *loss* it is:

(1)  not being driven; or

(2)  being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

6.  a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1.  the daily rental rate;

2.  mileage charges; and

3.  related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1.  direct, sudden, and accidental damage to; or

2.  total or partial theft of

a *covered vehicle*.

27
9837B

Exhibit 1 - Page 30 of 62

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

**1. Comprehensive Coverage**

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us*; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

         (b) ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

**2. Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

**3. Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

**4. Car Rental and Travel Expenses Coverage**

   **a. Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car*

28
9837B

Exhibit 1 - Page 31 of 62

***business*** while ***your car*** or a ***newly ac-
quired car*** is:

(1) not drivable; or

(2) being repaired

as a result of a ***loss*** which would be pay-
able under Comprehensive Coverage or
Collision Coverage.

***We*** will pay this ***daily rental charge*** in-
curred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a re-
sult of the ***loss***; or

    (b) the vehicle is left at a repair facil-
ity if the vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been re-
paired or replaced;

    (b) the date ***we*** offer to pay for the ***loss***
if the vehicle is repairable but ***you***
choose to delay repairs; or

    (c) five days after ***we*** offer to pay for
the ***loss*** if the vehicle is:

        (i) a total loss as determined by
***us***; or

        (ii) stolen and not recovered.

The amount of any such ***daily rental
charge*** incurred by ***you*** must be reported
to ***us*** before ***we*** will pay such amount.

**b.   Travel Expenses**

***We*** will pay expenses for commercial
transportation, lodging, and meals if ***your
car*** or a ***newly acquired car*** is not drivable
as a result of a ***loss*** which would be pay-
able under Comprehensive Coverage or
Collision Coverage.  The ***loss*** must occur
more than 50 miles from ***your*** home. ***We***
will only pay these expenses if they are in-
curred by:

(1) an ***insured*** during the period that:

    (a) starts after the ***loss*** occurs; and

    (b) ends on the earlier of:

        (i) the ***insured's*** arrival at his or
her destination or home if the
vehicle is left behind for re-
pairs; or

        (ii) the repair of the vehicle if the
***insured*** waits for repairs be-
fore continuing on to his or
her destination or returning
home; and

    (2) ***you***, or any ***person you*** choose, to
travel to retrieve the vehicle and drive
it to either the original destination or
***your*** home if the vehicle was left be-
hind for repairs.

These expenses must be reported to ***us*** be-
fore ***we*** will pay such incurred expenses.

**c.   Rental Car – Repayment of Deductible
Expense**

***We*** will pay the comprehensive deductible
or collision deductible an ***insured*** is re-
quired to pay the owner of a ***car*** rented
from a ***car business***.

**Supplementary Payments – Comprehensive
Coverage and Collision Coverage**

If the ***covered vehicle*** sustains ***loss*** for which ***we***
make a payment under Comprehensive Coverage or
Collision Coverage, then ***we*** will pay reasonable
expenses incurred to:

1.  tow the ***covered vehicle*** immediately after the ***loss***:

    a.  for a reasonable distance from the location of
the ***loss*** to any one repair facility chosen by
an ***insured*** or the owner of the ***covered vehi-
cle***, if the ***covered vehicle*** is not drivable; or

    b.  to any one repair facility or commercial
storage facility, neither of which was cho-
sen by an ***insured*** or the owner of the ***cov-
ered vehicle***. ***We*** will also pay reasonable
expenses incurred to tow the ***covered vehi-
cle*** for a reasonable distance from this facil-
ity to any one repair facility chosen by an
***insured*** or the owner of the ***covered vehicle***,
if the ***covered vehicle*** is not drivable;

2.  store the ***covered vehicle***, if it is not drivable
immediately after the ***loss***, at:

    a.  any one repair facility or commercial stor-
age facility, neither of which was chosen
by an ***insured*** or the owner of the ***covered
vehicle***; and

    b.  any one repair facility chosen by the owner
of the ***covered vehicle***, and ***we*** determine
such vehicle is a total loss.

If the owner of the ***covered vehicle*** consents,
then ***we*** may move the ***covered vehicle*** at ***our***
expense to reduce storage costs.  If the owner
of the ***covered vehicle*** does not consent, then
***we*** will pay only the storage costs that would
have resulted if ***we*** had moved the damaged
***covered vehicle***; and

3.  clean up debris from the ***covered vehicle*** at the
location of the ***loss***.  The most ***we*** will pay to
clean up the debris is $250 for any one ***loss***.

29
9837B

Exhibit 1 - Page 32 of 62

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

      (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

         (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

            (iii) a combination of (i) and (ii) above.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

            *You* agree with *us* that the repair estimate may include parts supplied by the *car's* manufacturer and other quality parts. Such quality parts will be, if certification is required by law, certified by an independent test facility to be at least equivalent to the parts being replaced.

            *You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

      (2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

      (3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

      (4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

   b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

      (1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, within 60 days after proof of loss is filed, using the following procedures:

         (a) The owner and *we* will each select a competent appraiser.

         (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

         (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

         (d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

         (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

         (f) *We* do not waive any of *our* rights by submitting to an appraisal.

30
9837B

Exhibit 1 - Page 33 of 62

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

### Limits – Car Rental and Travel Expenses Coverage

**1. Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

**2. Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

**3. Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

### Nonduplication

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

### Exclusions

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

31
9837B

Exhibit 1 - Page 34 of 62

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

a. LIEN AGREEMENT;

b. RENTAL AGREEMENT;

c. LEASE AGREEMENT; OR

d. SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a. FAILS OR IS DEFECTIVE; OR

b. IS DAMAGED AS A DIRECT RESULT OF:

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

32
9837B

Exhibit 1 - Page 35 of 62

20. ANY REDUCTION IN THE VALUE OF ANY *COVERED VEHICLE* AFTER IT HAS BEEN REPAIRED, AS COMPARED TO ITS VALUE BEFORE IT WAS DAMAGED.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

33
9837B

Exhibit 1 - Page 36 of 62

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or
2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 180 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES

| If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |

| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
|---|---|
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;
2. WHILE *OCCUPYING*, LOADING, OR UNLOADING:
   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;
   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:
      (1) *INSURED'S* BUSINESS; OR
      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

34
9837B

Exhibit 1 - Page 37 of 62

This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

c. A MILITARY VEHICLE; OR

d. A VEHICLE WHILE IT IS:

   (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

a. WAR OF ANY KIND;

b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

c. THE DISCHARGE OF A FIREARM;

d. EXPOSURE TO *FUNGI*;

e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving *spouse*;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

     (1) making settlements;

     (2) securing and giving evidence; and

     (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

     (1) make any payment to others; or

     (2) assume any obligation to others

     unless authorized by the terms of this policy.

35
9837B

Exhibit 1 - Page 38 of 62

c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

**4. Questioning Under Oath**

Under:

a. Liability Coverage, each *insured*;

b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing.

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, and Death, Dismemberment and Loss of Sight Coverage**

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

36
9837B

Exhibit 1 - Page 39 of 62

(4) allow *us* to inspect the vehicle that:

    (a) the *insured occupied* in the accident; or

    (b) sustained *property damage*;

b. Uninsured Motor Vehicle Bodily Injury Coverage and Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, must:

(1) report an accident, involving:

    (a) a motor vehicle whose owner and driver remain unknown; or

    (b) a *stolen vehicle*

to the police within 72 hours and to *us* within 30 days.

The *insured* or someone acting on the *insured's* behalf must also cooperate with the appropriate law enforcement agency in the prosecution of the theft of the *stolen vehicle*;

(2) before *we* are required to give consent to a proposed offer of settlement:

    (a) allow *us* a reasonable time to collect and evaluate information relating to the proposed offer of settlement; and

    (b) promptly provide any reasonable information *we* request that is within the custody and control of the *insured* or a *person* acting on the *insured's* behalf; and

(3) when there is *property damage*:

    (a) protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

    (b) allow *us* to:

      (i) inspect any damaged property before its repair or disposal;

      (ii) test any part or equipment before that part or equipment is removed or repaired; and

      (iii) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

    (c) provide *us* all:

      (i) records,

      (ii) receipts; and

      (iii) invoices

that *we* request and allow *us* to make copies; and

    (d) not abandon the *covered vehicle* to *us*; and

c. Personal Injury Protection Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, and Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident.

## GENERAL TERMS

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2. Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

**3. Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

37
9837B

Exhibit 1 - Page 40 of 62

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4. Changes to This Policy**

   **a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Oregon without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

   **b. Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

   **c. Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

   **d. Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

38
9837B

Exhibit 1 - Page 41 of 62

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**6. Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

**7. Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured. Proof of mailing shall be sufficient proof of notice.

**8. Cancellation**

**a. How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

**b. How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured. The notice will provide the date cancellation is effective.

Proof of mailing shall be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice:

(a) during the first 59 days following this policy's effective date; or

(b) because the premium is not paid when due,

then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 30 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; or

(b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the policy period, or, if the policy is a renewal, during the policy period or the 180 days immediately before the effective date of the policy.

**c. Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

a. Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages the following apply:

Exhibit 1 - Page 42 of 62

(1) **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(a) doing nothing to impair that legal right;

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask. These representatives shall have no conflict of interest with such *person*.

(2) **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

b. In addition, under Personal Injury Protection Coverage, *we* are entitled to recover *our* payments in accordance with the *Personal Injury Protection Act*. *We* may choose to recover by:

(1) interinsurer reimbursement in accordance with ORS 742.534, or

(2) lien in accordance with ORS 742.536, or

(3) subrogation in accordance with ORS 742.538.

When *we* ask, the *person* or organization to or for whom *we* make payment must take action to recover *our* payments through representatives *we* choose that have no conflict of interest with the *insured*. *We* will pay *our* share of costs and attorneys fees of such recovery. Our share is that percent of the costs and attorneys fees that the amount of *our* payments bears to the total recovery. *Our* share is that percent of the costs and attorney fees that the amount of *our* payment bears to the total recovery.

### 13. Legal Action Against Us

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

c. Uninsured Motor Vehicle Bodily Injury Coverage or Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, if within two years immediately following the date of the accident the *insured* or that *insured's* legal representative:

(1) has agreed with *us* on the amount due;

(2) or *we* have formally instituted arbitration proceedings in accordance with the **Arbitration** provision of the involved coverage;

(3) files a lawsuit against *us* in accordance with the **Deciding Fault and Amount** provision of the involved coverage; or

(4) has filed a lawsuit for *bodily injury* against the uninsured motorist and, within two years immediately following the date of settlement or final judgment against the uninsured motorist, the *insured* or that *insured's* legal representative has formally instituted arbitration proceedings or filed a lawsuit against *us* in accordance with the **Deciding Fault and Amount** provision of the involved coverage

*We* are not required to nor will *we* make payment to an *insured* after this time period has expired.

d. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

40
9837B

Exhibit 1 - Page 43 of 62

**14. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

    a.   such provision will remain in full force to the extent not held invalid or unenforceable; and

    b.   all other provisions of this policy will remain valid and enforceable.

**15. Conformity With Oregon Statute**

If any provisions of this policy are in conflict with the statutes of Oregon, they are amended to conform to these statutes.

41
9837B

Exhibit 1 - Page 44 of 62

Policy Form 9837B

Exhibit 1 - Page 45 of 62

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 274 2245-A12-37E
Sheet  1 of  1



# 6091T CERTIFICATE OF GUARANTEED RENEWAL

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

This endorsement is issued by the **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** of Bloomington, Illinois.

1.  *We* will not cancel or nonrenew this policy as long as:

a.  this policy insures a *private passenger car*.

b.  premiums are paid when due;

c.  all drivers of *your car* maintain valid drivers licenses;

d.  *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of

Guaranteed Renewal available for use; and

e.  no *person* other than *you* becomes a named insured on this policy.

2.  *You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company.

3.  Coverage will be provided by *our* Car Policy, including any revisions that may be made to it.

Page 1 of 1

6091T

2089D-2-2020
6991S

00818/02489
ED1

Exhibit 1 - Page 46 of 62

**6937B.2 AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **THIS POLICY**

   Item 5. is changed to read:

   *Your* purchase of this policy may allow:

   a. ***you*** to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the ***State Farm Companies***, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by ***you***, including non-insurance products or services, to vary. Such other products or services must be provided by the ***State Farm Companies*** or by an organization that has entered into an agreement or contract with the ***State Farm Companies***. The ***State Farm Companies*** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **DEFINITIONS**

   a. Wherever "spouse" appears in the policy and endorsements, it is changed to "***spouse***".

   b. The terms "marriage", "married", and "marital" refer to legal union with another ***person*** either by:

      (1) marriage; or

      (2) domestic partnership

      that is recognized by and valid under Oregon law.

   c. The following is added:

   ***Personal Vehicle Sharing*** means the use of a ***private passenger car*** by ***persons*** other than the vehicle's registered owner in connection with a ***personal vehicle sharing program***.

   ***Personal Vehicle Sharing Program*** means a legal entity qualified to do business in the state of Oregon and engaged in the business of facilitating the sharing of ***private passenger cars*** for non-commercial use by individuals within the state.

3. **LIABILITY COVERAGE**

   a. **Insuring Agreement** and **Supplementary Payments** are replaced by the following:

      **Insuring Agreement**

      1. ***We*** will pay damages an ***insured*** becomes legally liable to pay because of:

         a. ***bodily injury*** to others; and

         b. damage to property

         caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy.

      2. ***We*** have the right to:

         a. investigate, negotiate, and settle any claim or lawsuit;

         b. defend an ***insured*** in any claim or lawsuit, with attorneys chosen by ***us***; and

         c. appeal any award or legal decision

         for damages payable under this policy's Liability Coverage.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 47 of 62

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 48 of 62

b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

b. **Exclusions**

(1) The exception to exclusion 7. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(2) The exception to exclusion 10. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(3) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* FOR THE OWNERSHIP, MAINTENANCE, OR USE OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

4. **PERSONAL INJURY PROTECTION COVERAGE**

a. Any reference to Coverage "P5" is deleted.

b. **Additional Definitions**

Item 1. under *Personal Injury Protection Benefits* is changed to read:

*Personal Injury Protection Benefits* mean accident related:

1. **Medical Expenses**, which are *reasonable medical expenses* for *medical services* incurred within two years of the date of the accident;

c. **Arbitration**

(1) The first paragraph of item 2. is changed to read:

Arbitration will take place in Oregon, in the county in which the *insured* resides, unless the *insured* and *we* agree to another location.

(2) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

d. **Limits**

Item 4.b. is changed to read:

b. similar medical or disability benefits law. This does not

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 49 of 62

apply to benefits paid or payable under Medicare or Medicaid.

e. **Schedule**

The maximum monthly benefit for Loss of Income is changed to $3,000 for coverages P1, P2, P3, and P4.

f. **Exclusions**

The following are added:

1. THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING*, MAINTAINING, OR USING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*;

2. THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. *you* and *resident relatives* while *occupying* a *non-owned car* as a passenger.

5. **MEDICAL PAYMENTS COVERAGE**

   a. **Arbitration**

   (1) Item 1. is changed to read:

   If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved, if both the *insured* and *we* agree

at the time of the disagreement, by arbitration.

(2) The first paragraph of item 2. is changed to read:

Arbitration will take place in Oregon, in the county in which the *insured* resides, unless the *insured* and *we* agree to another location.

(3) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

b. **Exclusions**

(1) The exception to exclusion 5. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(2) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN PERSONAL VEHICLE SHARING.

6. **UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE** and **UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE**

   a. **Arbitration**

Exhibit 1 - Page 50 of 62

(1) Item 1. is changed to read:

Arbitration will take place in Oregon:

a.  at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b.  at another location, if both the *insured* and *we* agree.

(2) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

b.  **Exclusions**

(1) Exclusion 2. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a.  WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b.  WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named

insured's *spouse* who resides primarily with that named insured, provided that the motor vehicle is *owned by* neither that named insured nor that spouse;

(2) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

7.  **UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE**

a.  **Additional Definitions**

*Uninsured Motor Vehicle* is changed to read:

*Uninsured Motor Vehicle* means a land motor vehicle:

1.  the ownership, maintenance, and use of which is:

a.  not insured or self-insured for bodily injury liability at the time of the accident; or

b.  insured or self-insured for bodily injury liability at the time of the accident but:

(1) the limits are less than required by the financial responsibility law of Oregon;

(2) the insuring company:

(a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(b) is or becomes insolvent; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 51 of 62

(3) the total amount of insurance and self-insurance for bodily injury liability available from all sources is less than the amount of the *insured's* damages; or

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

   a. the *insured*; or

   b. any other *person* who has a claim under this coverage; or

3. which is a *stolen vehicle*.

**Uninsured Motor Vehicle** does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2. *owned by*, or furnished or available for the regular or frequent use of, *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies, other than an Oregon public body;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

b. **Limits**

   (1) Item 1.a. is changed to read:

   The Uninsured Motor Vehicle Bodily Injury Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

      (1) the amount of all compensatory damages resulting from that *bodily injury* reduced by:

         (a) the sum of all motor vehicle bodily injury liability coverage proceeds, paid and available to be paid:

            (i) to or for the *insured*;

            (ii) to an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 52 of 62

(iii) to medical providers of the *insured*; and

(iv) to attorneys as attorney fees on the claim of the *insured*; and

(b) the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy; or

(2) the limit shown under "Each Person."

(2) Item 2. is deleted.

8. **UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE**

a. **Additional Definitions**

*Uninsured Motor Vehicle* is changed to read:

*Uninsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

a. not insured or self-insured for bodily injury liability and property damage liability at the time of the accident; or

b. insured or self-insured for bodily injury liability and property damage liability at the time of the accident:

(1) but:

(a) the limits are less than required by the financial responsibility law of Oregon; or

(b) the insuring company:

(i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(ii) is or becomes insolvent; or

(2) but, with respect to *bodily injury* only:

(a) the limits are less than required by the financial responsibility law of Oregon;

(b) the insuring company:

(i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(ii) is or becomes insolvent; or

(c) the total amount of insurance and self-insurance for bodily injury liability available from all sources is less than the amount of the *insured's* damages; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 53 of 62

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured* or *property damage*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

a. the *insured*;

b. any other *person* who has a claim under this coverage; or

c. *you*, the driver, or any passenger in *your car* or a *newly acquired car* as to *property damage*; or

3. which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2. *owned by* or furnished or available for the regular or frequent use of *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies, other than an Oregon public body;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

b. **Limits**

(1) Item 1.a. is changed to read:

**Bodily Injury**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Bodily Injury Limits – Each Person, Each Accident".

(1) The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(a) the amount of all compensatory damages resulting from that *bodily injury* reduced by:

(i) the sum of all motor vehicle bodily injury liability coverage proceeds, paid and available to be paid:

1) to or for the *insured*;

2) to an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 54 of 62

3) to medical providers of the *insured*; and

4) to attorneys as attorney fees on the claim of the *insured*; and

(ii) the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy; or

(b) the limit shown under "Each Person."

(2) Subject to (1) above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

(2) Item 2. is deleted.

c. **Exclusions**

The following is added:

THERE IS NO COVERAGE FOR *PROPERTY DAMAGE* TO YOUR CAR OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

9. **PHYSICAL DAMAGE COVERAGES**

a. **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

(1) The paragraph that reads:

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, within 60 days after proof of loss is filed, using the following procedures:

is changed to read:

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is no agreement as to the actual cash value of the *covered vehicle*, then the disagreement may, if both the owner and *we* mutually agree at the time of disagreement, be resolved by appraisal. Such appraisal will occur within 60 days after proof of loss is filed using the following procedures:

(2) Item 1.b. (1) (c) is changed to read:

Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser. *We* shall reimburse the owner for the reasonable appraisal costs the owner incurs if the final appraisal decision under this policy provision is greater than the amount of *our* last offer prior to the incurrence of the appraisal costs.

Exhibit 1 - Page 55 of 62

b. **Exclusions**

The following is added:

THERE IS NO COVERAGE FOR *YOUR CAR* OR A *NEWLY AC-QUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

10. **GENERAL TERMS**

a. The following is added to item 2. **Where Coverage Applies**:

Death, Dismemberment and Loss of Sight Coverage applies any-where in the world.

b. Paragraph c. of item 5. **Premium** is changed to read:

The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agree-ment or contract with the *State Farm Companies*. The *State Farm Companies* do not war-rant the merchantability, fit-ness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this pol-icy, that the *State Farm Com-panies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

c. Item 7. **Nonrenewal** is changed to read:

If *we* decide not to renew this poli-cy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy

address that *we* have on record for the named insured who is shown on the Declarations Page.

d. Paragraph b. **How and When We May Cancel** under item 8. **Cancellation** is changed to read:

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

e. Item 11. **Concealment or Fraud** is changed to read:

There is no coverage under:

a. the Liability Coverage of this policy to the extent the Liabil-ity Coverage limits shown on the Declarations Page of this policy exceed the limits re-quired by the financial respon-sibility law of Oregon; and

b. any other coverages of this policy

if *you* or any other *person* insured under this policy has made false statements with the intent to con-ceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

f. The following provision is added:

**Limited Coverage in Mexico**

This policy does not provide Mexi-can auto insurance and does not comply with Mexican auto insur-ance requirements. If *you* or any other *insured* plan to drive in Mex-ico, then auto insurance providing coverage in Mexico should be pur-chased from a Mexican insurance company.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 56 of 62

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Personal Injury Protection Coverage**

c. **Medical Payments Coverage**

d. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement–**

**Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF OREGON IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Oregon in the United States of America.

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 57 of 62

**6128BL AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

   a. **Additional Definition**

   Item 4. of *Insured* is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. **Exclusions**

   Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

3. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   Exclusion 4. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 58 of 62

4. **PHYSICAL DAMAGE COVERAGES**

a. The sentences that read:

> If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

are changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expense** is changed to read:

**Car Rental Expense**

*We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

      (i) a total loss as determined by *us*; or

      (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY *COVERED VEHICLE* WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 59 of 62

TO CARRY **PERSONS** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

5. **INSURED'S DUTIES**

a. Item 6.a.(3) is changed to read:

A ***person*** making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(3) provide written authorization for ***us*** to obtain medical bills, medical records, wage information, salary information, employment information, and any other information ***we*** deem necessary to substantiate the claim.

Such authorizations must not:

(a) restrict ***us*** from performing ***our*** business functions in:

(i) obtaining records, bills, information, and data; nor

(ii) using or retaining records, bills, information, and data collected or received by ***us***;

(b) require ***us*** to violate federal or state laws or regulations;

(c) prevent ***us*** from fulfilling ***our*** data reporting and data retention obligations to insurance regulators; or

(d) prevent ***us*** from disclosing claim information and data:

(i) to enable performance of ***our*** business functions;

(ii) to meet ***our*** reporting obligations to insurance regulators;

(iii) to meet ***our*** reporting obligations to insurance data consolidators; and

(iv) as otherwise permitted by law.

If an injured ***insured*** is a minor, unable to act, or dead, then his or her legal representative must provide ***us*** with the written authorization.

If the holder of the information refuses to provide it to ***us*** despite the authorization, then at ***our*** request the ***person*** making claim or his or her legal representative must obtain the information and promptly provide it to ***us***; and

b. The following is added to item 6.:

A ***person*** making claim under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015
6128BL

Exhibit 1 - Page 60 of 62

Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to *us* all information *we* need to comply with federal and state laws and regulations.

6. **GENERAL TERMS**

a. The following is added to **Newly Owned or Newly Leased Car**:

If a *resident relative* wants to insure a *car* newly *owned by* the *resident relative* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then the *resident relative* must apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by* the *resident relative*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

6128BL

Exhibit 1 - Page 61 of 62

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

6128BL

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 1 - Page 62 of 62



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 110 5075-C11-37A including any endorsements, if applicable, for the policy term(s) October 6, 2017 to March 11, 2018 and insuring TRAVIS R BATTEN based on available records.

The policy was in effect on the loss date of October 31, 2017.

Jolene Sand
Underwriter
Date: December 22, 2017

1004516

2000  143551  200  03-21-2012

Exhibit 2 - Page 1 of 62

**EXHIBIT 2**

**State Farm Mutual Automobile Insurance Company**

*PO Box 5000*
*DuPont, WA 98327-5000*

65610-1-A          MUTL  VOL

| **DECLARATIONS PAGE** |
|---|

NAMED INSURED

AT2                                      37-2134-1 A      A
                    000770    0058
BATTEN, TRAVIS R

POLICY NUMBER    110 5075-C11-37A
POLICY PERIOD OCT 06 2017 to MAR 11 2018
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
███8015
AGENT

RORY WOLD INSURANCE AGENCY INC
2019 AERO WAY STE 101
MEDFORD, OR 97504-9789

PHONE: (541)773-1404  or  (541)773-1423

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 1985 | TOYOTA | XTRA CAB | PICKUP | █████7813 | 603H50M000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A P2 | Combined Premium | ████ |
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000      $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P2 | Personal Injury Protection Coverage | |
| | (See Policy Schedule for Limits.) | |
| D | Comprehensive Coverage | |
| G | Collision Coverage - $250 Deductible | |
| H | Emergency Road Service Coverage | |
| U | Uninsured Motor Vehicle Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000      $500,000 | |

| Total premium for OCT 06 2017 to MAR 11 2018 | ████ | This is not a bill. |
|---|---|---|

**IMPORTANT MESSAGES**

Replaced policy number 1105075-37.

Your total renewal premium for SEP 11 2017 to MAR 11 2018 is ████

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

```
YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9837B, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6091T      CERTIFICATE OF GUARANTEED RENEWAL.
6128BL     AMENDATORY ENDORSEMENT.
6937B.2    AMENDATORY ENDORSEMENT.
```

| | | |
|---|---|---|
| Agent: | RORY WOLD INSURANCE AGENCY INC | |
| Telephone: | (541)773-1404 | |
| Prepared | OCT 10 2017 | 2134-AE6 |

See Reverse Side

Exhibit 2 - Page 2 of 62

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Lynne M. Yaukell
Secretary

Michael F. Tipsord
President



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Oregon**
Policy Form 9837B

Exhibit 2 - Page 4 of 62

# CONTENTS

**THIS POLICY** ...................................................... 3

**DEFINITIONS** .................................................... 4

**LIABILITY COVERAGE** .................................... 5

    Additional Definition ............................................ 5
    Insuring Agreement ............................................. 6
    Supplementary Payments ..................................... 6
    Limits ................................................................. 6
    Nonduplication ................................................... 7
    Exclusions .......................................................... 7
    If Other Liability Coverage Applies .................... 8
    Required Out-of-State Liability Coverage ......... 9
    Financial Responsibility Requirement ............... 9
    Financial Responsibility Certification ............... 9

**PERSONAL INJURY PROTECTION
COVERAGE** ........................................................ 9

    Additional Definitions ........................................ 9
    Insuring Agreement ...........................................11
    Determining Medical Expenses ........................11
    Arbitration........................................................11
    Limits...............................................................11
    Nonduplication ................................................ 12
    Schedule.......................................................... 12
    Exclusions....................................................... 12
    If Other Personal Injury Protection Coverage or
    Similar Vehicle Insurance Applies ................. 12
    Our Payment Options....................................... 13

**MEDICAL PAYMENTS COVERAGE** ........... 14

    Additional Definitions ...................................... 14
    Insuring Agreement ......................................... 14
    Determining Medical Expenses ....................... 15
    Arbitration...................................................... 15
    Limit ............................................................... 15
    Nonduplication................................................ 15
    Exclusions....................................................... 15
    If Other Medical Payments Coverage or
    Similar Vehicle Insurance Applies ................. 16
    Our Payment Options....................................... 17

**UNINSURED MOTOR VEHICLE BODILY
INJURY COVERAGE** ...................................... 17

    Additional Definitions ...................................... 17
    Insuring Agreement.......................................... 18

    Deciding Fault and Amount.............................. 19
    Arbitration ...................................................... 19
    Limits ............................................................. 19
    Nonduplication ............................................... 20
    Exclusions ...................................................... 20
    If Other Uninsured Motor Vehicle Coverage
    of Any Kind Applies ..................................... 21
    Our Payment Options ...................................... 22

**UNINSURED MOTOR VEHICLE BODILY
INJURY AND PROPERTY DAMAGE
COVERAGE** ...................................................... 22

    Additional Definitions ...................................... 22
    Insuring Agreement ......................................... 23
    Deciding Fault and Amount.............................. 23
    Arbitration ...................................................... 24
    Limits ............................................................. 24
    Nonduplication ............................................... 25
    Exclusions ...................................................... 25
    If Other Uninsured Motor Vehicle
    Coverage of Any Kind Applies........................ 26
    If Other Property Damage Coverage
    of Any Kind Applies ...................................... 27
    Our Payment Options ...................................... 27

**PHYSICAL DAMAGE COVERAGES** ........... 27

    Additional Definitions ...................................... 27
    Insuring Agreements ........................................ 28
    Supplementary Payments – Comprehensive
    Coverage and Collision Coverage ................... 29
    Limits and Loss Settlement – Comprehensive
    Coverage and Collision Coverage ................... 30
    Limits – Car Rental and Travel Expenses
    Coverage ...................................................... 31
    Nonduplication ............................................... 31
    Exclusions ...................................................... 31
    If Other Physical Damage Coverage or Similar
    Coverage Applies............................................ 33
    Financed Vehicle ............................................. 33
    Our Payment Options ...................................... 33

**DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE** ...................... 34

    Additional Definitions ...................................... 34

    Insuring Agreement ......................................... 34

    Benefit ............................................................ 34

2
9837B

Exhibit 2 - Page 5 of 62

Death, Dismemberment and Loss of Sight Benefits Schedules ........................................... 34

Exclusions ................................................ 34

Our Payment Options ............................... 35

**INSURED'S DUTIES** ................................. 35

Notice to Us of an Accident or Loss ............... 35

Notice to Us of a Claim or Lawsuit ................ 35

Insured's Duty to Cooperate With Us ............. 35

Questioning Under Oath ................................ 36

Other Duties Under the Physical Damage Coverages ..................................... 36

Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, and Death, Dismemberment and Loss of Sight Coverage ..................................... 36

**GENERAL TERMS** ........................................... 37

When Coverage Applies ................................. 37

Where Coverage Applies ................................ 37

Newly Owned or Newly Leased Car ............... 37

Changes to This Policy ................................... 38

Premium ......................................................... 38

Renewal .......................................................... 39

Nonrenewal .................................................... 39

Cancellation ................................................... 39

Assignment ..................................................... 39

Bankruptcy or Insolvency of the Insured ........ 39

Concealment or Fraud .................................... 39

Our Right to Recover Our Payments ............... 40

Legal Action Against Us ................................. 40

Severability .................................................... 41

Conformity With Oregon Statute .................... 41

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

      (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had:

         (a) vehicle insurance canceled or nonrenewed by an insurer; or

         (b) either:

            (i) a license to drive; or

            (ii) a vehicle registration suspended, revoked, or refused.

      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

Exhibit 2 - Page 6 of 62

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other forms of these words and phrases. Defined words and phrases are printed in boldface italics.

***Bodily Injury*** means bodily injury to a ***person*** and sickness, disease, or death that results from it.

***Car*** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

***Car Business*** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

***Fungi*** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

***Newly Acquired Car*** means a ***car*** newly ***owned by you***. A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newly acquired car*** is delivered to ***you***.

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***:

    a. ***you***;

    b. any ***resident relative***;

    c. any other ***person*** who resides primarily in ***your*** household; or

    d. an employer of any ***person*** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

    a. ***you***; or

    b. any ***resident relative***

    during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

***Person*** means a human being.

***Private Passenger Car*** means:

1. a ***car*** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry ***persons*** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

    a. that is not used for:

        (1) wholesale; or

        (2) retail

        pickup or delivery; and

    b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:

1. a relative of that named insured or his or her ***spouse*** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise

4
9837B

Exhibit 2 - Page 7 of 62

maintains his or her primary residence with that named insured; or

2. a minor who is being raised as a child of that named insured, his or her spouse, or a *person* described in 1. above.

See Personal Injury Protection Coverage for the definition of *Resident Relative* used there.

*Spouse* means a *person* legally united with another *person* either by:

1. marriage; or

2. domestic partnership

that is recognized by and valid under Oregon law.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. damage; or
   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. only those trailers:
   a. designed to be pulled by a *private passenger car*;
   b. not designed to carry *persons*; and
   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page and includes the *spouse* of the first *person* shown as a named insured if the *spouse* resides primarily with that named insured.

See Personal Injury Protection Coverage for the definition of *You* or *Your* used there.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.


## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a *non-owned car*; or
      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's spouse*;

5
9837B

Exhibit 2 - Page 8 of 62

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a. damages an *insured* becomes legally liable to pay because of:

     (1) *bodily injury* to others; and

     (2) damage to property

     caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

   c. court costs charged to an *insured* and resulting from that part of a lawsuit:

     (1) that seeks damages payable under this policy's Liability Coverage; and

     (2) against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above,

the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

   a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

   b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

     (1) an arbitration;

     (2) a mediation; or

     (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will

6

9837B

Exhibit 2 - Page 9 of 62

pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident. A *person's* damages for *bodily injury* are reduced by any amount that has already been paid as benefits under Personal Injury Protection Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under any kind of Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply

to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

    *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

7
9837B

Exhibit 2 - Page 10 of 62

13. WHILE USING A **TRAILER** WITH A MO-
TOR VEHICLE IF THAT **INSURED** IS NOT
PROVIDED LIABILITY COVERAGE BY
THIS POLICY FOR THE USE OF THAT
MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE,
OR USE OF ANY VEHICLE WHILE IT IS:

   a. OFF PUBLIC ROADS AND BEING PRE-
   PARED FOR, USED IN PRACTICE FOR,
   OR OPERATED IN ANY RACING CON-
   TEST, SPEED CONTEST, HILL-
   CLIMBING CONTEST, JUMPING CON-
   TEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY
   FOR RACING OR HIGH SPEED DRIV-
   ING. This exclusion (14.b.) does not apply if
   the vehicle is being used in connection with
   an activity other than racing, high speed driv-
   ing, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED
STATES OF AMERICA OR ANY OF ITS
AGENCIES, IF THE PROVISIONS OF THE
FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy
   and one or more other Car Policies issued to
   **you** or any **resident relative** by the **State Farm
   Companies** apply to the same accident, then:

   a. the Liability Coverage limits of such poli-
   cies will not be added together to deter-
   mine the most that may be paid; and

   b. the maximum amount that may be paid
   from all such policies combined is the sin-
   gle highest applicable limit provided by
   any one of the policies. **We** may choose
   one or more policies from which to make
   payment.

2. a. The Liability Coverage provided by this
   policy applies as primary coverage for:

      (1) the ownership, maintenance, or use of
      **your car** or a **trailer** attached to it; and

      (2) the maintenance, or use of a **tempo-
      rary substitute car** or a **non-owned
      car** provided by a **person** in the busi-
      ness of selling, renting, leasing, or re-
      pairing motor vehicles to the **insured**
      in the course of that business but only
      if there is a written agreement be-
      tween the **insured** and that **person** that
      specifically indicates that the **insured**
      receiving the **temporary substitute car**
      or **non-owned car** is liable for any in-
      jury, death, or damage arising out of
      its use. Any similar coverage available

to the **person** providing the **temporary
substitute car** or **non-owned car** is
excess.

   b. If:

      (1) this is the only Car Policy issued to
      **you** or any **resident relative** by the
      **State Farm Companies** that provides
      Liability Coverage which applies to
      the accident as primary coverage; and

      (2) liability coverage provided by one or
      more sources other than the **State
      Farm Companies** also applies as pri-
      mary coverage for the same accident,

      then **we** will pay the proportion of dam-
      ages payable as primary that **our** applica-
      ble limit bears to the sum of **our** applicable
      limit and the limits of all other liability
      coverage that apply as primary coverage.

   c. If:

      (1) more than one Car Policy issued to
      **you** or any **resident relative** by the
      **State Farm Companies** provides Li-
      ability Coverage which applies to the
      accident as primary coverage; and

      (2) liability coverage provided by one or
      more sources other than the **State
      Farm Companies** also applies as pri-
      mary coverage for the same accident,

      then the **State Farm Companies** will pay the
      proportion of damages payable as primary
      that the maximum amount that may be paid
      by the **State Farm Companies** as determined
      in 1. above bears to the sum of such amount
      and the limits of all other liability coverage
      that apply as primary coverage.

3. Except as provided in 2. above, the Liability
   Coverage provided by this policy applies as
   excess coverage.

   a. If:

      (1) this is the only Car Policy issued to
      **you** or any **resident relative** by the
      **State Farm Companies** that provides
      Liability Coverage which applies to
      the accident as excess coverage; and

      (2) liability coverage provided by one or
      more sources other than the **State
      Farm Companies** also applies as ex-
      cess coverage for the same accident,

      then **we** will pay the proportion of dam-
      ages payable as excess that **our** applicable
      limit bears to the sum of **our** applicable
      limit and the limits of all other liability
      coverage that apply as excess coverage.

Exhibit 2 - Page 11 of 62

b.   If:

(1)  more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Liability Coverage which applies to the accident as excess coverage; and

(2)  liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1.   an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2.   this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Requirement**

This policy provides liability coverage in compliance with, and is subject to, the Oregon Vehicle Code relating to financial responsibility requirements.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P1", "P2", "P3", "P4", or "P5" is shown under "SYMBOLS" on the Declarations Page. If a deductible applies, then it is shown on the Declarations Page.

**Additional Definitions**

*Insured* means:

1.   **you**;

2.   **resident relatives**; and

3.   any other **person** who suffers **bodily injury** while **occupying** or through being struck as a **pedestrian** by:

a.   **your car**; or

b.   a **newly acquired car** which is either the same type of vehicle as **your car** or is required to be insured by the **Personal Injury Protection Act**.

Such vehicle must be operated by **you** or with **your** permission and its use must be within the scope of such permission.

*Medical Services* mean expenses for necessary:

1.   medical, surgical, X-ray, dental, ambulance, hospital and professional nursing; and

2.   eyeglasses, hearing aids and prosthetic devices.

*Motor Vehicle* means a self propelled land motor vehicle or any type of trailer. It does not include a vehicle:

1.   designed for use primarily off public roads except while on public roads;

2.   operated on rails or crawler-treads; or

3.   while located for use as a dwelling or other premises.

*Personal Injury Protection Act* means sections 742.520 through 742.544 of the Oregon Insurance Code and any amendments.

*Personal Injury Protection Benefits* mean accident related:

1.   **Medical Expenses**, which are **reasonable medical expenses** for **medical services** incurred within one year of the date of the accident;

2.   **Funeral Expenses**, which are reasonable and necessary expenses incurred within one year of the accident for funeral expenses;

3.   **Loss of Income**, which covers the **insured's** actual loss of earnings, if the **insured** usually works for pay, because of inability to do the basic duties of his or her job.

9
9837B

Exhibit 2 - Page 12 of 62

The period of disability must continue for at least 14 days and ends on the earlier of:

a.  the date the *insured* is able to return to his or her usual job; or

b.  52 weeks;

4.  **Loss of Services Expenses**, which covers reasonable expenses actually incurred for essential services the *insured* would have performed without pay for his or her family, if the *insured* usually does not work for pay, except for the injury. The services must be performed by a *person* who is neither related to the *insured* nor a resident in the same household as the *insured*.

The period of disability must continue for at least 14 days and ends on the earlier of:

a.  the date the *insured* is able to perform these essential services; or

b.  the date payment has been made in the aggregate for 52 weeks; and

5.  **Child Care Expenses** for an *insured* who is a parent of a minor child and is required to be hospitalized for a minimum of 24 hours.

Payments begin after the initial 24 hours of hospitalization and continue until the earlier of:

a.  the date the *insured* can return to work, if he or she usually works for pay;

b.  the date the *insured* is again able to perform essential services, if he or she does not usually work for pay; or

c.  the date the limit shown in the **Schedule** for *Child Care Expenses* is exhausted.

*Pedestrian* means a *person* while not *occupying* a self-propelled vehicle other than a wheelchair or a similar low-powered motorized or mechanically propelled vehicle:

1.  that is designed specifically for use by a physically disabled *person*; and

2.  that is determined to be medically necessary for the occupant of the wheelchair or other low-powered vehicle.

*Reasonable Medical Expenses* mean fees for *medical services*:

1.  if subject to Oregon Revised Statute section 742.525, billed in accordance with Oregon Revised Statute section 742.525; or

2.  if not subject to Oregon Revised Statute section 742.525, that are the lowest of any one of the following charges:

a.  the usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the

geographical area in which the charges were incurred;

b.  The fee specified in any fee schedule:

(1) applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

(2) as prescribed or authorized by the law of the state where *medical services* are provided;

c.  the fees agreed to by both the *insured's* healthcare provider and *us*; or

d.  the fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

*Resident Relative* means a *person*, other than *you*, who resides primarily with a named insured on the Declarations Page and who is:

1.  a relative of that named insured or his or her *spouse* by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2.  a minor who is being raised as a child of that named insured, his or her *spouse*, or a *person* described in 1. above

*You* or *Your* means the named insured or named insureds shown on the Declarations Page and includes the *spouse* of that named insured if the *spouse* resides primarily with that named insured.

**Insuring Agreement**

*We* will pay *personal injury protection benefits* in accordance with the *Personal Injury Protection Act* for *bodily injury* to an *insured* caused by accident resulting from the occupancy, maintenance or use of a *motor vehicle*.

**Determining Medical Expenses**

*We* have the right to:

a.  obtain and use:

(1) peer reviews; and

(2) medical bill reviews

to determine if the incurred charges are *reasonable medical expenses* for the *bodily injury* sustained;

b.  use a medical examination of the injured *person* to determine if:

10
9837B

Exhibit 2 - Page 13 of 62

(1) the *bodily injury* was caused by a *motor vehicle* accident; and

(2) the expenses incurred are *reasonable medical expenses* for the *bodily injury* sustained; and

c.  enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1.  If there is a disagreement as to the amount the *insured* is entitled to collect for *personal injury benefits*, then the disagreement will be resolved, if both the *insured* and *we* mutually agree at the time of the disagreement, by arbitration.

2.  Arbitration will take place in the county in which the *insured* resides unless the *insured* and *we* agree to another location.

    The *insured* and *we* will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the arbitrator.

    The cost of the arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

    *We* are not responsible for:

    a.  attorney fees;

    b.  expenses for witnesses or evidence; and

    c.  expenses for transcripts of the arbitration

    that are incurred by the *insured*.

3.  The arbitrator shall only decide whether incurred expenses and actual loss of earnings claimed by an *insured* are payable as *personal injury protection benefits* and the amount of such payment. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4.  The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

    a.  *us*; and

    b.  the *insured*.

5.  Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

The Personal Injury Protection Coverage limits are shown in the following **Schedule**.

1.  The applicable amount shown below the Personal Injury Protection Coverage Symbol found on the Schedule that matches the Personal Injury Protection Coverage Symbol shown under "Symbols" on the Declarations Page for each *personal injury protection benefit* is the most *we* will pay for any one *insured* in any one accident.

    Any amount payable to *you* or *resident relatives* for Medical Expenses, Loss of Income, or Loss of Services Expenses will be reduced by any deductible that is shown on the Declarations Page. The deductible will be shared equally and be applied once per accident.

2.  The most *we* will pay per month for Loss of Income is the lesser of:

    a.  70% of the actual loss of earnings from work or employment; or

    b.  the amount shown in 3.(a) of the Schedule for *your* Personal Injury Protection Coverage Symbol.

3.  The most *we* will pay for Child Care Expenses:

    a.  per day is the amount shown in 5.(a) of the Schedule for *your* Personal Injury Protection Coverage Symbol; and

    b.  subject to a. above, in total is the amount shown in 5.(b) of the Schedule for *your* Personal Injury Protection Coverage Symbol.

4.  Any amount payable under Personal Injury Protection Coverage will be reduced by any amount paid or payable to or for the *insured* under any:

    a.  workers' compensation law; or

    b.  any similar medical or disability benefits law. This does not apply to benefits paid or payable under Medicare.

5.  Personal Injury Protection Coverage will be excess over any other collateral benefits, including but not limited to insurance benefits, governmental benefits, or gratuitous benefits to which a *pedestrian insured* is entitled. This does not apply to:

    a.  benefits paid or payable under Medicare; or

    b.  *you* or *resident relatives*.

    If more than one policy applies, then 4. of **If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies** also applies in its entirety.

**Nonduplication**

The *insured* may not recover more than once for the same *personal injury protection benefit*.

Exhibit 2 - Page 14 of 62

**Schedule**

| Coverage Symbol | P1 | P2 | P3 | P4 | P5 |
|---|---|---|---|---|---|
| 1. Medical Expenses | $15,000 | $25,000 | $50,000 | $100,000 | $100,000 |
| 2. Funeral Expenses | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| 3. Loss of Income | | | | | |
|   (a) Maximum monthly benefit | $1,250 | $1,250 | $1,250 | $1,250 | $1,500 |
|   (b) Aggregate number of weeks | 52 | 52 | 52 | 52 | 52 |
| 4. Loss of Services Expenses | | | | | |
|   (a) Maximum daily benefit | $30 | $30 | $30 | $30 | $30 |
|   (b) Aggregate number of weeks | 52 | 52 | 52 | 52 | 52 |
| 5. Child Care Expenses | | | | | |
|   (a) Daily benefit | $25 | $25 | $25 | $25 | $25 |
|   (b) Maximum benefit | $750 | $750 | $750 | $750 | $750 |

**Exclusions**

THERE IS NO COVERAGE FOR:

1. AN *INSURED* WHO INTENTIONALLY CAUSES *BODILY INJURY* TO HIMSELF OR HERSELF;

2. *YOU* OR ANY *RESIDENT RELATIVE* FOR *BODILY INJURY* RESULTING FROM THE MAINTENANCE OR USE OF A *MOTOR VEHICLE*, INCLUDING A MOTORCYCLE OR MOPED, WHICH IS:

    a. *OWNED BY* OR FURNISHED OR AVAILABLE FOR REGULAR USE BY *YOU* OR ANY *RESIDENT RELATIVE*; AND

    b. NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

3. LOSS OF INCOME OR LOSS OF SERVICES EXPENSES FOR A *PEDESTRIAN* STRUCK OUTSIDE OF OREGON. This exclusion does not apply to *you*, *your spouse* or any *relative*;

4. AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

5. AN *INSURED* WHO IS PARTICIPATING IN ANY PREARRANGED OR ORGANIZED RACING OR SPEED CONTEST OR PRACTICE OR PREPARATION FOR ANY SUCH CONTEST;

6. AN *INSURED* WHO WILLFULLY CONCEALS OR MISREPRESENTS ANY MATERIAL FACT IN CONNECTION WITH A CLAIM FOR *PERSONAL INJURY PROTECTION BENEFITS*.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover the same *personal injury protection benefits* under both this coverage and other personal injury protection coverage, medical payments coverage, or similar vehicle insurance.

2. If Personal Injury Protection Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. a. The Personal Injury Protection Coverage provided by this policy applies as primary coverage:

    (1) for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it; or

    (2) for *you* and *resident relatives* who sustain *bodily injury* while a *pedestrian*.

12
9837B

Exhibit 2 - Page 15 of 62

b. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *personal injury protection benefits* payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary.

c. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *personal injury protection benefits* payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides

Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of *personal injury protection benefits* payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess for the same accident,

then the *State Farm Companies* will pay the proportion of *personal injury protection benefits* payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving *spouse*;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* and funeral services.

13
9837B

Exhibit 2 - Page 16 of 62

# MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives:*

   a. while *occupying*:

      (1) *your car*;

      (2) a *newly acquired car*;

      (3) a *temporary substitute car*;

      (4) a *non-owned car*; or

      (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

   b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used within the scope of *your* consent.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

   b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident if:

   a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

14
9837B

Exhibit 2 - Page 17 of 62

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. Arbitration will take place in the county in which the *insured* resides unless the *insured* and *we* agree to another location.

   The *insured* and *we* will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the arbitrator.

   The cost of the arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

   *We* are not responsible for:

   a. attorney fees;

   b. expenses for witnesses or evidence; and

   c. expenses for transcripts of the arbitration

   that are incurred by the *insured*.

3. The arbitrator shall only decide whether incurred charges are *medical expenses*. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or any kind of Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

Exhibit 2 - Page 18 of 62

b. any *resident relative*

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

16
9837B

Exhibit 2 - Page 19 of 62

then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

     (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

     then **we** will pay the proportion of **medical expenses** and funeral expenses payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

     (1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

     then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;
2. The **insured's** surviving **spouse**;
3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;
4. A **person** authorized by law to receive such payment; or
5. Any **person** or organization that provides the **medical services** or funeral services.

## UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE

This policy provides Uninsured Motor Vehicle Bodily Injury Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;
2. **resident relatives**;
3. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **non-owned car** operated by:

     (1) a **person** shown as a named insured on the Declarations Page; or

     (2) a **spouse** of a **person** shown as a named insured on the Declarations Page if the **spouse** resides primarily with such **person**.

     Such vehicle must be used within the scope of **your** consent. Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

17
9837B

Exhibit 2 - Page 20 of 62

**Stolen Vehicle** means either **your car** or a **newly acquired car** that is being operated without **your** consent by a **person** who does not have collectible motor vehicle bodily injury liability insurance.

**Uninsured Motor Vehicle** means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or

   b. insured or bonded for bodily injury liability at the time of the accident;

      (1) but:

          (a) the limits are less than required by the financial responsibility law of Oregon; or

          (b) the insuring company:

              (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

              (ii) is or becomes insolvent; or

      (2) whose limits of insurance and self-insurance for bodily injury liability from all sources:

          (a) are less than the Uninsured Motor Vehicle Bodily Injury Coverage limits of this policy; or

          (b) have been reduced by payments to **persons** other than the **insured** to less than the Uninsured Motor Vehicle Bodily Injury Coverage limits of this policy;

2. the owner and driver of which remain unknown and which causes **bodily injury** to the **insured**. If there is no physical contact between that land motor vehicle and the **insured** or the vehicle the **insured** is **occupying**, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

   a. the **insured**; or

   b. any other **person** who has a claim under this coverage; or

3. which is a **stolen vehicle**.

**Uninsured Motor Vehicle** does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a **stolen vehicle**.

2. **owned by**, or furnished or available for the regular or frequent use of **you**;

3. **owned by**, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. **owned by** or rented to any government or any of its political subdivisions or agencies;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

**Insuring Agreement**

1. **We** will pay compensatory damages for **bodily injury** an **insured** is legally entitled to recover from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be:

   a. sustained by an **insured**; and

   b. caused by an accident that involves the operation, maintenance, or use of an **uninsured motor vehicle** as a motor vehicle.

2. **We** will pay only if:

   a. the limits of liability under any bodily injury liability bonds or policies applicable at the time of the accident:

      (1) have been exhausted by payment of judgments or settlements; or

      (2) have been offered to the **insured** in settlement and **we** have refused **our** written consent for settlement, but the **insured** protects **our** right of subrogation to the claim against the tortfeasor; or

   b. The **insured** is offered a settlement less than the limits of the applicable bodily injury liability coverage and gives **us** credit for the realized and unrealized portion of the bodily injury liability limits as if the full limits had been received and **we** have either:

      (a) given **our** written consent for settlement, or

      (b) refused **our** written consent for settlement, but the **insured** protects **our** right of subrogation to the claim against the tortfeasor.

**Deciding Fault and Amount**

1. a. The **insured** and **we** must agree to the answers to the following two questions:

      (1) Is the **insured** legally entitled to recover compensatory damages from the owner or driver of the **uninsured motor vehicle**?

18
9837B

Exhibit 2 - Page 21 of 62

(2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then:

  (1) the disagreement may, if both the *insured* and *we* mutually agree at the time of the disagreement, be resolved by arbitration as described in **Arbitration** below; or

  (2) the *insured* shall:

    (a) file a lawsuit, in a state or federal court that has jurisdiction, against:

      (i) *us*;

      (ii) the owner and driver of the *uninsured motor vehicle*, if known; and

      (iii) any other party or parties who may be legally liable for the *insured's* damages;

    (b) consent to a jury trial if requested by *us*;

    (c) agree that *we* may contest the issues of liability and the amount of damages; and

    (d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Arbitration**

1. Arbitration will take place:

a. at the *insured's* choice, in the county in which:

  (1) the *insured* resides; or

  (2) the accident occurred; or

b. another location, if both the *insured* and *we* agree.

2. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

The *insured* and *we* will each pay the cost of our own arbitrator and will pay fully:

a. attorney fees;

b. expenses for witnesses or evidence; and

c. expenses for transcripts of the arbitration

that either of us incur.

The cost of the third arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

3. The arbitrators shall only decide:

a. whether the *insured* is legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

b. the amount of damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*.

Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on the *insured* and *us*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

1. The Uninsured Motor Vehicle Bodily Injury Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury Coverage – Bodily Injury Limits – Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

19
9837B

Exhibit 2 - Page 22 of 62

(1) the limit shown under "Each Person" reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*; or

(2) the amount of all damages resulting from that *bodily injury* reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident."

2. These limits are reduced by:

a. the sum of all motor vehicle liability insurance proceeds paid and available to be paid to:

(1) or for the *insured*;

(2) an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

(3) the *insured's* medical providers; and

(4) attorneys as attorney fees on the claim of an *insured*.

b. the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy.

3. These Uninsured Motor Vehicle Bodily Injury Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Bodily Injury Coverage any damages:

1. that have already been paid to or for the *insured* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as benefits under Personal Injury Protection Coverage of this policy or other personal injury protection coverage; or

4. that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

This exclusion does not apply if *we* have refused *our* consent for settlement, in writing, and the *insured* protects *our* right of subrogation to the claim of the tortfeasor;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* or furnished for the regular use of one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

20
9837B

Exhibit 2 - Page 23 of 62

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1. If Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy and any kind of Uninsured Motor Vehicle Coverage provided by one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as primary coverage for *bodily injury* sustained by an *insured* while *occupying your car* or a certified self-insured vehicle under ORS 806.140 without available primary coverage.

   a. If:

     (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

     (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

     then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable

limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

   b. If:

     (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

     (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

     then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as excess coverage, but only to the extent the limit of this policy or the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above exceeds the primary coverage.

   a. If:

     (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

     (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

     then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

   b. If:

     (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

Exhibit 2 - Page 24 of 62

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving **spouse**;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**; or

4. A **person** authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE

This policy provides Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage if "UI" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;

2. **resident relatives**;

3. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **non-owned car** operated by:

      (1) a **person** shown as a named insured on the Declarations Page; or

      (2) a **spouse** of a **person** shown as a named insured on the Declarations Page if the **spouse** resides primarily with such **person**.

   Such vehicle must be used within the scope of **your** consent. Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

**Property Damage** – means damage to **your car** or a **newly acquired car**. **Property Damage** does not include loss of use.

**Stolen Vehicle** means either **your car** or a **newly acquired car** that is being operated without **your** consent by a **person** who does not have collectible motor vehicle bodily injury liability insurance.

**Uninsured Motor Vehicle** means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability and property damage liability at the time of the accident; or

   b. insured or bonded for bodily injury liability and property damage liability at the time of the accident;

      (1) but:

         (a) the limits are less than required by the financial responsibility law of Oregon; or

         (b) the insuring company:

            (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

            (ii) is or becomes insolvent; or

      (2) with respect to **bodily injury** only, whose limits of insurance and self-insurance for bodily injury liability from all sources:

         (a) are less than the Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for **bodily injury** of this policy; or

         (b) have been reduced by payments to **persons** other than the **insured** to less than the Underinsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for **bodily injury** of this policy;

2. the owner and driver of which remain unknown and which causes **bodily injury** to the **insured** or **property damage**. If there is no physical

22
9837B

Exhibit 2 - Page 25 of 62

contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

a.   the *insured*;

b.   any other *person* who has a claim under this coverage; or

c.   *you*, the driver, or any passenger in *your car* of a *newly acquired car* as to *property damage*; or

3.   which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1.   whose ownership, maintenance, or use is provided Liability Coverage by this policy.  This does not apply to a *stolen vehicle*;

2.   *owned by*, or furnished or available for the regular or frequent use of *you*;

3.   *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4.   *owned by* or rented to any government or any of its political subdivisions or agencies;

5.   designed for use primarily off public roads except while on public roads; or

6.   while located for use as a dwelling or other premises.

**Insuring Agreement**

1.   *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

a.   sustained by an *insured*; and

b.   caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

2.   *We* will pay compensatory damages for *property damage you* are legally entitled to recover from the owner or driver of an *uninsured motor vehicle* which is not a *stolen vehicle*. The *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

3.   *We* will pay only if:

a.   the limits of liability under any bodily injury liability bonds or policies applicable at the time of the accident:

(1)   have been exhausted by payment of judgments or settlements; or

(2)   have been offered to the *insured* in settlement and *we* have refused *our* written consent for settlement, but the *insured* protects *our* right of subrogation to the claim against the tortfeasor; or

b.   The *insured* is offered a settlement less than the limits of the applicable bodily injury liability coverage and gives *us* credit for the realized and unrealized portion of the bodily injury liability limits as if the full limits had been received and *we* have either:

(a)   given *our* written consent for settlement, or

(b)   refused *our* written consent for settlement, but the *insured* protects *our* right of subrogation to the claim against the tortfeasor.

**Deciding Fault and Amount**

1.   a.   The *insured* and *we* must agree to the answers to the following two questions:

(1)   Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

(2)   If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

b.   If there is no agreement on the answer to either question in 1.a. above, then:

(1)   the disagreement may, if both the *insured* and *we* mutually agree at the time of the disagreement, be resolved by arbitration as described in **Arbitration** below; or

(2)   the *insured* shall:

(a)   file a lawsuit, in a state or federal court that has jurisdiction, against:

(i)   *us*;

(ii)   the owner and driver of the *uninsured motor vehicle*, if known; and

(iii)   any other party or parties who may be legally liable for the *insured's* damages;

23
9837B

Exhibit 2 - Page 26 of 62

(b) consent to a jury trial if requested by *us*;

(c) agree that *we* may contest the issues of liability and the amount of damages; and

(d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Arbitration**

1. Arbitration will take place:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. another location, if both the *insured* and *we* agree.

2. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

The *insured* and *we* will each pay the cost of our own arbitrator and will pay fully:

a. attorney fees;

b. expenses for witnesses or evidence; and

c. expenses for transcripts of the arbitration

that either of us incur.

The cost of the third arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

3. The arbitrators shall only decide:

a. whether the *insured* is legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

b. the amount of damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*.

Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on the *insured* and *us*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

1. a. **Bodily Injury**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Bodily Injury Limits – Each Person, Each Accident".

(1) The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(a) the limit shown under "Each Person" reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*; or

(b) the amount of all damages resulting from that *bodily injury* reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*.

24
9837B

Exhibit 2 - Page 27 of 62

(2) Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident."

b. **Property Damage**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *property damage* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Property Damage Limit – Each Accident".

The limit shown is the most *we* will pay for all *property damage* resulting from any one accident.

2. These limits are reduced by:

a. the sum of all motor vehicle liability insurance proceeds paid and available to be paid to:

(1) or for the *insured*;

(2) an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

(3) the *insured's* medical providers; and

(4) attorneys as attorney fees on the claim of an *insured*.

b. the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy.

3. These Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage any damages:

1. that have already been paid to or for the *insured* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law;

3. that have already been paid as benefits under Personal Injury Protection Coverage of this policy or any other personal injury protection coverage;

4. that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy; or

5. that have already been paid under any policy of property insurance

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE*.

This exclusion does not apply if *we* have refused *our* consent for settlement, in writing, and the *insured* protects *our* right of subrogation to the claim of the tortfeasor;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* or furnished for the regular use of one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

25
9837B

Exhibit 2 - Page 28 of 62

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES;

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7. FOR THE FIRST:

a. $300 OF **PROPERTY DAMAGE** RESULTING FROM AN ACCIDENT WITH A LAND MOTOR VEHICLE WHOSE OWNER OR DRIVER REMAINS UNKNOWN; OR

b. $200 OF **PROPERTY DAMAGE** RESULTING FROM AN ACCIDENT WITH ANY OTHER LAND MOTOR VEHICLE.

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1. If Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy and Uninsured Motor Vehicle Coverage of any kind provided by one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury** or **property damage**, then:

a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as primary coverage for **bodily injury** sustained by an **insured** while **occupying your car** or a certified self-insured vehicle under ORS 806.140 without available primary coverage.

a. If:

(1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as excess coverage, but only to the extent the limit of this policy or the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above exceeds the primary coverage.

a. If:

(1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

26
9837B

Exhibit 2 - Page 29 of 62

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

**If Other Property Damage Coverage of Any Kind Applies**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as excess coverage to any kind of coverage which applies to *property damage* but only in the amount by which it exceeds that other coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving *spouse*;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

a. being driven by an *insured*; or

b. in the custody of an *insured* if at the time of the *loss* it is:

(1) not being driven; or

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*.

27
9837B

Exhibit 2 - Page 30 of 62

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

**1. Comprehensive Coverage**

*We* will pay:

a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

   (1) during the period that:

       (a) starts on the date *you* report the theft to *us*; and

       (b) ends on the earliest of:

           (i) the date the vehicle is returned to *your* possession in a drivable condition;

           (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

           (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

   (2) during the period that:

       (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

       (b) ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

**2. Collision Coverage**

*We* will pay for *loss caused by collision* to a *covered vehicle*.

**3. Emergency Road Service Coverage**

*We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

**4. Car Rental and Travel Expenses Coverage**

   **a. Car Rental Expense**

   *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car*

28
9837B

Exhibit 2 - Page 31 of 62

*business* while *your car* or a *newly ac-
quired car* is:

(1)  not drivable; or

(2)  being repaired

as a result of a *loss* which would be pay-
able under Comprehensive Coverage or
Collision Coverage.

*We* will pay this *daily rental charge* in-
curred during a period that:

(1)  starts on the date:

(a)  the vehicle is not drivable as a re-
sult of the *loss*; or

(b)  the vehicle is left at a repair facil-
ity if the vehicle is drivable; and

(2)  ends on the earliest of:

(a)  the date the vehicle has been re-
paired or replaced;

(b)  the date *we* offer to pay for the *loss*
if the vehicle is repairable but *you*
choose to delay repairs; or

(c)  five days after *we* offer to pay for
the *loss* if the vehicle is:

(i)  a total loss as determined by
*us*; or

(ii)  stolen and not recovered.

The amount of any such *daily rental
charge* incurred by *you* must be reported
to *us* before *we* will pay such amount.

**b.  Travel Expenses**

*We* will pay expenses for commercial
transportation, lodging, and meals if *your
car* or a *newly acquired car* is not drivable
as a result of a *loss* which would be pay-
able under Comprehensive Coverage or
Collision Coverage. The *loss* must occur
more than 50 miles from *your* home. *We*
will only pay these expenses if they are in-
curred by:

(1)  an *insured* during the period that:

(a)  starts after the *loss* occurs; and

(b)  ends on the earlier of:

(i)  the *insured's* arrival at his or
her destination or home if the
vehicle is left behind for re-
pairs; or

(ii)  the repair of the vehicle if the
*insured* waits for repairs be-
fore continuing on to his or
her destination or returning
home; and

(2)  *you*, or any *person you* choose, to
travel to retrieve the vehicle and drive
it to either the original destination or
*your* home if the vehicle was left be-
hind for repairs.

These expenses must be reported to *us* be-
fore *we* will pay such incurred expenses.

**c.  Rental Car – Repayment of Deductible
Expense**

*We* will pay the comprehensive deductible
or collision deductible an *insured* is re-
quired to pay the owner of a *car* rented
from a *car business*.

**Supplementary Payments – Comprehensive
Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we*
make a payment under Comprehensive Coverage or
Collision Coverage, then *we* will pay reasonable
expenses incurred to:

1.  tow the *covered vehicle* immediately after the *loss*:

a.  for a reasonable distance from the location of
the *loss* to any one repair facility chosen by
an *insured* or the owner of the *covered vehi-
cle*, if the *covered vehicle* is not drivable; or

b.  to any one repair facility or commercial
storage facility, neither of which was cho-
sen by an *insured* or the owner of the *cov-
ered vehicle*. *We* will also pay reasonable
expenses incurred to tow the *covered vehi-
cle* for a reasonable distance from this facil-
ity to any one repair facility chosen by an
*insured* or the owner of the *covered vehicle*,
if the *covered vehicle* is not drivable;

2.  store the *covered vehicle*, if it is not drivable
immediately after the *loss*, at:

a.  any one repair facility or commercial stor-
age facility, neither of which was chosen
by an *insured* or the owner of the *covered
vehicle*; and

b.  any one repair facility chosen by the owner
of the *covered vehicle*, and *we* determine
such vehicle is a total loss.

If the owner of the *covered vehicle* consents,
then *we* may move the *covered vehicle* at *our*
expense to reduce storage costs. If the owner
of the *covered vehicle* does not consent, then
*we* will pay only the storage costs that would
have resulted if *we* had moved the damaged
*covered vehicle*; and

3.  clean up debris from the *covered vehicle* at the
location of the *loss*. The most *we* will pay to
clean up the debris is $250 for any one *loss*.

29
9837B

Exhibit 2 - Page 32 of 62

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1.  **We** have the right to choose to settle with **you** or the owner of the **covered vehicle** in one of the following ways:

    a.  Pay the cost to repair the **covered vehicle** minus any applicable deductible.

        (1)  **We** have the right to choose one of the following to determine the cost to repair the **covered vehicle**:

            (a)  The cost agreed to by both the owner of the **covered vehicle** and **us**;

            (b)  A bid or repair estimate approved by **us**; or

            (c)  A repair estimate that is written based upon or adjusted to:

                (i)  the prevailing competitive price;

                (ii)  the lower of paintless dent repair pricing established by an agreement **we** have with a third party or the paintless dent repair price that is competitive in the market; or

                (iii)  a combination of (i) and (ii) above.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the **covered vehicle** is to be repaired as determined by a survey made by **us**. If asked, **we** will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the **covered vehicle** to its pre-loss condition.

            **You** agree with **us** that the repair estimate may include parts supplied by the **car's** manufacturer and other quality parts. Such quality parts will be, if certification is required by law, certified by an independent test facility to be at least equivalent to the parts being replaced.

            **You** also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

        (2)  The cost to repair the **covered vehicle** does not include any reduction in the value of the **covered vehicle** after it has been repaired, as compared to its value before it was damaged.

        (3)  If the repair or replacement of a part results in betterment of that part, then **you** or the owner of the **covered vehicle** must pay for the amount of the betterment.

        (4)  If **you** and **we** agree, then windshield glass will be repaired instead of replaced;

    b.  Pay the actual cash value of the **covered vehicle** minus any applicable deductible.

        (1)  The owner of the **covered vehicle** and **we** must agree upon the actual cash value of the **covered vehicle**. If there is disagreement as to the actual cash value of the **covered vehicle**, then the disagreement will be resolved by appraisal upon written request of the owner or **us**, within 60 days after proof of loss is filed, using the following procedures:

            (a)  The owner and **we** will each select a competent appraiser.

            (b)  The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

            (c)  Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

            (d)  The appraisers shall only determine the actual cash value of the **covered vehicle**. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

            (e)  A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

            (f)  **We** do not waive any of **our** rights by submitting to an appraisal.

30
9837B

Exhibit 2 - Page 33 of 62

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

**1. Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

**2. Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

**3. Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

31
9837B

Exhibit 2 - Page 34 of 62

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

a. LIEN AGREEMENT;

b. RENTAL AGREEMENT;

c. LEASE AGREEMENT; OR

d. SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a. FAILS OR IS DEFECTIVE; OR

b. IS DAMAGED AS A DIRECT RESULT OF:

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

32
9837B

Exhibit 2 - Page 35 of 62

20. ANY REDUCTION IN THE VALUE OF ANY *COVERED VEHICLE* AFTER IT HAS BEEN REPAIRED, AS COMPARED TO ITS VALUE BEFORE IT WAS DAMAGED.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

33
9837B

Exhibit 2 - Page 36 of 62

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means a ***person*** whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

***Pedestrian*** means a ***person*** who is not ***occupying***:

1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

**Insuring Agreement**

***We*** will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an ***insured***:

1. dies; or
2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The ***insured*** must be ***occupying*** or be struck as a ***pedestrian*** by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 180 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most ***we*** will pay for any one ***insured*** in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES

| If the amount shown on the Declarations Page for the ***insured*** is $5,000, then ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
| --- | --- |
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |

| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| --- | --- |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the ***insured*** is $10,000, then ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
| --- | --- |
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

The benefits shown in the schedules are doubled for an ***insured*** who at the time of the accident was ***occupying*** a ***private passenger car*** and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN ***INSURED***:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A ***CAR BUSINESS***;
2. WHILE ***OCCUPYING***, LOADING, OR UNLOADING:
   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;
   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:
      (1) ***INSURED'S*** BUSINESS; OR
      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A ***CAR BUSINESS***.

34
9837B

Exhibit 2 - Page 37 of 62

This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

c.  A MILITARY VEHICLE; OR

d.  A VEHICLE WHILE IT IS:

(1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

(2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.  This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving;

3.  WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

a.  A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

b.  A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

c.  A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4.  FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

a.  WAR OF ANY KIND;

b.  NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

c.  THE DISCHARGE OF A FIREARM;

d.  EXPOSURE TO *FUNGI*;

e.  SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

f.  DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving *spouse*;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

**1.  Notice to Us of an Accident or Loss**

The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible.  The notice must give *us*:

a.  *your* name;

b.  the names and addresses of all *persons* involved in the accident or *loss*;

c.  the hour, date, place, and facts of the accident or *loss*; and

d.  the names and addresses of witnesses to the accident or *loss*.

**2.  Notice to Us of a Claim or Lawsuit**

a.  If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

b.  If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

**3.  Insured's Duty to Cooperate With Us**

a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:

(1) making settlements;

(2) securing and giving evidence; and

(3) attending, and getting witnesses to attend, depositions, hearings, and trials.

b.  The *insured* must not, except at his or her own cost, voluntarily:

(1) make any payment to others; or

(2) assume any obligation to others

unless authorized by the terms of this policy.

35
9837B

Exhibit 2 - Page 38 of 62

c.  Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

**4.  Questioning Under Oath**

Under:

a.  Liability Coverage, each *insured*;

b.  Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c.  Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5.  Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a.  protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b.  make a prompt report to the police when the *loss* is the result of theft;

c.  allow *us* to:

(1)  inspect any damaged property before its repair or disposal;

(2)  test any part or equipment before that part or equipment is removed or repaired; and

(3)  move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d.  provide *us* all:

(1)  records;

(2)  receipts; and

(3)  invoices

that *we* request and allow *us* to make copies; and

e.  not abandon the *covered vehicle* to *us*.

**6.  Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, and Death, Dismemberment and Loss of Sight Coverage**

A *person* making claim under:

a.  Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1)  notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2)  be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3)  provide written authorization for *us* to obtain:

(a)  medical bills;

(b)  medical records;

(c)  wage, salary, and employment information; and

(d)  any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

36
9837B

Exhibit 2 - Page 39 of 62

(4) allow *us* to inspect the vehicle that:

    (a) the *insured occupied* in the accident; or

    (b) sustained *property damage*;

b. Uninsured Motor Vehicle Bodily Injury Coverage and Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, must:

    (1) report an accident, involving:

        (a) a motor vehicle whose owner and driver remain unknown; or

        (b) a *stolen vehicle*

    to the police within 72 hours and to *us* within 30 days.

    The *insured* or someone acting on the *insured's* behalf must also cooperate with the appropriate law enforcement agency in the prosecution of the theft of the *stolen vehicle*;

    (2) before *we* are required to give consent to a proposed offer of settlement:

        (a) allow *us* a reasonable time to collect and evaluate information relating to the proposed offer of settlement; and

        (b) promptly provide any reasonable information *we* request that is within the custody and control of the *insured* or a *person* acting on the *insured's* behalf; and

(3) when there is *property damage*:

    (a) protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

    (b) allow *us* to:

        (i) inspect any damaged property before its repair or disposal;

        (ii) test any part or equipment before that part or equipment is removed or repaired; and

        (iii) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

    (c) provide *us* all:

        (i) records,

        (ii) receipts; and

        (iii) invoices

    that *we* request and allow *us* to make copies; and

    (d) not abandon the *covered vehicle* to *us*; and

c. Personal Injury Protection Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, and Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident.

## GENERAL TERMS

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2. Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

**3. Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

37
9837B

Exhibit 2 - Page 40 of 62

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Oregon without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

**b. Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

**c. Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

**d. Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

38
9837B

Exhibit 2 - Page 41 of 62

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**6.  Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

**7.  Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured. Proof of mailing shall be sufficient proof of notice.

**8.  Cancellation**

**a.  How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

**b.  How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured. The notice will provide the date cancellation is effective.

Proof of mailing shall be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice:

(a) during the first 59 days following this policy's effective date; or

(b) because the premium is not paid when due,

then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 30 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; or

(b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the policy period, or, if the policy is a renewal, during the policy period or the 180 days immediately before the effective date of the policy.

**c.  Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9.  Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10.  Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

**11.  Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12.  Our Right to Recover Our Payments**

a.  Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages the following apply:

Exhibit 2 - Page 42 of 62

(1) **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(a) doing nothing to impair that legal right;

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask. These representatives shall have no conflict of interest with such *person*.

(2) **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

b. In addition, under Personal Injury Protection Coverage, *we* are entitled to recover *our* payments in accordance with the *Personal Injury Protection Act*. *We* may choose to recover by:

(1) interinsurer reimbursement in accordance with ORS 742.534, or

(2) lien in accordance with ORS 742.536, or

(3) subrogation in accordance with ORS 742.538.

When *we* ask, the *person* or organization to or for whom *we* make payment must take action to recover *our* payments through representatives *we* choose that have no conflict of interest with the *insured*. *We* will pay *our* share of costs and attorneys fees of such recovery. Our share is that percent of the costs and attorneys fees that the amount of *our* payments bears to the total recovery. *Our* share is that percent of the costs and attorney fees that the amount of *our* payment bears to the total recovery.

**13. Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

c. Uninsured Motor Vehicle Bodily Injury Coverage or Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, if within two years immediately following the date of the accident the *insured* or that *insured's* legal representative:

(1) has agreed with *us* on the amount due;

(2) or *we* have formally instituted arbitration proceedings in accordance with the **Arbitration** provision of the involved coverage;

(3) files a lawsuit against *us* in accordance with the **Deciding Fault and Amount** provision of the involved coverage; or

(4) has filed a lawsuit for *bodily injury* against the uninsured motorist and, within two years immediately following the date of settlement or final judgment against the uninsured motorist, the *insured* or that *insured's* legal representative has formally instituted arbitration proceedings or filed a lawsuit against *us* in accordance with the **Deciding Fault and Amount** provision of the involved coverage

*We* are not required to nor will *we* make payment to an *insured* after this time period has expired.

d. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

40
9837B

Exhibit 2 - Page 43 of 62

**14. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

**15. Conformity With Oregon Statute**

If any provisions of this policy are in conflict with the statutes of Oregon, they are amended to conform to these statutes.

41
9837B

Exhibit 2 - Page 44 of 62

Policy Form 9837B

Exhibit 2 - Page 45 of 62

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 274 2245-A12-37E
Sheet 1 of 1

# 6091T CERTIFICATE OF GUARANTEED RENEWAL

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

This endorsement is issued by the **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** of Bloomington, Illinois.

1. *We* will not cancel or nonrenew this policy as long as:

   a. this policy insures a *private passenger car*;

   b. premiums are paid when due;

   c. all drivers of *your car* maintain valid drivers licenses;

   d. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of

   Guaranteed Renewal available for use; and

   e. no *person* other than *you* becomes a named insured on this policy.

2. *You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company.

3. Coverage will be provided by *our* Car Policy, including any revisions that may be made to it.

Page 1 of 1                                                                                     6091T

Exhibit 2 - Page 46 of 62

00818/02489
ED1

**6937B.2 AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **THIS POLICY**

   Item 5. is changed to read:

   > *Your* purchase of this policy may allow:
   >
   > a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or
   >
   > b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **DEFINITIONS**

   a. Wherever "spouse" appears in the policy and endorsements, it is changed to "*spouse*".

   b. The terms "marriage", "married", and "marital" refer to legal union with another *person* either by:

      (1) marriage; or

      (2) domestic partnership

      that is recognized by and valid under Oregon law.

   c. The following is added:

   > *Personal Vehicle Sharing* means the use of a *private passenger car* by *persons* other than the vehicle's registered owner in connection with a *personal vehicle sharing program*.
   >
   > *Personal Vehicle Sharing Program* means a legal entity qualified to do business in the state of Oregon and engaged in the business of facilitating the sharing of *private passenger cars* for non-commercial use by individuals within the state.

3. **LIABILITY COVERAGE**

   a. **Insuring Agreement** and **Supplementary Payments** are replaced by the following:

      **Insuring Agreement**

      1. *We* will pay damages an *insured* becomes legally liable to pay because of:

         a. *bodily injury* to others; and

         b. damage to property

         caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

      2. *We* have the right to:

         a. investigate, negotiate, and settle any claim or lawsuit;

         b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

         c. appeal any award or legal decision

         for damages payable under this policy's Liability Coverage.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 47 of 62

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

    a. that seeks damages payable under this policy's Liability Coverage; and

    b. against which *we* defend an *insured* with attorneys chosen by *us*.

    *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

    a. before a judgment, but only the interest on the lesser of:

        (1) that part of the damages *we* pay; or

        (2) this policy's applicable Liability Coverage limit; and

    b. after a judgment.

    *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

    a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

    b. furnish or apply for any bonds; or

    c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

    a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

        (1) an arbitration;

        (2) a mediation; or

        (3) a trial of a lawsuit; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 48 of 62

b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

b. **Exclusions**

(1) The exception to exclusion 7. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(2) The exception to exclusion 10. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(3) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* FOR THE OWNERSHIP, MAINTENANCE, OR USE OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

4. **PERSONAL INJURY PROTECTION COVERAGE**

a. Any reference to Coverage "P5" is deleted.

b. **Additional Definitions**

Item 1. under *Personal Injury Protection Benefits* is changed to read:

*Personal Injury Protection Benefits* mean accident related:

1. **Medical Expenses**, which are *reasonable medical expenses* for *medical services* incurred within two years of the date of the accident;

c. **Arbitration**

(1) The first paragraph of item 2. is changed to read:

Arbitration will take place in Oregon, in the county in which the *insured* resides, unless the *insured* and *we* agree to another location.

(2) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

d. **Limits**

Item 4.b. is changed to read:

b. similar medical or disability benefits law. This does not

Page 3 of 11                                                6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 49 of 62

apply to benefits paid or payable under Medicare or Medicaid.

e. **Schedule**

The maximum monthly benefit for Loss of Income is changed to $3,000 for coverages P1, P2, P3, and P4.

f. **Exclusions**

The following are added:

1. THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING*, MAINTAINING, OR USING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*;

2. THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. *you* and *resident relatives* while *occupying* a *non-owned car* as a passenger.

5. **MEDICAL PAYMENTS COVERAGE**

   a. **Arbitration**

      (1) Item 1. is changed to read:

          If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved, if both the *insured* and *we* agree

at the time of the disagreement, by arbitration.

(2) The first paragraph of item 2. is changed to read:

    Arbitration will take place in Oregon, in the county in which the *insured* resides, unless the *insured* and *we* agree to another location.

(3) Item 5. is changed to read:

    Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

b. **Exclusions**

   (1) The exception to exclusion 5. is changed to read:

       This exclusion does not apply to:

       a. *you*;

       b. any *resident relative*; or

       c. any agent, employee, or business partner of a. or b. above

       while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

   (2) The following is added:

       THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN PERSONAL VEHICLE SHARING.

6. **UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE** and **UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE**

   a. **Arbitration**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015
6937B.2

Exhibit 2 - Page 50 of 62

(1) Item 1. is changed to read:

Arbitration will take place in Oregon:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. at another location, if both the *insured* and *we* agree.

(2) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

b. **Exclusions**

(1) Exclusion 2. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named

insured's *spouse* who resides primarily with that named insured, provided that the motor vehicle is *owned by* neither that named insured nor that spouse;

(2) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

7. **UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE**

a. **Additional Definitions**

*Uninsured Motor Vehicle* is changed to read:

*Uninsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

a. not insured or self-insured for bodily injury liability at the time of the accident; or

b. insured or self-insured for bodily injury liability at the time of the accident but:

(1) the limits are less than required by the financial responsibility law of Oregon;

(2) the insuring company:

(a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(b) is or becomes insolvent; or

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 51 of 62

(3) the total amount of insurance and self-insurance for bodily injury liability available from all sources is less than the amount of the *insured's* damages; or

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

a. the *insured*; or

b. any other *person* who has a claim under this coverage; or

3. which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2. *owned by*, or furnished or available for the regular or frequent use of, *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies, other than an Oregon public body;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

b. **Limits**

(1) Item 1.a. is changed to read:

The Uninsured Motor Vehicle Bodily Injury Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury Coverage – Bodily Injury Limits – Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(1) the amount of all compensatory damages resulting from that *bodily injury* reduced by:

(a) the sum of all motor vehicle bodily injury liability coverage proceeds, paid and available to be paid:

(i) to or for the *insured*;

(ii) to an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 52 of 62

(iii) to medical providers of the *insured*; and

(iv) to attorneys as attorney fees on the claim of the *insured*; and

(b) the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy; or

(2) the limit shown under "Each Person."

(2) Item 2. is deleted.

8. **UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE**

   a. **Additional Definitions**

     *Uninsured Motor Vehicle* is changed to read:

       *Uninsured Motor Vehicle* means a land motor vehicle:

     1. the ownership, maintenance, and use of which is:

       a. not insured or self-insured for bodily injury liability and property damage liability at the time of the accident; or

       b. insured or self-insured for bodily injury liability and property damage liability at the time of the accident:

        (1) but:

(a) the limits are less than required by the financial responsibility law of Oregon; or

(b) the insuring company:

    (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

    (ii) is or becomes insolvent; or

(2) but, with respect to *bodily injury* only:

(a) the limits are less than required by the financial responsibility law of Oregon;

(b) the insuring company:

    (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

    (ii) is or becomes insolvent; or

(c) the total amount of insurance and self-insurance for bodily injury liability available from all sources is less than the amount of the *insured's* damages; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 53 of 62

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured* or *property damage*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

    a. the *insured*;

    b. any other *person* who has a claim under this coverage; or

    c. *you*, the driver, or any passenger in *your car* or a *newly acquired car* as to *property damage*; or

3. which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2. *owned by* or furnished or available for the regular or frequent use of *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies, other than an Oregon public body;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

b. **Limits**

(1) Item 1.a. is changed to read:

**Bodily Injury**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Bodily Injury Limits – Each Person, Each Accident".

(1) The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

    (a) the amount of all compensatory damages resulting from that *bodily injury* reduced by:

      (i) the sum of all motor vehicle bodily injury liability coverage proceeds, paid and available to be paid:

        1) to or for the *insured*;

        2) to an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 54 of 62

3) to medical providers of the *insured*; and

4) to attorneys as attorney fees on the claim of the *insured*; and

(ii) the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy; or

(b) the limit shown under "Each Person."

(2) Subject to (1) above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

(2) Item 2. is deleted.

c. **Exclusions**

The following is added:

THERE IS NO COVERAGE FOR *PROPERTY DAMAGE* TO YOUR CAR OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

9. **PHYSICAL DAMAGE COVERAGES**

a. **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

(1) The paragraph that reads:

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, within 60 days after proof of loss is filed, using the following procedures:

is changed to read:

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is no agreement as to the actual cash value of the *covered vehicle*, then the disagreement may, if both the owner and *we* mutually agree at the time of disagreement, be resolved by appraisal. Such appraisal will occur within 60 days after proof of loss is filed using the following procedures:

(2) Item 1.b. (1) (c) is changed to read:

Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser. *We* shall reimburse the owner for the reasonable appraisal costs the owner incurs if the final appraisal decision under this policy provision is greater than the amount of *our* last offer prior to the incurrence of the appraisal costs.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 55 of 62

b. **Exclusions**

The following is added:

THERE IS NO COVERAGE FOR *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

10. **GENERAL TERMS**

a. The following is added to item 2. **Where Coverage Applies**:

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

b. Paragraph c. of item 5. **Premium** is changed to read:

The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

c. Item 7. **Nonrenewal** is changed to read:

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

d. Paragraph b. **How and When We May Cancel** under item 8. **Cancellation** is changed to read:

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

e. Item 11. **Concealment or Fraud** is changed to read:

There is no coverage under:

a. the Liability Coverage of this policy to the extent the Liability Coverage limits shown on the Declarations Page of this policy exceed the limits required by the financial responsibility law of Oregon; and

b. any other coverages of this policy

if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

f. The following provision is added:

**Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 56 of 62

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Personal Injury Protection Coverage**

c. **Medical Payments Coverage**

d. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement–**

**Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF OREGON IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Oregon in the United States of America.

6937B.2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 57 of 62

**6128BL AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

   a. **Additional Definition**

   Item 4. of *Insured* is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. **Exclusions**

   Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

3. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   Exclusion 4. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 58 of 62

4. **PHYSICAL DAMAGE COVERAGES**

a. The sentences that read:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page.  The deductible that applies to Collision Coverage is shown on the Declarations Page.

are changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expense** is changed to read:

**Car Rental Expense**

*We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) seven days after *we* offer to pay for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY *COVERED VEHICLE* WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 59 of 62

TO CARRY **PERSONS** FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

5. **INSURED'S DUTIES**

   a.  Item 6.a.(3) is changed to read:

      A **person** making claim under:

      a.  Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

        (3)  provide written authorization for **us** to obtain medical bills, medical records, wage information, salary information, employment information, and any other information **we** deem necessary to substantiate the claim.

        Such authorizations must not:

        (a)  restrict **us** from performing **our** business functions in:

          (i)  obtaining records, bills, information, and data; nor

          (ii)  using or retaining records, bills, information, and data collected or received by **us**;

        (b)  require **us** to violate federal or state laws or regulations;

        (c)  prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

        (d)  prevent **us** from disclosing claim information and data:

          (i)  to enable performance of **our** business functions;

          (ii)  to meet **our** reporting obligations to insurance regulators;

          (iii) to meet **our** reporting obligations to insurance data consolidators; and

          (iv) as otherwise permitted by law.

      If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

      If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

   b.  The following is added to item 6.:

      A **person** making claim under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015
6128BL

Exhibit 2 - Page 60 of 62

Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to *us* all information *we* need to comply with federal and state laws and regulations.

6. **GENERAL TERMS**

   a. The following is added to **Newly Owned or Newly Leased Car**:

      If a *resident relative* wants to insure a *car* newly *owned by* the *resident relative* with the **State Farm Companies** after that *car* ceases to be a *newly acquired car*, then the *resident relative* must apply to the **State Farm Companies** for a separate policy to insure the *car* newly *owned by* the *resident relative*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

   b. The following are added to **GENERAL TERMS**:

      **Electronic Delivery**

      With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

      **Our Rights Regarding Claim Information**

      a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

      b. Subject to a. above, *we* will not be restricted in or prohibited from:

         (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

         (2) using any of the items described in item b.(1) above; or

         (3) retaining:

            (a) any of the items in item b.(1) above; or

            (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

      c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

         (1) to enable performance of *our* business functions;

         (2) to meet *our* reporting obligations to insurance regulators;

         (3) to meet *our* reporting obligations to insurance data consolidators;

Page 4 of 5                                                      6128BL
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 61 of 62

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 2 - Page 62 of 62



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 065 0652-F10-37C including any endorsements, if applicable, for the policy term(s) October 6, 2017 to December 10, 2017 and insuring TRAVIS R BATTEN based on available records.

The policy was in effect on the loss date of October 31, 2017.

_Jolene Sd_
_____
Jolene Sand
Underwriter
Date:___December 22, 2017___

1004516

2000  143551  200  03-21-2012

EXHIBIT
**3**

Exhibit 3 - Page 1 of 62



**State Farm Mutual Automobile Insurance Company**

*PO Box 5000*
*DuPont, WA 98327-5000*

82628-1-P          MUTL  VOL

| DECLARATIONS PAGE |
|---|

NAMED NSURED

AT2          37-2134-1 P     A
001165  0058

BATTEN, TRAVIS R

| POLICY NUMBER   065 0652-F10-37C |
|---|
| POLICY PERIOD OCT 06 2017 to DEC 10 2017 |
| 12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
█████ 8015

AGENT
RORY WOLD INSURANCE AGENCY INC
2019 AERO WAY STE 101
MEDFORD, OR 97504-9789

PHONE: (541)773-1404  or  (541)773-1423

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 1997 | TOYOTA | 4 RUNNER | SPORT WG | ████████85719 | 603H50M000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A P2 | Combined Premium | ████ |
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000     $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P2 | Personal Injury Protec ion Coverage | |
| | (See Policy Schedule for Limits.) | |
| D | Comprehensive Coverage | |
| G | Collision Coverage - $250 Deductible | ████ |
| H | Emergency Road Service Coverage | |
| U | Uninsured Motor Vehicle Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250 000     $500,000 | |

| Total premium for OCT 06 2017 to DEC 10 2017 | ████ | This is not a bill. |
|---|---|---|

### IMPORTANT MESSAGES

Replaced policy number 0650652-37B.

**Your total renewal premium for JUN 10 2017 to DEC 10 2017 is** ████ **.**

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details )

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET –
FORM 9837B, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6091T     CERTIFICATE OF GUARANTEED RENEWAL.
6128BL    AMENDATORY ENDORSEMENT.
6937B.2   AMENDATORY ENDORSEMENT.

Agent:      RORY WOLD INSURANCE AGENCY INC
Telephone: (541)773-1404
Prepared   OCT 13 2017     2134-AE6

01569 /02896
155-3886.2 04-2005 (o1a025hd)
H5X0N   (o1a025tte)

See Reverse Side
(o1a025ec)

Exhibit 3 - Page 2 of 62

This policy is issued by State Farm Mutual Automobile Insurance Company.

### MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaukell*
Secretary

*Michael L. Tipsord*
President

B10

Exhibit 3 - Page 3 of 62



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Oregon**
Policy Form 9837B

Exhibit 3 - Page 4 of 62

# CONTENTS

**THIS POLICY** ................................................. 3

**DEFINITIONS** ............................................... 4

**LIABILITY COVERAGE** .............................. 5

    Additional Definition ............................... 5
    Insuring Agreement ................................. 6
    Supplementary Payments.......................... 6
    Limits ...................................................... 6
    Nonduplication......................................... 7
    Exclusions ............................................... 7
    If Other Liability Coverage Applies.................. 8
    Required Out-of-State Liability Coverage ........ 9
    Financial Responsibility Requirement ............. 9
    Financial Responsibility Certification ............. 9

**PERSONAL INJURY PROTECTION
COVERAGE** .................................................... 9

    Additional Definitions ......................... 9
    Insuring Agreement ...............................11
    Determining Medical Expenses .......................11
    Arbitration..............................................11
    Limits......................................................11
    Nonduplication......................................... 12
    Schedule.................................................. 12
    Exclusions ............................................... 12
    If Other Personal Injury Protection Coverage or
    Similar Vehicle Insurance Applies ................. 12
    Our Payment Options............................... 13

**MEDICAL PAYMENTS COVERAGE** ........... 14

    Additional Definitions ......................... 14
    Insuring Agreement ................................. 14
    Determining Medical Expenses ....................... 15
    Arbitration............................................... 15
    Limit ...................................................... 15
    Nonduplication......................................... 15
    Exclusions............................................... 15
    If Other Medical Payments Coverage or
    Similar Vehicle Insurance Applies ................. 16
    Our Payment Options.............................. 17

**UNINSURED MOTOR VEHICLE BODILY
INJURY COVERAGE** ................................... 17

    Additional Definitions ......................... 17
    Insuring Agreement........................... 18

Deciding Fault and Amount.............................19
Arbitration .................................................19
Limits .......................................................19
Nonduplication ...........................................20
Exclusions .................................................20
If Other Uninsured Motor Vehicle Coverage
of Any Kind Applies .....................................21
Our Payment Options ...................................22

**UNINSURED MOTOR VEHICLE BODILY
INJURY AND PROPERTY DAMAGE
COVERAGE** ...............................................22

    Additional Definitions ...............................22
    Insuring Agreement ..................................23
    Deciding Fault and Amount...........................23
    Arbitration ...............................................24
    Limits ......................................................24
    Nonduplication ..........................................25
    Exclusions ................................................25
    If Other Uninsured Motor Vehicle
    Coverage of Any Kind Applies........................26
    If Other Property Damage Coverage
    of Any Kind Applies.....................................27
    Our Payment Options ..................................27

**PHYSICAL DAMAGE COVERAGES** ...........27

    Additional Definitions ..................................27
    Insuring Agreements ...................................28
    Supplementary Payments – Comprehensive
    Coverage and Collision Coverage....................29
    Limits and Loss Settlement – Comprehensive
    Coverage and Collision Coverage....................30
    Limits – Car Rental and Travel Expenses
    Coverage ..................................................31
    Nonduplication...........................................31
    Exclusions ................................................31
    If Other Physical Damage Coverage or Similar
    Coverage Applies........................................33
    Financed Vehicle ........................................33
    Our Payment Options ..................................33

**DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE** ......................34

    Additional Definitions..................................34

    Insuring Agreement .....................................34

    Benefit .....................................................34

2
9837B

Exhibit 3 - Page 5 of 62

Death, Dismemberment and Loss of Sight Benefits Schedules............................................34

Exclusions....................................................34

Our Payment Options ...................................35

**INSURED'S DUTIES**............................................35

Notice to Us of an Accident or Loss ...............35

Notice to Us of a Claim or Lawsuit ................35

Insured's Duty to Cooperate With Us .............35

Questioning Under Oath ................................36

Other Duties Under the Physical Damage Coverages .......................................36

Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, and Death, Dismemberment and Loss of Sight Coverage....................................36

**GENERAL TERMS** ..........................................37

When Coverage Applies ................................37

Where Coverage Applies ...............................37

Newly Owned or Newly Leased Car...............37

Changes to This Policy ..................................38

Premium ......................................................38

Renewal .......................................................39

Nonrenewal ..................................................39

Cancellation..................................................39

Assignment...................................................39

Bankruptcy or Insolvency of the Insured ........39

Concealment or Fraud ...................................39

Our Right to Recover Our Payments...............40

Legal Action Against Us................................40

Severability ..................................................41

Conformity With Oregon Statute.....................41

## THIS POLICY

1. This policy consists of:
   a. the most recently issued Declarations Page;
   b. the policy booklet version shown on that Declarations Page; and
   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:
   a. *us*; and
   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:
   a. based on payment of premium for the coverages chosen; and
   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, AND ENDORSE-MENTS" on the Declarations Page, in reliance on the following statements:
      (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had:
      (a) vehicle insurance canceled or nonrenewed by an insurer; or
      (b) either:
         (i) a license to drive; or
         (ii) a vehicle registration suspended, revoked, or refused.
   (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:
   a. the statements in 3.b. above are made by such named insured or applicant and are true; and
   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

Exhibit 3 - Page 6 of 62

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other forms of these words and phrases. Defined words and phrases are printed in boldface italics.

***Bodily Injury*** means bodily injury to a ***person*** and sickness, disease, or death that results from it.

***Car*** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

***Car Business*** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

***Fungi*** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

***Newly Acquired Car*** means a ***car*** newly ***owned by you***. A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newly acquired car*** is delivered to ***you***.

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***:

   a. ***you***;

   b. any ***resident relative***;

   c. any other ***person*** who resides primarily in ***your*** household; or

   d. an employer of any ***person*** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. ***you***; or

   b. any ***resident relative***

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

***Person*** means a human being.

***Private Passenger Car*** means:

1. a ***car*** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry ***persons*** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. that is not used for:

      (1) wholesale; or

      (2) retail

      pickup or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:

1. a relative of that named insured or his or her ***spouse*** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise

Exhibit 3 - Page 7 of 62

maintains his or her primary residence with that named insured; or

2. a minor who is being raised as a child of that named insured, his or her spouse, or a *person* described in 1. above.

See Personal Injury Protection Coverage for the definition of *Resident Relative* used there.

*Spouse* means a *person* legally united with another *person* either by:

1. marriage; or
2. domestic partnership

that is recognized by and valid under Oregon law.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;
2. State Farm Fire and Casualty Company; and
3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. damage; or
   e. theft; and
2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. only those trailers:
   a. designed to be pulled by a *private passenger car*;
   b. not designed to carry *persons*; and
   c. while not used as premises for office, store, or display purposes; or
2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page and includes the *spouse* of the first *person* shown as a named insured if the *spouse* resides primarily with that named insured.

See Personal Injury Protection Coverage for the definition of *You* or *Your* used there.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;
2. the date this policy is no longer in force; or
3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a *non-owned car*; or
      (2) a *temporary substitute car*;
2. the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's spouse*;

5
9837B

Exhibit 3 - Page 8 of 62

3. any other *person* for his or her use of:

    a. *your car*;

    b. a *newly acquired car*;

    c. a *temporary substitute car*; or

    d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

    a. damages an *insured* becomes legally liable to pay because of:

        (1) *bodily injury* to others; and

        (2) damage to property

    caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

    b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

    c. court costs charged to an *insured* and resulting from that part of a lawsuit:

        (1) that seeks damages payable under this policy's Liability Coverage; and

        (2) against which *we* defend an *insured* with attorneys chosen by *us*.

    *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

    a. investigate, negotiate, and settle any claim or lawsuit;

    b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

    c. appeal any award or legal decision

for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above,

the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

    a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

    b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

    *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

    a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

    b. furnish or apply for any bonds; or

    c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

    a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

        (1) an arbitration;

        (2) a mediation; or

        (3) a trial of a lawsuit; and

    b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will

6

9837B

Exhibit 3 - Page 9 of 62

pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident. A *person's* damages for *bodily injury* are reduced by any amount that has already been paid as benefits under Personal Injury Protection Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under any kind of Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply

to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

    *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

7
9837B

Exhibit 3 - Page 10 of 62

13. WHILE USING A **TRAILER** WITH A MOTOR VEHICLE IF THAT **INSURED** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

    a. OFF PUBLIC ROADS AND BEING PREPARED, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILLCLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same accident, then:

    a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. a. The Liability Coverage provided by this policy applies as primary coverage for:

      (1) the ownership, maintenance, or use of **your car** or a **trailer** attached to it; and

      (2) the maintenance, or use of a **temporary substitute car** or a **non-owned car** provided by a **person** in the business of selling, renting, leasing, or repairing motor vehicles to the **insured** in the course of that business but only if there is a written agreement between the **insured** and that **person** that specifically indicates that the **insured** receiving the **temporary substitute car** or **non-owned car** is liable for any injury, death, or damage arising out of its use. Any similar coverage available

to the **person** providing the **temporary substitute car** or **non-owned car** is excess.

    b. If:

      (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

    then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as primary coverage.

    c. If:

      (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

    then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

    a. If:

      (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as excess coverage; and

      (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

    then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as excess coverage.

8
9837B

Exhibit 3 - Page 11 of 62

b.  If:

(1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1.  an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2.  this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Requirement**

This policy provides liability coverage in compliance with, and is subject to, the Oregon Vehicle Code relating to financial responsibility requirements.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P1", "P2", "P3", "P4", or "P5" is shown under "SYMBOLS" on the Declarations Page. If a deductible applies, then it is shown on the Declarations Page.

**Additional Definitions**

**Insured** means:

1.  **you**;

2.  **resident relatives**; and

3.  any other **person** who suffers **bodily injury** while **occupying** or through being struck as a **pedestrian** by:

a.  **your car**; or

b.  a **newly acquired car** which is either the same type of vehicle as **your car** or is required to be insured by the **Personal Injury Protection Act**.

Such vehicle must be operated by **you** or with **your** permission and its use must be within the scope of such permission.

**Medical Services** mean expenses for necessary:

1.  medical, surgical, X-ray, dental, ambulance, hospital and professional nursing; and

2.  eyeglasses, hearing aids and prosthetic devices.

**Motor Vehicle** means a self propelled land motor vehicle or any type of trailer. It does not include a vehicle:

1.  designed for use primarily off public roads except while on public roads;

2.  operated on rails or crawler-treads; or

3.  while located for use as a dwelling or other premises.

**Personal Injury Protection Act** means sections 742.520 through 742.544 of the Oregon Insurance Code and any amendments.

**Personal Injury Protection Benefits** mean accident related:

1.  **Medical Expenses**, which are **reasonable medical expenses** for **medical services** incurred within one year of the date of the accident;

2.  **Funeral Expenses**, which are reasonable and necessary expenses incurred within one year of the accident for funeral expenses;

3.  **Loss of Income**, which covers the **insured's** actual loss of earnings, if the **insured** usually works for pay, because of inability to do the basic duties of his or her job.

9
9837B

Exhibit 3 - Page 12 of 62

The period of disability must continue for at least 14 days and ends on the earlier of:

   a.  the date the **insured** is able to return to his or her usual job; or

   b.  52 weeks;

4.  **Loss of Services Expenses**, which covers reasonable expenses actually incurred for essential services the **insured** would have performed without pay for his or her family, if the **insured** usually does not work for pay, except for the injury. The services must be performed by a **person** who is neither related to the **insured** nor a resident in the same household as the **insured**.

The period of disability must continue for at least 14 days and ends on the earlier of:

   a.  the date the **insured** is able to perform these essential services; or

   b.  the date payment has been made in the aggregate for 52 weeks; and

5.  **Child Care Expenses** for an **insured** who is a parent of a minor child and is required to be hospitalized for a minimum of 24 hours.

Payments begin after the initial 24 hours of hospitalization and continue until the earlier of:

   a.  the date the **insured** can return to work, if he or she usually works for pay;

   b.  the date the **insured** is again able to perform essential services, if he or she does not usually work for pay; or

   c.  the date the limit shown in the **Schedule** for **Child Care Expenses** is exhausted.

**Pedestrian** means a **person** while not **occupying** a self-propelled vehicle other than a wheelchair or a similar low-powered motorized or mechanically propelled vehicle:

1.  that is designed specifically for use by a physically disabled **person**; and

2.  that is determined to be medically necessary for the occupant of the wheelchair or other low-powered vehicle.

**Reasonable Medical Expenses** mean fees for **medical services**:

1.  if subject to Oregon Revised Statute section 742.525, billed in accordance with Oregon Revised Statute section 742.525; or

2.  if not subject to Oregon Revised Statute section 742.525, that are the lowest of any one of the following charges:

   a.  the usual and customary fees charged by a majority of healthcare providers who provide similar **medical services** in the geographical area in which the charges were incurred;

   b.  The fee specified in any fee schedule:

     (1)  applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where **medical services** are provided; and

     (2)  as prescribed or authorized by the law of the state where **medical services** are provided;

   c.  the fees agreed to by both the **insured's** healthcare provider and **us**; or

   d.  the fees agreed upon between the **insured's** healthcare provider and a third party when **we** have a contract with such third party.

**Resident Relative** means a **person**, other than **you**, who resides primarily with a named insured on the Declarations Page and who is:

1.  a relative of that named insured or his or her **spouse** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2.  a minor who is being raised as a child of that named insured, his or her **spouse**, or a **person** described in 1. above

**You** or **Your** means the named insured or named insureds shown on the Declarations Page and includes the **spouse** of that named insured if the **spouse** resides primarily with that named insured.

**Insuring Agreement**

**We** will pay **personal injury protection benefits** in accordance with the **Personal Injury Protection Act** for **bodily injury** to an **insured** caused by accident resulting from the occupancy, maintenance or use of a **motor vehicle**.

**Determining Medical Expenses**

**We** have the right to:

   a.  obtain and use:

     (1)  peer reviews; and

     (2)  medical bill reviews

     to determine if the incurred charges are **reasonable medical expenses** for the **bodily injury** sustained;

   b.  use a medical examination of the injured **person** to determine if:

10
9837B

Exhibit 3 - Page 13 of 62

(1) the *bodily injury* was caused by a *motor vehicle* accident; and

(2) the expenses incurred are *reasonable medical expenses* for the *bodily injury* sustained; and

c. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to the amount the *insured* is entitled to collect for *personal injury benefits*, then the disagreement will be resolved, if both the *insured* and *we* mutually agree at the time of the disagreement, by arbitration.

2. Arbitration will take place in the county in which the *insured* resides unless the *insured* and *we* agree to another location.

   The *insured* and *we* will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the arbitrator.

   The cost of the arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

   *We* are not responsible for:

   a. attorney fees;

   b. expenses for witnesses or evidence; and

   c. expenses for transcripts of the arbitration

   that are incurred by the *insured*.

3. The arbitrator shall only decide whether incurred expenses and actual loss of earnings claimed by an *insured* are payable as *personal injury protection benefits* and the amount of such payment. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

   a. *us*; and

   b. the *insured*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

The Personal Injury Protection Coverage limits are shown in the following **Schedule**.

1. The applicable amount shown below the Personal Injury Protection Coverage Symbol found on the Schedule that matches the Personal Injury Protection Coverage Symbol shown under "Symbols" on the Declarations Page for each *personal injury protection benefit* is the most *we* will pay for any one *insured* in any one accident.

   Any amount payable to *you* or *resident relatives* for Medical Expenses, Loss of Income, or Loss of Services Expenses will be reduced by any deductible that is shown on the Declarations Page. The deductible will be shared equally and be applied once per accident.

2. The most *we* will pay per month for Loss of Income is the lesser of:

   a. 70% of the actual loss of earnings from work or employment; or

   b. the amount shown in 3.(a) of the Schedule for *your* Personal Injury Protection Coverage Symbol.

3. The most *we* will pay for Child Care Expenses:

   a. per day is the amount shown in 5.(a) of the Schedule for *your* Personal Injury Protection Coverage Symbol; and

   b. subject to a. above, in total is the amount shown in 5.(b) of the Schedule for *your* Personal Injury Protection Coverage Symbol.

4. Any amount payable under Personal Injury Protection Coverage will be reduced by any amount paid or payable to or for the *insured* under any:

   a. workers' compensation law; or

   b. any similar medical or disability benefits law. This does not apply to benefits paid or payable under Medicare.

5. Personal Injury Protection Coverage will be excess over any other collateral benefits, including but not limited to insurance benefits, governmental benefits, or gratuitous benefits to which a *pedestrian insured* is entitled. This does not apply to:

   a. benefits paid or payable under Medicare; or

   b. *you* or *resident relatives*.

   If more than one policy applies, then 4. of **If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies** also applies in its entirety.

**Nonduplication**

The *insured* may not recover more than once for the same *personal injury protection benefit*.

11
9837B

Exhibit 3 - Page 14 of 62

**Schedule**

| Coverage Symbol | P1 | P2 | P3 | P4 | P5 |
|---|---|---|---|---|---|
| 1. Medical Expenses | $15,000 | $25,000 | $50,000 | $100,000 | $100,000 |
| 2. Funeral Expenses | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| 3. Loss of Income | | | | | |
|   (a) Maximum monthly benefit | $1,250 | $1,250 | $1,250 | $1,250 | $1,500 |
|   (b) Aggregate number of weeks | 52 | 52 | 52 | 52 | 52 |
| 4. Loss of Services Expenses | | | | | |
|   (a) Maximum daily benefit | $30 | $30 | $30 | $30 | $30 |
|   (b) Aggregate number of weeks | 52 | 52 | 52 | 52 | 52 |
| 5. Child Care Expenses | | | | | |
|   (a) Daily benefit | $25 | $25 | $25 | $25 | $25 |
|   (b) Maximum benefit | $750 | $750 | $750 | $750 | $750 |

**Exclusions**

THERE IS NO COVERAGE FOR:

1. AN *INSURED* WHO INTENTIONALLY CAUSES *BODILY INJURY* TO HIMSELF OR HERSELF;

2. *YOU* OR ANY *RESIDENT RELATIVE* FOR *BODILY INJURY* RESULTING FROM THE MAINTENANCE OR USE OF A *MOTOR VEHICLE*, INCLUDING A MOTORCYCLE OR MOPED, WHICH IS:

   a. *OWNED BY* OR FURNISHED OR AVAILABLE FOR REGULAR USE BY *YOU* OR ANY *RESIDENT RELATIVE*; AND

   b. NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

3. LOSS OF INCOME OR LOSS OF SERVICES EXPENSES FOR A *PEDESTRIAN* STRUCK OUTSIDE OF OREGON. This exclusion does not apply to *you*, *your spouse* or any *relative*;

4. AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

5. AN *INSURED* WHO IS PARTICIPATING IN ANY PREARRANGED OR ORGANIZED RACING OR SPEED CONTEST OR PRACTICE OR PREPARATION FOR ANY SUCH CONTEST;

6. AN *INSURED* WHO WILLFULLY CONCEALS OR MISREPRESENTS ANY MATERIAL FACT IN CONNECTION WITH A CLAIM FOR *PERSONAL INJURY PROTECTION BENEFITS*.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover the same *personal injury protection benefits* under both this coverage and other personal injury protection coverage, medical payments coverage, or similar vehicle insurance.

2. If Personal Injury Protection Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. a. The Personal Injury Protection Coverage provided by this policy applies as primary coverage:

   (1) for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it; or

   (2) for *you* and *resident relatives* who sustain *bodily injury* while a *pedestrian*.

Exhibit 3 - Page 15 of 62

b. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *personal injury protection benefits* payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary.

c. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *personal injury protection benefits* payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides

Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of *personal injury protection benefits* payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess for the same accident,

then the *State Farm Companies* will pay the proportion of *personal injury protection benefits* payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving *spouse*;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* and funeral services.

13
9837B

Exhibit 3 - Page 16 of 62

# MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you*** and ***resident relatives****:*

   a. while ***occupying***:

      (1) ***your car***;

      (2) a ***newly acquired car***;

      (3) a ***temporary substitute car***;

      (4) a ***non-owned car***; or

      (5) a ***trailer*** while attached to a ***car*** described in (1), (2), (3), or (4) above; or

   b. if struck as a ***pedestrian*** by a motor vehicle or any type of trailer; and

2. any other ***person*** while ***occupying***:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used within the scope of ***your*** consent.

***Medical Expenses*** mean ***reasonable expenses*** for ***medical services***.

***Medical Services*** mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the ***bodily injury***;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the ***bodily injury***;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

***Pedestrian*** means a ***person*** who is not ***occupying***:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

***Reasonable Expenses*** mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar ***medical services*** in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where ***medical services*** are provided; and

   b. as prescribed or authorized by the law of the state where ***medical services*** are provided;

3. The fees agreed to by both the ***insured's*** healthcare provider and ***us***; or

4. The fees agreed upon between the ***insured's*** healthcare provider and a third party when ***we*** have a contract with such third party.

**Insuring Agreement**

***We*** will pay:

1. ***medical expenses*** incurred because of ***bodily injury*** that is sustained by an ***insured*** and caused by a motor vehicle accident if:

   a. that ***insured*** is first provided ***medical services*** within one year immediately following the date of the accident; and

   b. such ***medical expenses*** are for ***medical services*** that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an ***insured*** who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of ***bodily injury*** sustained in such accident.

**Determining Medical Expenses**

***We*** have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are ***medical expenses***;

14
9837B

Exhibit 3 - Page 17 of 62

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. Arbitration will take place in the county in which the *insured* resides unless the *insured* and *we* agree to another location.

   The *insured* and *we* will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the arbitrator.

   The cost of the arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

   *We* are not responsible for:

   a. attorney fees;

   b. expenses for witnesses or evidence; and

   c. expenses for transcripts of the arbitration

   that are incurred by the *insured*.

3. The arbitrator shall only decide whether incurred charges are *medical expenses*. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or any kind of Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

15
9837B

Exhibit 3 - Page 18 of 62

b.  any *resident relative*

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6.  WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7.  WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8.  WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9.  WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

    a.  IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

    b.  RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a.  NUCLEAR REACTION;

    b.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a.  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1.  An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2.  If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a.  the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b.  the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3.  The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

    a.  If:

        (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

        then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

    b.  If:

        (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

16
9837B

Exhibit 3 - Page 19 of 62

then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

     (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

   then **we** will pay the proportion of **medical expenses** and funeral expenses payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

     (1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

   then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving **spouse**;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;

4. A **person** authorized by law to receive such payment; or

5. Any **person** or organization that provides the **medical services** or funeral services.

## UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE

This policy provides Uninsured Motor Vehicle Bodily Injury Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;

2. **resident relatives**;

3. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **non-owned car** operated by:

     (1) a **person** shown as a named insured on the Declarations Page; or

     (2) a **spouse** of a **person** shown as a named insured on the Declarations Page if the **spouse** resides primarily with such **person**.

Such vehicle must be used within the scope of **your** consent. Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

17
9837B

Exhibit 3 - Page 20 of 62

***Stolen Vehicle*** means either ***your car*** or a ***newly acquired car*** that is being operated without ***your*** consent by a ***person*** who does not have collectible motor vehicle bodily injury liability insurance.

***Uninsured Motor Vehicle*** means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

    a. not insured or bonded for bodily injury liability at the time of the accident; or

    b. insured or bonded for bodily injury liability at the time of the accident;

        (1) but:

            (a) the limits are less than required by the financial responsibility law of Oregon; or

            (b) the insuring company:

                (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

                (ii) is or becomes insolvent; or

        (2) whose limits of insurance and self-insurance for bodily injury liability from all sources:

            (a) are less than the Uninsured Motor Vehicle Bodily Injury Coverage limits of this policy; or

            (b) have been reduced by payments to ***persons*** other than the ***insured*** to less than the Uninsured Motor Vehicle Bodily Injury Coverage limits of this policy;

2. the owner and driver of which remain unknown and which causes ***bodily injury*** to the ***insured***. If there is no physical contact between that land motor vehicle and the ***insured*** or the vehicle the ***insured*** is ***occupying***, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

    a. the ***insured***; or

    b. any other ***person*** who has a claim under this coverage; or

3. which is a ***stolen vehicle***.

***Uninsured Motor Vehicle*** does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a ***stolen vehicle***.

2. ***owned by***, or furnished or available for the regular or frequent use of ***you***;

3. ***owned by***, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. ***owned by*** or rented to any government or any of its political subdivisions or agencies;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

**Insuring Agreement**

1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** must be:

    a. sustained by an ***insured***; and

    b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle.

2. ***We*** will pay only if:

    a. the limits of liability under any bodily injury liability bonds or policies applicable at the time of the accident:

        (1) have been exhausted by payment of judgments or settlements; or

        (2) have been offered to the ***insured*** in settlement and ***we*** have refused ***our*** written consent for settlement, but the ***insured*** protects ***our*** right of subrogation to the claim against the tortfeasor; or

    b. The ***insured*** is offered a settlement less than the limits of the applicable bodily injury liability coverage and gives ***us*** credit for the realized and unrealized portion of the bodily injury liability limits as if the full limits had been received and ***we*** have either:

        (a) given ***our*** written consent for settlement; or

        (b) refused ***our*** written consent for settlement, but the ***insured*** protects ***our*** right of subrogation to the claim against the tortfeasor.

**Deciding Fault and Amount**

1. a. The ***insured*** and ***we*** must agree to the answers to the following two questions:

        (1) Is the ***insured*** legally entitled to recover compensatory damages from the owner or driver of the ***uninsured motor vehicle***?

18
9837B

Exhibit 3 - Page 21 of 62

(2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then:

(1) the disagreement may, if both the *insured* and *we* mutually agree at the time of the disagreement, be resolved by arbitration as described in **Arbitration** below; or

(2) the *insured* shall:

(a) file a lawsuit, in a state or federal court that has jurisdiction, against:

(i) *us*;

(ii) the owner and driver of the *uninsured motor vehicle*, if known; and

(iii) any other party or parties who may be legally liable for the *insured's* damages;

(b) consent to a jury trial if requested by *us*;

(c) agree that *we* may contest the issues of liability and the amount of damages; and

(d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Arbitration**

1. Arbitration will take place:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. another location, if both the *insured* and *we* agree.

2. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

The *insured* and *we* will each pay the cost of our own arbitrator and will pay fully:

a. attorney fees;

b. expenses for witnesses or evidence; and

c. expenses for transcripts of the arbitration

that either of us incur.

The cost of the third arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

3. The arbitrators shall only decide:

a. whether the *insured* is legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

b. the amount of damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*.

Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on the *insured* and *us*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

1. The Uninsured Motor Vehicle Bodily Injury Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury Coverage – Bodily Injury Limits – Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

19
9837B

Exhibit 3 - Page 22 of 62

(1) the limit shown under "Each Person" reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*; or

(2) the amount of all damages resulting from that *bodily injury* reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident."

2. These limits are reduced by:

a. the sum of all motor vehicle liability insurance proceeds paid and available to be paid to:

(1) or for the *insured*;

(2) an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

(3) the *insured's* medical providers; and

(4) attorneys as attorney fees on the claim of an *insured*.

b. the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy.

3. These Uninsured Motor Vehicle Bodily Injury Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Bodily Injury Coverage any damages:

1. that have already been paid to or for the *insured* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as benefits under Personal Injury Protection Coverage of this policy or other personal injury protection coverage; or

4. that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

This exclusion does not apply if *we* have refused *our* consent for settlement, in writing, and the *insured* protects *our* right of subrogation to the claim of the tortfeasor;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* or furnished for the regular use of one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

20
9837B

Exhibit 3 - Page 23 of 62

4. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1. If Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy and any kind of Uninsured Motor Vehicle Coverage provided by one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as primary coverage for *bodily injury* sustained by an *insured* while *occupying your car* or a certified self-insured vehicle under ORS 806.140 without available primary coverage.

    a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

    then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

    b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

    then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as excess coverage, but only to the extent the limit of this policy or the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above exceeds the primary coverage.

    a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

    then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

    b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

Exhibit 3 - Page 24 of 62

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving **spouse**;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**; or

4. A **person** authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE

This policy provides Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage if "U1" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;

2. **resident relatives**;

3. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **non-owned car** operated by:

      (1) a **person** shown as a named insured on the Declarations Page; or

      (2) a **spouse** of a **person** shown as a named insured on the Declarations Page if the **spouse** resides primarily with such **person**.

   Such vehicle must be used within the scope of **your** consent. Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

**Property Damage** – means damage to **your car** or a **newly acquired car**. **Property Damage** does not include loss of use.

**Stolen Vehicle** means either **your car** or a **newly acquired car** that is being operated without **your** consent by a **person** who does not have collectible motor vehicle bodily injury liability insurance.

**Uninsured Motor Vehicle** means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability and property damage liability at the time of the accident; or

   b. insured or bonded for bodily injury liability and property damage liability at the time of the accident;

      (1) but:

         (a) the limits are less than required by the financial responsibility law of Oregon; or

         (b) the insuring company:

            (i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

            (ii) is or becomes insolvent; or

      (2) with respect to **bodily injury** only, whose limits of insurance and self-insurance for bodily injury liability from all sources:

         (a) are less than the Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for **bodily injury** of this policy; or

         (b) have been reduced by payments to **persons** other than the **insured** to less than the Underinsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for **bodily injury** of this policy;

2. the owner and driver of which remain unknown and which causes **bodily injury** to the **insured** or **property damage**. If there is no physical

22
9837B

Exhibit 3 - Page 25 of 62

contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

   a.   the *insured*;

   b.   any other *person* who has a claim under this coverage; or

   c.   *you*, the driver, or any passenger in *your car* of a *newly acquired car* as to *property damage*; or

3.   which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1.   whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2.   *owned by*, or furnished or available for the regular or frequent use of *you*;

3.   *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4.   *owned by* or rented to any government or any of its political subdivisions or agencies;

5.   designed for use primarily off public roads except while on public roads; or

6.   while located for use as a dwelling or other premises.

**Insuring Agreement**

1.   *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

   a.   sustained by an *insured*; and

   b.   caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

2.   *We* will pay compensatory damages for *property damage you* are legally entitled to recover from the owner or driver of an *uninsured motor vehicle* which is not a *stolen vehicle*. The *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

3.   *We* will pay only if:

   a.   the limits of liability under any bodily injury liability bonds or policies applicable at the time of the accident:

     (1)   have been exhausted by payment of judgments or settlements; or

     (2)   have been offered to the *insured* in settlement and *we* have refused *our* written consent for settlement, but the *insured* protects *our* right of subrogation to the claim against the tortfeasor; or

   b.   The *insured* is offered a settlement less than the limits of the applicable bodily injury liability coverage and gives *us* credit for the realized and unrealized portion of the bodily injury liability limits as if the full limits had been received and *we* have either:

     (a)   given *our* written consent for settlement, or

     (b)   refused *our* written consent for settlement, but the *insured* protects *our* right of subrogation to the claim against the tortfeasor.

**Deciding Fault and Amount**

1.   a.   The *insured* and *we* must agree to the answers to the following two questions:

     (1)   Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

     (2)   If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

   b.   If there is no agreement on the answer to either question in 1.a. above, then:

     (1)   the disagreement may, if both the *insured* and *we* mutually agree at the time of the disagreement, be resolved by arbitration as described in **Arbitration** below; or

     (2)   the *insured* shall:

       (a)   file a lawsuit, in a state or federal court that has jurisdiction, against:

         (i)   *us*;

         (ii)   the owner and driver of the *uninsured motor vehicle*, if known; and

         (iii)   any other party or parties who may be legally liable for the *insured's* damages;

23
9837B

Exhibit 3 - Page 26 of 62

(b) consent to a jury trial if requested by *us*;

(c) agree that *we* may contest the issues of liability and the amount of damages; and

(d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Arbitration**

1. Arbitration will take place:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. another location, if both the *insured* and *we* agree.

2. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

The *insured* and *we* will each pay the cost of our own arbitrator and will pay fully:

a. attorney fees;

b. expenses for witnesses or evidence; and

c. expenses for transcripts of the arbitration

that either of us incur.

The cost of the third arbitrator and other joint costs will be shared equally. However, the most the *insured* will pay for these shared costs is $100. *We* will pay the rest.

3. The arbitrators shall only decide:

a. whether the *insured* is legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

b. the amount of damages that the *insured* is legally entitled to collect from the owner or driver of the *uninsured motor vehicle*.

Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on the *insured* and *us*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

**Limits**

1. a. **Bodily Injury**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Bodily Injury Limits – Each Person, Each Accident".

(1) The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(a) the limit shown under "Each Person" reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*; or

(b) the amount of all damages resulting from that *bodily injury* reduced by the sum of all motor vehicle liability insurance proceeds paid and available to be paid to or for the *insured*, to an insurer as reimbursement for personal injury protection benefits provided to the *insured*, to medical providers of the *insured*, and to attorneys as attorney fees on the claim of the *insured*.

24
9837B

Exhibit 3 - Page 27 of 62

(2) Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident."

b. **Property Damage**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *property damage* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Property Damage Limit – Each Accident".

The limit shown is the most *we* will pay for all *property damage* resulting from any one accident.

2. These limits are reduced by:

a. the sum of all motor vehicle liability insurance proceeds paid and available to be paid to:

(1) or for the *insured*;

(2) an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

(3) the *insured's* medical providers; and

(4) attorneys as attorney fees on the claim of an *insured*.

b. the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy.

3. These Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage any damages:

1. that have already been paid to or for the *insured* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law;

3. that have already been paid as benefits under Personal Injury Protection Coverage of this policy or any other personal injury protection coverage;

4. that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy; or

5. that have already been paid under any policy of property insurance

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE*.

This exclusion does not apply if *we* have refused *our* consent for settlement, in writing, and the *insured* protects *our* right of subrogation to the claim of the tortfeasor;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's *spouse* who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* or furnished for the regular use of one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

Exhibit 3 - Page 28 of 62

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES;

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7. FOR THE FIRST:

a. $300 OF ***PROPERTY DAMAGE*** RESULTING FROM AN ACCIDENT WITH A LAND MOTOR VEHICLE WHOSE OWNER OR DRIVER REMAINS UNKNOWN; OR

b. $200 OF ***PROPERTY DAMAGE*** RESULTING FROM AN ACCIDENT WITH ANY OTHER LAND MOTOR VEHICLE.

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1. If Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy and Uninsured Motor Vehicle Coverage of any kind provided by one or more other vehicle policies issued to **you** or any ***resident relative*** by the **State Farm Companies** apply to the same ***bodily injury*** or ***property damage***, then:

a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as primary coverage for ***bodily injury*** sustained by an ***insured*** while ***occupying your car*** or a certified self-insured vehicle under ORS 806.140 without available primary coverage.

a. If:

(1) this is the only vehicle policy issued to **you** or any ***resident relative*** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to **you** or any ***resident relative*** by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as primary coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as excess coverage, but only to the extent the limit of this policy or the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above exceeds the primary coverage.

a. If:

(1) this is the only vehicle policy issued to **you** or any ***resident relative*** by the **State Farm Companies** that provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

(2) uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

26
9837B

Exhibit 3 - Page 29 of 62

b.  If:

(1)  more than one vehicle policy issued to *you* or any *resident relative* by the **State Farm Companies** provides Uninsured Motor Vehicle Coverage of any kind which applies to the accident as excess coverage; and

(2)  uninsured motor vehicle coverage of any kind provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage of any kind that apply as excess coverage.

**If Other Property Damage Coverage of Any Kind Applies**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy applies as excess coverage to any kind of coverage which applies to *property damage* but only in the amount by which it exceeds that other coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving *spouse*;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1.  Comprehensive Coverage if "D";

2.  Collision Coverage if "G";

3.  Emergency Road Service Coverage if "H";

4.  Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1.  *your car*;

2.  a *newly acquired car*;

3.  a *temporary substitute car*;

4.  a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5.  a *non-owned car* while it is:

a.  being driven by an *insured*; or

b.  in the custody of an *insured* if at the time of the *loss* it is:

(1)  not being driven; or

(2)  being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

6.  a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1.  the daily rental rate;

2.  mileage charges; and

3.  related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1.  direct, sudden, and accidental damage to; or

2.  total or partial theft of

a *covered vehicle*.

27
9837B

Exhibit 3 - Page 30 of 62

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

**1. Comprehensive Coverage**

*We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

   (1) during the period that:

   (a) starts on the date *you* report the theft to *us*; and

   (b) ends on the earliest of:

   (i) the date the vehicle is returned to *your* possession in a drivable condition;

   (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

   (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

   (2) during the period that:

   (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

   (b) ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

**2. Collision Coverage**

*We* will pay for *loss caused by collision* to a *covered vehicle*.

**3. Emergency Road Service Coverage**

*We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

**4. Car Rental and Travel Expenses Coverage**

   **a. Car Rental Expense**

   *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car*

28
9837B

Exhibit 3 - Page 31 of 62

*business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a result of the *loss*; or

    (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been repaired or replaced;

    (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

    (c) five days after *we* offer to pay for the *loss* if the vehicle is:

        (i) a total loss as determined by *us*; or

        (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

**b. Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

    (a) starts after the *loss* occurs; and

    (b) ends on the earlier of:

        (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

        (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

**c. Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

    a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

    b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

    a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

    b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

29
9837B

Exhibit 3 - Page 32 of 62

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. **We** have the right to choose to settle with **you** or the owner of the **covered vehicle** in one of the following ways:

   a. Pay the cost to repair the **covered vehicle** minus any applicable deductible.

      (1) **We** have the right to choose one of the following to determine the cost to repair the **covered vehicle**:

         (a) The cost agreed to by both the owner of the **covered vehicle** and **us**;

         (b) A bid or repair estimate approved by **us**; or

         (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the lower of paintless dent repair pricing established by an agreement **we** have with a third party or the paintless dent repair price that is competitive in the market; or

            (iii) a combination of (i) and (ii) above.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the **covered vehicle** is to be repaired as determined by a survey made by **us**. If asked, **we** will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the **covered vehicle** to its pre-loss condition.

            **You** agree with **us** that the repair estimate may include parts supplied by the **car's** manufacturer and other quality parts. Such quality parts will be, if certification is required by law, certified by an independent test facility to be at least equivalent to the parts being replaced.

            **You** also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

      (2) The cost to repair the **covered vehicle** does not include any reduction in the value of the **covered vehicle** after it has been repaired, as compared to its value before it was damaged.

      (3) If the repair or replacement of a part results in betterment of that part, then **you** or the owner of the **covered vehicle** must pay for the amount of the betterment.

      (4) If **you** and **we** agree, then windshield glass will be repaired instead of replaced;

   b. Pay the actual cash value of the **covered vehicle** minus any applicable deductible.

      (1) The owner of the **covered vehicle** and **we** must agree upon the actual cash value of the **covered vehicle**. If there is disagreement as to the actual cash value of the **covered vehicle**, then the disagreement will be resolved by appraisal upon written request of the owner or **us**, within 60 days after proof of loss is filed, using the following procedures:

         (a) The owner and **we** will each select a competent appraiser.

         (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

         (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

         (d) The appraisers shall only determine the actual cash value of the **covered vehicle**. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

         (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

         (f) **We** do not waive any of **our** rights by submitting to an appraisal.

30
9837B

Exhibit 3 - Page 33 of 62

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

**1. Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

**2. Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

**3. Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

31
9837B

Exhibit 3 - Page 34 of 62

a.  NUCLEAR REACTION;

b.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11.  *YOUR CAR* WHILE SUBJECT TO ANY:

a.  LIEN AGREEMENT;

b.  RENTAL AGREEMENT;

c.  LEASE AGREEMENT; OR

d.  SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12.  ANY *NON-OWNED CAR* WHILE IT IS:

a.  BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b.  USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13.  ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a.  FAILS OR IS DEFECTIVE; OR

b.  IS DAMAGED AS A DIRECT RESULT OF:

(1)  WEAR AND TEAR;

(2)  FREEZING; OR

(3)  MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14.  ANY PART OR EQUIPMENT:

a.  THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b.  THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15.  TIRES. This exclusion does not apply if:

a.  *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b.  *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16.  REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17.  ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18.  A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b.  *OWNED BY* AN *INSURED*; AND

c.  NOT SHOWN ON THE DECLARATIONS PAGE; OR

19.  ANY *COVERED VEHICLE* WHILE IT IS:

a.  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

32
9837B

Exhibit 3 - Page 35 of 62

20. ANY REDUCTION IN THE VALUE OF ANY *COVERED VEHICLE* AFTER IT HAS BEEN REPAIRED, AS COMPARED TO ITS VALUE BEFORE IT WAS DAMAGED.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

33
9837B

Exhibit 3 - Page 36 of 62

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means a ***person*** whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

***Pedestrian*** means a ***person*** who is not ***occupying***:

1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

**Insuring Agreement**

***We*** will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an ***insured***:

1. dies; or
2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The ***insured*** must be ***occupying*** or be struck as a ***pedestrian*** by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 180 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most ***we*** will pay for any one ***insured*** in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES

| If the amount shown on the Declarations Page for the ***insured*** is $5,000, then ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the ***insured*** is $10,000, then ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

The benefits shown in the schedules are doubled for an ***insured*** who at the time of the accident was ***occupying*** a ***private passenger car*** and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN ***INSURED***:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A ***CAR BUSINESS***;
2. WHILE ***OCCUPYING***, LOADING, OR UNLOADING:
   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;
   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:
      (1) ***INSURED'S*** BUSINESS; OR
      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A ***CAR BUSINESS***.

34
9837B

Exhibit 3 - Page 37 of 62

This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

c. A MILITARY VEHICLE; OR

d. A VEHICLE WHILE IT IS:

   (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving *spouse*;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

**1. Notice to Us of an Accident or Loss**

The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

**2. Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

**3. Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

     (1) making settlements;

     (2) securing and giving evidence; and

     (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

     (1) make any payment to others; or

     (2) assume any obligation to others

     unless authorized by the terms of this policy.

35
9837B

Exhibit 3 - Page 38 of 62

c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

**4. Questioning Under Oath**

Under:

a. Liability Coverage, each *insured*;

b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, and Death, Dismemberment and Loss of Sight Coverage**

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

36
9837B

Exhibit 3 - Page 39 of 62

    (4) allow *us* to inspect the vehicle that:

      (a) the *insured occupied* in the accident; or

      (b) sustained *property damage*;

b. Uninsured Motor Vehicle Bodily Injury Coverage and Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, must:

    (1) report an accident, involving:

      (a) a motor vehicle whose owner and driver remain unknown; or

      (b) a *stolen vehicle*

    to the police within 72 hours and to *us* within 30 days.

    The *insured* or someone acting on the *insured's* behalf must also cooperate with the appropriate law enforcement agency in the prosecution of the theft of the *stolen vehicle*;

    (2) before *we* are required to give consent to a proposed offer of settlement:

      (a) allow *us* a reasonable time to collect and evaluate information relating to the proposed offer of settlement; and

      (b) promptly provide any reasonable information *we* request that is within the custody and control of the *insured* or a *person* acting on the *insured's* behalf; and

    (3) when there is *property damage*:

      (a) protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

      (b) allow *us* to:

        (i) inspect any damaged property before its repair or disposal;

        (ii) test any part or equipment before that part or equipment is removed or repaired; and

        (iii) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

      (c) provide *us* all:

        (i) records,

        (ii) receipts; and

        (iii) invoices

        that *we* request and allow *us* to make copies; and

      (d) not abandon the *covered vehicle* to *us*; and

c. Personal Injury Protection Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, and Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident.

## GENERAL TERMS

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2. Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

**3. Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the **State Farm Companies** after that *car* ceases to be a *newly acquired car*, then *you* must either:

Exhibit 3 - Page 40 of 62

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4. Changes to This Policy**

   **a. Changes in Policy Provisions**

   *We* may only change the provisions of this policy by:

   (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

   (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Oregon without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

   **b. Change of Interest**

   (1) No change of interest in this policy is effective unless *we* consent in writing.

   (2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

   **c. Joint and Individual Interests**

   If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

   **d. Change of Policy Address**

   *We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

   (1) *you*; or

   (2) the United States Postal Service.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

   (1) *Your car*, or its use, including annual mileage;

38
9837B

Exhibit 3 - Page 41 of 62

(2) The **persons** who regularly drive **your car**, including newly licensed family members;

(3) **Your** marital status; or

(4) The location where **your car** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period. If **we** decrease the premium during the policy period, then **we** will provide a refund or a credit in the amount of the decrease. If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

**6. Renewal**

**We** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless **we** mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

**7. Nonrenewal**

If **we** decide not to renew this policy, then, at least 30 days before the end of the current policy period, **we** will mail or deliver a nonrenewal notice to the most recent policy address that **we** have on record for the named insured. Proof of mailing shall be sufficient proof of notice.

**8. Cancellation**

    **a. How You May Cancel**

    **You** may cancel this policy by providing to **us** advance notice of the date cancellation is effective. **We** may confirm the cancellation in writing.

    **b. How and When We May Cancel**

    **We** may cancel this policy by mailing or delivering a written notice to the most recent policy address that **we** have on record for the named insured. The notice will provide the date cancellation is effective.

    Proof of mailing shall be sufficient proof of notice.

    (1) If **we** mail or deliver a cancellation notice:

        (a) during the first 59 days following this policy's effective date; or

        (b) because the premium is not paid when due,

then the date cancellation is effective will be at least 10 days after the date **we** mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 30 days after the date **we** mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, **we** will not cancel this policy before the end of the current policy period unless:

    (a) the premium is not paid when due; or

    (b) **you**, any **resident relative**, or any other **person** who usually drives **your car** has had his or her driver's license under suspension or revocation during the policy period, or, if the policy is a renewal, during the policy period or the 180 days immediately before the effective date of the policy.

    **c. Return of Unearned Premium**

    If **you** cancel this policy, then premium may be earned on a short rate basis. If **we** cancel this policy, then premium will be earned on a pro rata basis.

    Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon **us** unless approved by **us**.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve **us** of **our** obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if **you** or any other **person** insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

    a. Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by **us**. Under all other coverages the following apply:

Exhibit 3 - Page 42 of 62

(1) **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(a) doing nothing to impair that legal right;

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask. These representatives shall have no conflict of interest with such *person*.

(2) **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

b. In addition, under Personal Injury Protection Coverage, *we* are entitled to recover *our* payments in accordance with the *Personal Injury Protection Act*. *We* may choose to recover by:

(1) interinsurer reimbursement in accordance with ORS 742.534, or

(2) lien in accordance with ORS 742.536, or

(3) subrogation in accordance with ORS 742.538.

When *we* ask, the *person* or organization to or for whom *we* make payment must take action to recover *our* payments through representatives *we* choose that have no conflict of interest with the *insured*. *We* will pay *our* share of costs and attorneys fees of such recovery. Our share is that percent of the costs and attorneys fees that the amount of *our* payments bears to the total recovery. *Our* share is that percent of the costs and attorney fees that the amount of *our* payment bears to the total recovery.

**13. Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

c. Uninsured Motor Vehicle Bodily Injury Coverage or Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, if within two years immediately following the date of the accident the *insured* or that *insured's* legal representative:

(1) has agreed with *us* on the amount due;

(2) or *we* have formally instituted arbitration proceedings in accordance with the **Arbitration** provision of the involved coverage;

(3) files a lawsuit against *us* in accordance with the **Deciding Fault and Amount** provision of the involved coverage; or

(4) has filed a lawsuit for *bodily injury* against the uninsured motorist and, within two years immediately following the date of settlement or final judgment against the uninsured motorist, the *insured* or that *insured's* legal representative has formally instituted arbitration proceedings or filed a lawsuit against *us* in accordance with the **Deciding Fault and Amount** provision of the involved coverage

*We* are not required to nor will *we* make payment to an *insured* after this time period has expired.

d. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

40
9837B

Exhibit 3 - Page 43 of 62

**14. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

    a.   such provision will remain in full force to the extent not held invalid or unenforceable; and

    b.   all other provisions of this policy will remain valid and enforceable.

**15. Conformity With Oregon Statute**

If any provisions of this policy are in conflict with the statutes of Oregon, they are amended to conform to these statutes.

41
9837B

Exhibit 3 - Page 44 of 62

Policy Form 9837B

Exhibit 3 - Page 45 of 62

PLEASE ATTACH TO YOUR POLICY BOOKLET

Policy Number: 065 0652-F10-37C
Sheet 1 of 1

## 6091T CERTIFICATE OF GUARANTEED RENEWAL

This endorsement is issued by the **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** of Bloomington, Illinois.

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

1. *We* will not cancel or nonrenew this policy as long as:

   a. this policy insures a *private passenger car*;

   b. premiums are paid when due;

   c. all drivers of *your car* maintain valid drivers licenses;

   d. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of

   e. no *person* other than *you* becomes a named insured on this policy.

   Guaranteed Renewal available for use; and

2. *You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company.

3. Coverage will be provided by *our* Car Policy, including any revisions that may be made to it.

Page 1 of 1

STF 669
2020-07-2300

6091T

01570/02896
ED1

Exhibit 3 - Page 46 of 62

**6128BL AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

   a. **Additional Definition**

   Item 4. of *Insured* is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. **Exclusions**

   Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

3. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   Exclusion 4. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 47 of 62

4. **PHYSICAL DAMAGE COVERAGES**

a. The sentences that read:

> If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

are changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expense** is changed to read:

**Car Rental Expense**

*We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

      (i) a total loss as determined by *us*; or

      (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

> THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS:
>
> a. MADE AVAILABLE; OR
>
> b. BEING USED

TO CARRY **PERSONS** FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

5. **INSURED'S DUTIES**

a. Item 6.a.(3) is changed to read:

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other information *we* deem necessary to substantiate the claim.

Such authorizations must not:

(a) restrict *us* from performing *our* business functions in:

(i) obtaining records, bills, information, and data; nor

(ii) using or retaining records, bills, information, and data collected or received by *us*;

(b) require *us* to violate federal or state laws or regulations;

(c) prevent *us* from fulfilling *our* data reporting and data retention obligations to insurance regulators; or

(d) prevent *us* from disclosing claim information and data:

(i) to enable performance of *our* business functions;

(ii) to meet *our* reporting obligations to insurance regulators;

(iii) to meet *our* reporting obligations to insurance data consolidators; and

(iv) as otherwise permitted by law.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

b. The following is added to item 6.:

A *person* making claim under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Bodily Injury Coverage, Uninsured Motor Vehicle Bodily Injury and Property Damage

Page 3 of 5                                            6128BL
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 49 of 62

Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to *us* all information *we* need to comply with federal and state laws and regulations.

6. **GENERAL TERMS**

   a. The following is added to **Newly Owned or Newly Leased Car**:

      If a *resident relative* wants to insure a *car* newly *owned by* the *resident relative* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then the *resident relative* must apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by* the *resident relative*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

   b. The following are added to **GENERAL TERMS**:

      **Electronic Delivery**

      With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

      **Our Rights Regarding Claim Information**

      a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

      b. Subject to a. above, *we* will not be restricted in or prohibited from:

        (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

        (2) using any of the items described in item b.(1) above; or

        (3) retaining:

          (a) any of the items in item b.(1) above; or

          (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

      c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

        (1) to enable performance of *our* business functions;

        (2) to meet *our* reporting obligations to insurance regulators;

        (3) to meet *our* reporting obligations to insurance data consolidators;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 50 of 62

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **_Our_** rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **_insured_** or a legal representative acting on an **_insured's_** behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 51 of 62

**6937B.2 AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **THIS POLICY**

    Item 5. is changed to read:

    *Your* purchase of this policy may allow:

    a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

    b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **DEFINITIONS**

    a. Wherever "spouse" appears in the policy and endorsements, it is changed to "*spouse*".

    b. The terms "marriage", "married", and "marital" refer to legal union with another *person* either by:

        (1) marriage; or

        (2) domestic partnership

        that is recognized by and valid under Oregon law.

    c. The following is added:

    *Personal Vehicle Sharing* means the use of a *private passenger car* by *persons* other than the vehicle's registered owner in connection with a *personal vehicle sharing program*.

    *Personal Vehicle Sharing Program* means a legal entity qualified to do business in the state of Oregon and engaged in the business of facilitating the sharing of *private passenger cars* for non-commercial use by individuals within the state.

3. **LIABILITY COVERAGE**

    a. **Insuring Agreement** and **Supplementary Payments** are replaced by the following:

        **Insuring Agreement**

        1. *We* will pay damages an *insured* becomes legally liable to pay because of:

            a. *bodily injury* to others; and

            b. damage to property

            caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

        2. *We* have the right to:

            a. investigate, negotiate, and settle any claim or lawsuit;

            b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

            c. appeal any award or legal decision

            for damages payable under this policy's Liability Coverage.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 52 of 62

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 53 of 62

b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

b. **Exclusions**

(1) The exception to exclusion 7. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(2) The exception to exclusion 10. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(3) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* FOR THE OWNERSHIP, MAINTENANCE, OR USE OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

4. **PERSONAL INJURY PROTECTION COVERAGE**

a. Any reference to Coverage "P5" is deleted.

b. **Additional Definitions**

Item 1. under *Personal Injury Protection Benefits* is changed to read:

*Personal Injury Protection Benefits* mean accident related:

1. **Medical Expenses**, which are *reasonable medical expenses* for *medical services* incurred within two years of the date of the accident;

c. **Arbitration**

(1) The first paragraph of item 2. is changed to read:

Arbitration will take place in Oregon, in the county in which the *insured* resides, unless the *insured* and *we* agree to another location.

(2) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

d. **Limits**

Item 4.b. is changed to read:

b. similar medical or disability benefits law. This does not

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 54 of 62

apply to benefits paid or payable under Medicare or Medicaid.

e. **Schedule**

The maximum monthly benefit for Loss of Income is changed to $3,000 for coverages P1, P2, P3, and P4.

f. **Exclusions**

The following are added:

1. THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS ***OCCUPYING***, MAINTAINING, OR USING ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR*** WHILE USED IN ***PERSONAL VEHICLE SHARING***;

2. THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to:

   a. the use of a ***private passenger car*** on a share-the-expense basis; or

   b. ***you*** and ***resident relatives*** while ***occupying*** a ***non-owned car*** as a passenger.

5. **MEDICAL PAYMENTS COVERAGE**

   a. **Arbitration**

   (1) Item 1. is changed to read:

   If there is a disagreement as to whether incurred charges are ***medical expenses***, then the disagreement will be resolved, if both the ***insured*** and ***we*** agree

at the time of the disagreement, by arbitration.

(2) The first paragraph of item 2. is changed to read:

   Arbitration will take place in Oregon, in the county in which the ***insured*** resides, unless the ***insured*** and ***we*** agree to another location.

(3) Item 5. is changed to read:

   Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

   b. **Exclusions**

   (1) The exception to exclusion 5. is changed to read:

   This exclusion does not apply to:

   a. ***you***;

   b. any ***resident relative***; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using ***your car***, a ***newly acquired car***, a ***temporary substitute car***, or a ***trailer owned by you***;

   (2) The following is added:

   THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS ***OCCUPYING YOUR CAR*** OR A ***NEWLY ACQUIRED CAR*** WHILE USED IN PERSONAL VEHICLE SHARING.

6. **UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE** and **UNINSURED MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE COVERAGE**

   a. **Arbitration**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 55 of 62

(1) Item 1. is changed to read:

Arbitration will take place in Oregon:

a. at the *insured's* choice, in the county in which:

(1) the *insured* resides; or

(2) the accident occurred; or

b. at another location, if both the *insured* and *we* agree.

(2) Item 5. is changed to read:

Subject to 1., 2., 3., and 4. above, the laws of the State of Oregon govern procedure and admission of evidence.

b. **Exclusions**

(1) Exclusion 2. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF *YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* OR FURNISHED FOR THE REGULAR USE OF ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named

insured's *spouse* who resides primarily with that named insured, provided that the motor vehicle is *owned by* neither that named insured nor that spouse;

(2) The following is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

7. **UNINSURED MOTOR VEHICLE BODILY INJURY COVERAGE**

a. **Additional Definitions**

*Uninsured Motor Vehicle* is changed to read:

*Uninsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

a. not insured or self-insured for bodily injury liability at the time of the accident; or

b. insured or self-insured for bodily injury liability at the time of the accident but:

(1) the limits are less than required by the financial responsibility law of Oregon;

(2) the insuring company:

(a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(b) is or becomes insolvent; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 56 of 62

(3) the total amount of insurance and self-insurance for bodily injury liability available from all sources is less than the amount of the *insured's* damages; or

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

a. the *insured*; or

b. any other *person* who has a claim under this coverage; or

3. which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2. *owned by*, or furnished or available for the regular or frequent use of, *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies, other than an Oregon public body;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

b. **Limits**

(1) Item 1.a. is changed to read:

The Uninsured Motor Vehicle Bodily Injury Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury Coverage – Bodily Injury Limits – Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(1) the amount of all compensatory damages resulting from that *bodily injury* reduced by:

(a) the sum of all motor vehicle bodily injury liability coverage proceeds, paid and available to be paid:

(i) to or for the *insured*;

(ii) to an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 57 of 62

(iii) to medical pro-
viders of the *in-
sured*; and

(iv) to attorneys as
attorney fees
on the claim of
the *insured*;
and

(b) the amount of any
credit given to *us* by
the *insured* for the
unrealized portion of
the described bodily
injury liability limits
of any applicable
motor vehicle liabil-
ity insurance policy;
or

(2) the limit shown under
"Each Person."

(2) Item 2. is deleted.

8. **UNINSURED MOTOR VEHICLE
BODILY INJURY AND PROPERTY
DAMAGE COVERAGE**

a. **Additional Definitions**

*Uninsured Motor Vehicle* is changed to
read:

*Uninsured Motor Vehicle* means a
land motor vehicle:

1. the ownership, maintenance,
and use of which is:

a. not insured or self-insured
for bodily injury liability
and property damage liabil-
ity at the time of the acci-
dent; or

b. insured or self-insured for
bodily injury liability and
property damage liability at
the time of the accident:

(1) but:

(a) the limits are less
than required by the
financial responsibil-
ity law of Oregon; or

(b) the insuring com-
pany:

(i) denies that its
policy provides
liability cover-
age for compen-
satory damages
that result from
the accident; or

(ii) is or becomes
insolvent; or

(2) but, with respect to
*bodily injury* only:

(a) the limits are less
than required by
the financial re-
sponsibility law of
Oregon;

(b) the insuring com-
pany:

(i) denies that its
policy provides
liability cover-
age for compen-
satory damages
that result from
the accident; or

(ii) is or becomes
insolvent; or

(c) the total amount of
insurance and self-
insurance for bodily
injury liability
available from all
sources is less than
the amount of the
*insured's* damages;
or

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 58 of 62

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured* or *property damage*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by competent evidence other than the testimony of:

   a. the *insured*;

   b. any other *person* who has a claim under this coverage; or

   c. *you*, the driver, or any passenger in *your car* or a *newly acquired car* as to *property damage*; or

3. which is a *stolen vehicle*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. This does not apply to a *stolen vehicle*;

2. *owned by* or furnished or available for the regular or frequent use of *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies, other than an Oregon public body;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

b. **Limits**

(1) Item 1.a. is changed to read:

**Bodily Injury**

The Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage – Bodily Injury Limits – Each Person, Each Accident".

(1) The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(a) the amount of all compensatory damages resulting from that *bodily injury* reduced by:

(i) the sum of all motor vehicle bodily injury liability coverage proceeds, paid and available to be paid:

   1) to or for the *insured*;

   2) to an insurer as reimbursement for personal injury protection benefits provided to the *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 59 of 62

3) to medical providers of the *insured*; and

4) to attorneys as attorney fees on the claim of the *insured*; and

(ii) the amount of any credit given to *us* by the *insured* for the unrealized portion of the described bodily injury liability limits of any applicable motor vehicle liability insurance policy; or

(b) the limit shown under "Each Person."

(2) Subject to (1) above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

(2) Item 2. is deleted.

c. **Exclusions**

The following is added:

THERE IS NO COVERAGE FOR *PROPERTY DAMAGE* TO YOUR CAR OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

9. **PHYSICAL DAMAGE COVERAGES**

a. **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

(1) The paragraph that reads:

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, within 60 days after proof of loss is filed, using the following procedures:

is changed to read:

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is no agreement as to the actual cash value of the *covered vehicle*, then the disagreement may, if both the owner and *we* mutually agree at the time of disagreement, be resolved by appraisal. Such appraisal will occur within 60 days after proof of loss is filed using the following procedures:

(2) Item 1.b. (1) (c) is changed to read:

Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser. *We* shall reimburse the owner for the reasonable appraisal costs the owner incurs if the final appraisal decision under this policy provision is greater than the amount of *our* last offer prior to the incurrence of the appraisal costs.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 60 of 62

b. **Exclusions**

The following is added:

THERE IS NO COVERAGE FOR *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

10. **GENERAL TERMS**

a. The following is added to item 2. **Where Coverage Applies**:

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

b. Paragraph c. of item 5. **Premium** is changed to read:

The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

c. Item 7. **Nonrenewal** is changed to read:

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy

address that *we* have on record for the named insured who is shown on the Declarations Page.

d. Paragraph b. **How and When We May Cancel** under item 8. **Cancellation** is changed to read:

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

e. Item 11. **Concealment or Fraud** is changed to read:

There is no coverage under:

a. the Liability Coverage of this policy to the extent the Liability Coverage limits shown on the Declarations Page of this policy exceed the limits required by the financial responsibility law of Oregon; and

b. any other coverages of this policy

if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

f. The following provision is added:

**Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015
6937B.2

Exhibit 3 - Page 61 of 62

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Personal Injury Protection Coverage**

c. **Medical Payments Coverage**

d. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement–**

**Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF OREGON IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Oregon in the United States of America.

6937B.2
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

Exhibit 3 - Page 62 of 62

| PAYMENT NO | 1 15 158293 J | | CLAIM NO | 37-2104-L10 |
| PAYMENT AMOUNT | $250,000.00 | | LOSS DATE | 10-31-2017 |
| ISSUE DATE | 11-29-2018 | | POLICY NO | 0650-652-37C |
| AUTHORIZED BY | ALLEN, WALTER | | INSURED | BATTEN, TRAVIS R |
| PHONE | (844) 292-8615 | | | |

SPOONER & MUCH PC
530 CENTER ST NE STE 712
SALEM OR  97301-3756

REMARKS   **OR INJURY SETTLEMENT**

| COVERAGE DESCRIPTION | ON BEHALF OF | AMOUNT |
|---|---|---|
| UNDERINSURED BODILY INJURY | BATTEN, TRAVIS | 250,000.00 |

## RETAIN STUB FOR RECORDS

**State Farm** **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**                1 15 158293 J
AUTO INJURY                          US BANK, NA  75-1592/912
INJ E3 OFFICE DU  PAGECNTQ.P26       ST. PAUL, MN

                                                                11-29-2018
                                                                DATE  M M  D D  Y Y Y Y

CLAIM NO  **37-2104-L10**     INSURED  **BATTEN, TRAVIS R**
LOSS DATE  **10-31-2017**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*EXACTLY TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS**        **$\*\*\*250,000.00**

*Pay to the*
*Order of:*  **TRAVIS R. BATTEN & BRIAN LAW FIRM LLC, HIS ATTORNEY**

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

SECURED DOCUMENT WATERMARK APPEARS ON BACK, HOLD AT 45° ANGLE FOR VIEWING

EXHIBIT
**4**

78th OREGON LEGISLATIVE ASSEMBLY--2015 Regular Session

# Senate Bill 411

Sponsored by Senators GELSER, ROSENBAUM (Presession filed.)

### SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the measure **as introduced.**

Requires insurer to pay claims up to maximum coverage under policy of uninsured motorist coverage based on insured's total damages for personal injuries, less amounts recovered from other motor vehicle liability insurance policies.

Modifies amount of reimbursement due personal injury protection provider when total benefits exceed damages.

Extends personal injury protection benefit coverage for certain expenses from one year after date of injury to two years after date of injury.

### A BILL FOR AN ACT

1
2    Relating to personal injury protection benefits; creating new provisions; and amending ORS 742.500,
3        742.502, 742.504, 742.524 and 742.544.
4    **Be It Enacted by the People of the State of Oregon:**
5        **SECTION 1.** ORS 742.500 is amended to read:
6        742.500. As used in ORS 742.500 to 742.506:
7        **(1) "Bodily injury" has the meaning given that term in ORS 742.504.**
8        **(2) "Insured" has the meaning given that term in ORS 742.504.**
9        **(3)(a) "Motor vehicle" means every self-propelled device in, upon or by which any person**
10   **or property is or may be transported or drawn upon a public highway.**
11       **(b) "Motor vehicle" does not include:**
12       **(A) A device used exclusively on stationary rails or tracks;**
13       **(B) Motor trucks, as defined in ORS 801.355, that have a registration weight, as defined**
14   **in ORS 803.430, of more than 8,000 pounds, if the insured has employees that operate the**
15   **trucks and a workers' compensation law, a disability benefits law or a similar law covers the**
16   **employees; or**
17       **(C) Farm-type tractors or self-propelled equipment designed for use principally off public**
18   **highways.**
19       **(4) "Sums that the insured or the heirs or legal representative of the insured is legally**
20   **entitled to recover as damages" has the meaning given that term in ORS 742.504.**
21       [*(1)*] **(5)** "Uninsured motorist coverage" means coverage within the terms and conditions speci-
22   fied in ORS 742.504 [*insuring*] **that insures** the insured[,] **or** the heirs or legal representative of the
23   insured for all sums [*which*] **that** the insured **or the heirs** or [*they shall be*] **legal representative**
24   **is** legally entitled to recover as damages for bodily injury or death **that is** caused by accident and
25   [*arising out of the ownership, maintenance or use of*] **that arises from owning, maintaining or**
26   **using** an uninsured [*motor*] vehicle in amounts or limits not less than the amounts or limits pre-
27   scribed for bodily injury or death under ORS 806.070.
28       **(6) "Uninsured vehicle" has the meaning given that term in ORS 742.504.**

**NOTE:** Matter in **boldfaced** type in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.
New sections are in **boldfaced** type.

LC 1586

Exhibit 5 - Page 1 of 11

**EXHIBIT
5**

SB 411

1  [*(2) "Motor vehicle" means every self-propelled device in, upon or by which any person or property*
2  *is or may be transported or drawn upon a public highway, but does not include:*]

3  [*(a) Devices used exclusively upon stationary rails or tracks;*]

4  [*(b) Motor trucks as defined in ORS 801.355 that have a registration weight, as defined by ORS*
5  *803.430 of more than 8,000 pounds, when the insured has employees who operate such trucks and such*
6  *employees are covered by any workers' compensation law, disability benefits law or any similar law;*
7  *or*]

8  [*(c) Farm-type tractors or self-propelled equipment designed for use principally off public*
9  *highways.*]

10  **SECTION 2.** ORS 742.502 is amended to read:

11  742.502. (1) Every motor vehicle liability policy [*insuring*] **that insures** against **a** loss [*suffered*
12  *by any*] **that a** natural person [*resulting*] **suffers and that results** from liability imposed by law for
13  bodily injury or death [*arising out of the ownership, maintenance or use of*] **that arises out of**
14  **owning, maintaining or using** a motor vehicle shall provide in the policy or by indorsement on the
15  policy uninsured motorist coverage [*when*] **if** the policy is either:

16  (a) Issued for delivery in this state; or

17  (b) Issued or delivered by an insurer [*doing*] **that does** business in this state with respect to any
18  motor vehicle then principally used or principally garaged in this state.

19  (2)(a) A motor vehicle bodily injury liability policy [*shall*] **must** have the same limits for
20  uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing
21  elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the
22  requirements of ORS 806.070 for bodily injury or death. Uninsured motorist coverage [*shall*] **must**
23  include underinsurance coverage for bodily injury or death caused by accident and arising out of
24  the ownership, maintenance or use of a motor vehicle with motor vehicle liability insurance that
25  provides recovery in an amount that is less than the insured's [*uninsured motorist coverage*] **sums**
26  **that the insured or the heirs or legal representative of the insured is legally entitled to re-**
27  **cover as damages for bodily injury or death that is caused by accident and that arises out**
28  **of owning, maintaining or using an uninsured vehicle**. Underinsurance coverage [*shall*] **must** be
29  equal to [*uninsured motorist coverage*] **the sums that the insured or the heirs or legal repre-**
30  **sentative of the insured is legally entitled to recover as damages for bodily injury or death**
31  **that is caused by accident and that arises out of owning, maintaining or using an uninsured**
32  **vehicle,** less the amount recovered from other motor vehicle liability insurance policies**, up to the**
33  **limits of the uninsured motorist coverage.**

34  (b) If a named insured elects lower limits, the named insured shall sign a statement [*electing*]
35  **to elect** lower limits within 60 days [*of*] **after** the time the named insured makes the election. The
36  statement [*shall*] **must** acknowledge that a named insured was offered uninsured motorist coverage
37  with the limits equal to those for bodily injury liability. The statement [*shall contain*] **must have**
38  a brief summary[*, which may not be construed as*] **that is not** part of the insurance contract[*, of*] **and**
39  **that describes** what uninsured [*and underinsured*] motorist [*coverages provide and shall*] **coverage**
40  **provides and what the underinsured coverage provides. The summary must also** state the
41  price for coverage with limits equal to the named insured's bodily injury liability limits and the price
42  for coverage with the lower limits [*requested by*] the named insured **requested**. The statement [*shall*
43  *remain*] **remains** in force until [*rescinded in writing by*] a named insured **rescinds the statement**
44  **in writing** or until the motor vehicle bodily injury liability limits are changed. [*The form of state-*
45  *ment used to comply with this paragraph shall be approved by*] The Department of Consumer and

SB 411

1   Business Services **shall approve the form of statement that complies with this paragraph**.

2   (c) A statement electing lower limits need not be signed [*when*] **if** vehicles are either added to

3   or subtracted from a policy or [*when*] **if** the policy is amended, renewed, modified or replaced by the

4   same [*company*] **insurer** or **an insurer within a** group of companies **that is** under common owner-

5   ship or control**,** unless the liability limits of the policy are changed.

6   (3) The insurer [*issuing*] **that issues** the policy may offer one or more options of uninsured

7   motorist coverage **that are** larger than the amounts prescribed to meet the requirements of ORS

8   806.070 and in excess of the limits provided under the policy for motor vehicle bodily injury liability

9   insurance. Offers of uninsured motorist coverage [*shall*] **must** include underinsurance coverage for

10   bodily injury or death **that is** caused by accident and [*arising out of the ownership, maintenance or*

11   *use of*] **that arises out of owning, maintaining or using** a motor vehicle with motor vehicle li-

12   ability insurance that provides recovery in an amount that is less than the [*insured's uninsured*

13   *motorist coverage*] **sums that the insured or the heirs or legal representative of the insured is**

14   **legally entitled to recover as damages for bodily injury or death that is caused by accident**

15   **and that arises out of owning, maintaining or using an uninsured vehicle.** Underinsurance

16   coverage [*shall*] **must** be equal to [*uninsured motorist coverage*] **the sums that the insured or the**

17   **heirs or legal representative of the insured is legally entitled to recover as damages for**

18   **bodily injury or death that is caused by accident and that arises from owning, maintaining**

19   **or using an uninsured vehicle,** less the amount recovered from other motor vehicle liability in-

20   surance policies**, up to the limits of the uninsured motorist coverage**.

21   (4) Underinsurance coverage is subject to ORS 742.504 and 742.542.

22   (5) Uninsured motorist coverage and underinsurance coverage [*shall*] **must** provide coverage for

23   bodily injury or death [*when:*] **if**

24   [*(a) The limits for uninsured motorist coverage of the insured equal the limits of the liability policy*

25   *of the person whose fault caused the bodily injury or death; and*]

26   [*(b)*] the amount of liability insurance recovered is less than the [*limits for uninsured motorist*

27   *coverage of the insured*] **sums that the insured or the heirs or legal representative of the in-**

28   **sured is legally entitled to recover as damages for bodily injury or death that is caused by**

29   **accident and that arises out of owning, maintaining or using an uninsured vehicle**.

30   (6) Uninsured motorist coverage and underinsurance coverage [*shall*] **must** provide coverage for

31   bodily injury or death if the amount recovered from a self-insurer is less than the [*limits for*

32   *uninsured motorist coverage of the insured*] **sums that the insured or the heirs or legal repre-**

33   **sentative of the insured is legally entitled to recover as damages for bodily injury or death**

34   **that is caused by accident and that arises out of owning, maintaining or using an uninsured**

35   **vehicle**.

36   (7) As used in this section and except as otherwise provided in this subsection, "amount recov-

37   ered from other motor vehicle liability insurance policies" means the proceeds of liability insurance

38   or the proceeds received from a public body under ORS 30.260 to 30.300 **that are** recovered by or

39   on behalf of the injured party. Proceeds recovered on behalf of the injured party include proceeds

40   [*received by*] the injured party's insurer **receives** as reimbursement for personal injury protection

41   benefits [*provided*] **the insurer provides** to the injured person, proceeds [*received by*] the medical

42   providers of the injured person **receive** and proceeds received as attorney fees on the claim of the

43   injured person.  [*Where*] **If** applicable liability insurance policy limits are exhausted upon payment,

44   settlement or judgment by division among two or more injured persons, "amount recovered from

45   other motor vehicle liability insurance policies" means the proceeds that are recovered by or on

[3]

Exhibit 5 - Page 3 of 11

SB 411

1  behalf of the injured person but does not include any proceeds of [*that*] **the** liability policy [*received*
2  *by*] **that** other injured persons **receive**.

3  **SECTION 3.** ORS 742.504, as amended by section 76, chapter 45, Oregon Laws 2014, is amended
4  to read:

5  742.504. Every policy required to provide the coverage specified in ORS 742.502 shall provide
6  uninsured motorist coverage that in each instance is no less favorable in any respect to the insured
7  or the beneficiary than if the following provisions were set forth in the policy. However, nothing
8  contained in this section requires the insurer to reproduce in the policy the particular language of
9  any of the following provisions:

10  (1)(a) Notwithstanding ORS 30.260 to 30.300, the insurer will pay all sums that the insured[,] **or**
11  the heirs or [*the*] legal representative of the insured is legally entitled to recover as [*general and*
12  *special*] damages from the owner or operator of an uninsured vehicle because of bodily injury sus-
13  tained by the insured caused by accident and arising out of the ownership, maintenance or use of
14  the uninsured vehicle. Determination as to whether the insured, the insured's heirs or the insured's
15  legal representative is legally entitled to recover such damages, and if so, the amount thereof, shall
16  be made by agreement between the insured and the insurer, or, in the event of disagreement, may
17  be determined by arbitration as provided in subsection (10) of this section.

18  (b) No judgment against any person or organization alleged to be legally responsible for bodily
19  injury, except for proceedings instituted against the insurer as provided in this policy, shall be
20  conclusive, as between the insured and the insurer, on the issues of liability of the person or or-
21  ganization or of the amount of damages to which the insured is legally entitled.

22  (2) As used in this policy:

23  (a) "Bodily injury" means bodily injury, sickness or disease, including death resulting therefrom.

24  (b) "Hit-and-run vehicle" means a vehicle that causes bodily injury to an insured arising out of
25  physical contact of the vehicle with the insured or with a vehicle the insured is occupying at the
26  time of the accident, provided:

27  (A) The identity of either the operator or the owner of the hit-and-run vehicle cannot be ascer-
28  tained;

29  (B) The insured or someone on behalf of the insured reported the accident within 72 hours to
30  a police, peace or judicial officer, to the Department of Transportation or to the equivalent depart-
31  ment in the state where the accident occurred, and filed with the insurer within 30 days thereafter
32  a statement under oath that the insured or the legal representative of the insured has a cause or
33  causes of action arising out of the accident for damages against a person or persons whose identities
34  are unascertainable, and setting forth the facts in support thereof; and

35  (C) At the insurer's request, the insured or the legal representative of the insured makes avail-
36  able for inspection the vehicle the insured was occupying at the time of the accident.

37  (c) "Insured," when unqualified and when applied to uninsured motorist coverage, means:

38  (A) The named insured as stated in the policy and any person designated as named insured in
39  the schedule and, while residents of the same household, the spouse of any named insured and rel-
40  atives of either, provided that neither the relative nor the spouse is the owner of a vehicle not de-
41  scribed in the policy and that, if the named insured as stated in the policy is other than an
42  individual or husband and wife who are residents of the same household, the named insured shall
43  be only a person so designated in the schedule;

44  (B) Any child residing in the household of the named insured if the insured has performed the
45  duties of a parent to the child by rearing the child as the insured's own although the child is not

[4]

Exhibit 5 - Page 4 of 11

SB 411

1   related to the insured by blood, marriage or adoption; and

2   (C) Any other person while occupying an insured vehicle, provided the actual use thereof is with

3   the permission of the named insured.

4   (d) "Insured vehicle," except as provided in paragraph (e) of this provision, means:

5   (A) The vehicle described in the policy or a newly acquired or substitute vehicle, as each of

6   those terms is defined in the public liability coverage of the policy, insured under the public liability

7   provisions of the policy; or

8   (B) A nonowned vehicle operated by the named insured or spouse if a resident of the same

9   household, provided that the actual use thereof is with the permission of the owner of the vehicle

10  and the vehicle is not owned by nor furnished for the regular or frequent use of the insured or any

11  member of the same household.

12  (e) "Insured vehicle" does not include a trailer of any type unless the trailer is a described ve-

13  hicle in the policy.

14  (f) "Occupying" means in or upon or entering into or alighting from.

15  (g) "Phantom vehicle" means a vehicle that causes bodily injury to an insured arising out of a

16  motor vehicle accident that is caused by a vehicle that has no physical contact with the insured or

17  the vehicle the insured is occupying at the time of the accident, provided:

18  (A) The identity of either the operator or the owner of the phantom vehicle cannot be ascer-

19  tained;

20  (B) The facts of the accident can be corroborated by competent evidence other than the testi-

21  mony of the insured or any person having an uninsured motorist claim resulting from the accident;

22  and

23  (C) The insured or someone on behalf of the insured reported the accident within 72 hours to

24  a police, peace or judicial officer, to the Department of Transportation or to the equivalent depart-

25  ment in the state where the accident occurred, and filed with the insurer within 30 days thereafter

26  a statement under oath that the insured or the legal representative of the insured has a cause or

27  causes of action arising out of the accident for damages against a person or persons whose identities

28  are unascertainable, and setting forth the facts in support thereof.

29  (h) "State" includes the District of Columbia, a territory or possession of the United States and

30  a province of Canada.

31  (i) "Stolen vehicle" means an insured vehicle that causes bodily injury to the insured arising

32  out of a motor vehicle accident if:

33  (A) The vehicle is operated without the consent of the insured;

34  (B) The operator of the vehicle does not have collectible motor vehicle bodily injury liability

35  insurance;

36  (C) The insured or someone on behalf of the insured reported the accident within 72 hours to

37  a police, peace or judicial officer or to the equivalent department in the state where the accident

38  occurred; and

39  (D) The insured or someone on behalf of the insured cooperates with the appropriate law

40  enforcement agency in the prosecution of the theft of the vehicle.

41  (j) "Sums that the insured[,] **or** the heirs or [*the*] legal representative of the insured is legally

42  entitled to recover as [*general and special*] damages**"** [*from the owner or operator of an uninsured*

43  *vehicle"*] means the amount of damages that:

44  (A) A claimant could have recovered in a civil action from the owner or operator at the time

45  of the injury after determination of fault or comparative fault and resolution of any applicable de-

SB 411

1    fenses;

2    (B) Are calculated without regard to the tort claims limitations of ORS 30.260 to 30.300; and

3    (C) Are no larger than benefits payable under the terms of the policy as provided in subsection

4    (7) of this section.

5    (k) "Uninsured vehicle," except as provided in paragraph (L) of this provision, means:

6    (A) A vehicle with respect to the ownership, maintenance or use of which there is no collectible

7    motor vehicle bodily injury liability insurance, in at least the amounts or limits prescribed for bodily

8    injury or death under ORS 806.070 applicable at the time of the accident with respect to any person

9    or organization legally responsible for the use of the vehicle, or with respect to which there is

10   collectible bodily injury liability insurance applicable at the time of the accident but the insurance

11   company writing the insurance denies coverage or the company writing the insurance becomes vol-

12   untarily or involuntarily declared bankrupt or for which a receiver is appointed or becomes insol-

13   vent. It shall be a disputable presumption that a vehicle is uninsured in the event the insured and

14   the insurer, after reasonable efforts, fail to discover within 90 days from the date of the accident,

15   the existence of a valid and collectible motor vehicle bodily injury liability insurance applicable at

16   the time of the accident.

17   (B) A hit-and-run vehicle.

18   (C) A phantom vehicle.

19   (D) A stolen vehicle.

20   (E) A vehicle that is owned or operated by a self-insurer:

21   (i) That is not in compliance with ORS 806.130 (1)(c); or

22   (ii) That provides recovery to an insured in an amount that is less than the [*limits for uninsured*

23   *motorist coverage of the insured*] **sums that the insured or the heirs or legal representative of**

24   **the insured is legally entitled to recover as damages for bodily injury or death that is caused**

25   **by accident and that arises out of owning, maintaining or using an uninsured vehicle**.

26   (L) "Uninsured vehicle" does not include:

27   (A) An insured vehicle, unless the vehicle is a stolen vehicle;

28   (B) Except as provided in paragraph (k)(E) of this subsection, a vehicle that is owned or oper-

29   ated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor

30   carrier law or any similar law;

31   (C) A vehicle that is owned by the United States of America, Canada, a state, a political sub-

32   division of any such government or an agency of any such government;

33   (D) A land motor vehicle or trailer, if operated on rails or crawler-treads or while located for

34   use as a residence or premises and not as a vehicle;

35   (E) A farm-type tractor or equipment designed for use principally off public roads, except while

36   actually upon public roads; or

37   (F) A vehicle owned by or furnished for the regular or frequent use of the insured or any

38   member of the household of the insured.

39   (m) "Vehicle" means every device in, upon or by which any person or property is or may be

40   transported or drawn upon a public highway, but does not include devices moved by human power

41   or used exclusively upon stationary rails or tracks.

42   (3) This coverage applies only to accidents that occur on and after the effective date of the

43   policy, during the policy period and within the United States of America, its territories or pos-

44   sessions, or Canada.

45   (4)(a) This coverage does not apply to bodily injury of an insured with respect to which the in-

SB 411

1  sured or the legal representative of the insured shall, without the written consent of the insurer,
2  make any settlement with or prosecute to judgment any action against any person or organization
3  who may be legally liable therefor.

4  (b) This coverage does not apply to bodily injury to an insured while occupying a vehicle, other
5  than an insured vehicle, owned by, or furnished for the regular use of, the named insured or any
6  relative resident in the same household, or through being struck by the vehicle.

7  (c) This coverage does not apply so as to inure directly or indirectly to the benefit of any
8  workers' compensation carrier, any person or organization qualifying as a self-insurer under any
9  workers' compensation or disability benefits law or any similar law or the State Accident Insurance
10  Fund Corporation.

11  (d) This coverage does not apply with respect to underinsured motorist benefits unless:

12  (A) The limits of liability under any bodily injury liability insurance applicable at the time of
13  the accident regarding the injured person have been exhausted by payment of judgments or settle-
14  ments to the injured person or other injured persons;

15  (B) The described limits have been offered in settlement, the insurer has refused consent under
16  paragraph (a) of this subsection and the insured protects the insurer's right of subrogation to the
17  claim against the tortfeasor;

18  (C) The insured gives credit to the insurer for the unrealized portion of the described liability
19  limits as if the full limits had been received if less than the described limits have been offered in
20  settlement, and the insurer has consented under paragraph (a) of this subsection; or

21  (D) The insured gives credit to the insurer for the unrealized portion of the described liability
22  limits as if the full limits had been received if less than the described limits have been offered in
23  settlement and, if the insurer has refused consent under paragraph (a) of this subsection, the insured
24  protects the insurer's right of subrogation to the claim against the tortfeasor.

25  (e) When seeking consent under paragraph (a) or (d) of this subsection, the insured shall allow
26  the insurer a reasonable time in which to collect and evaluate information related to consent to the
27  proposed offer of settlement. The insured shall provide promptly to the insurer any information that
28  is reasonably requested by the insurer and that is within the custody and control of the insured.
29  Consent will be presumed to be given if the insurer does not respond within a reasonable time. For
30  purposes of this paragraph, a "reasonable time" is no more than 30 days from the insurer's receipt
31  of a written request for consent, unless the insured and the insurer agree otherwise.

32  (5)(a) As soon as practicable, the insured or other person making claim shall give to the insurer
33  written proof of claim, under oath if required, including full particulars of the nature and extent of
34  the injuries, treatment and other details entering into the determination of the amount payable
35  hereunder. The insured and every other person making claim hereunder shall submit to examinations
36  under oath by any person named by the insurer and subscribe the same, as often as may reasonably
37  be required. Proof of claim shall be made upon forms furnished by the insurer unless the insurer fails
38  to furnish the forms within 15 days after receiving notice of claim.

39  (b) Upon reasonable request of and at the expense of the insurer, the injured person shall submit
40  to physical examinations by physicians, physician assistants or nurse practitioners selected by the
41  insurer and shall, upon each request from the insurer, execute authorization to enable the insurer
42  to obtain medical reports and copies of records.

43  (6) If, before the insurer makes payment of loss hereunder, the insured or the legal represen-
44  tative of the insured institutes any legal action for bodily injury against any person or organization
45  legally responsible for the use of a vehicle involved in the accident, a copy of the summons and

[7]

Exhibit 5 - Page 7 of 11

SB 411

1 complaint or other process served in connection with the legal action shall be forwarded imme-
2 diately to the insurer by the insured or the legal representative of the insured.

3     (7)(a) The limit of liability stated in the declarations as applicable to "each person" is the limit
4 of the insurer's liability for all damages because of bodily injury sustained by one person as the
5 result of any one accident and, subject to the above provision respecting each person, the limit of
6 liability stated in the declarations as applicable to "each accident" is the total limit of the
7 company's liability for all damages because of bodily injury sustained by two or more persons as the
8 result of any one accident.

9     (b) Any payment made under this coverage to or for an insured shall be applied in reduction
10 of any amount that the insured may be entitled to recover from any person who is an insured under
11 the bodily injury liability coverage of this policy.

12     (c) Any amount payable under the terms of this coverage because of bodily injury sustained in
13 an accident by a person who is an insured under this coverage shall be reduced by[:]

14     [*(A) All sums paid on account of the bodily injury by or on behalf of the owner or operator of the*
15 *uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable*
16 *together with the owner or operator for the bodily injury, including all sums paid under the bodily*
17 *injury liability coverage of the policy; and*]

18     [*(B)*] the amount paid and the present value of all amounts payable on account of the bodily
19 injury under any workers' compensation law, disability benefits law or any similar law.

20     (d) Any amount payable under the terms of this coverage because of bodily injury sustained in
21 an accident by a person who is an insured under this coverage shall be reduced by the credit given
22 to the insurer pursuant to subsection (4)(d)(C) or (D) of this section.

23     (e) The amount payable under the terms of this coverage may not be reduced by the amount of
24 liability proceeds offered, described in subsection (4)(d)(B) or (D) of this section, that has not been
25 paid to the injured person. If liability proceeds have been offered and not paid, the amount payable
26 under the terms of the coverage shall include the amount of liability limits offered but not accepted
27 due to the insurer's refusal to consent. The insured shall cooperate so as to permit the insurer to
28 proceed by subrogation or assignment to prosecute the claim against the uninsured motorist.

29     (8) No action shall lie against the insurer unless, as a condition precedent thereto, the insured
30 or the legal representative of the insured has fully complied with all the terms of this policy.

31     (9)(a) With respect to bodily injury to an insured:

32     (A) While occupying a vehicle owned by a named insured under this coverage, the insurance
33 under this coverage is primary.

34     (B) While occupying a vehicle not owned by a named insured under this coverage, the insurance
35 under this coverage shall apply only as excess insurance over any primary insurance available to
36 the occupant that is similar to this coverage, and this excess insurance **coverage** shall then apply
37 only [*in*] **to** the amount by which the [*applicable limit of liability of this excess coverage exceeds the*
38 *sum of*] **sums that the insured or the heirs or legal representative of the insured is legally**
39 **entitled to recover as damages for bodily injury or death that is caused by accident and that**
40 **arises out of owning, maintaining or using an uninsured vehicle exceed** the applicable limits
41 of liability of all primary insurance available to the occupant.

42     (b) If an insured is an insured under other primary or excess insurance available to the insured
43 that is similar to this coverage, then [*the insured's damages are deemed not to exceed the higher of*
44 *the applicable limits of liability of this insurance or the additional primary or excess insurance avail-*
45 *able to the insured, and*] the insurer is not liable under this coverage for a greater proportion of the

SB 411

1   insured's damages than the applicable limit of liability of this coverage bears to the sum of the ap-
2   plicable limits of liability of this insurance and other primary or excess insurance available to the
3   insured.

4   (c) With respect to bodily injury to an insured while occupying any motor vehicle used as a
5   public or livery conveyance, the insurance under this coverage shall apply only as excess insurance
6   over any other insurance available to the insured that is similar to this coverage, and this **excess**
7   insurance **coverage** shall then apply only [*in*] **to** the amount by which the applicable limit of li-
8   ability of this coverage exceeds the sum of the applicable limits of liability of all other insurance.

9   (10) If any person making claim hereunder and the insurer do not agree that the person is le-
10  gally entitled to recover damages from the owner or operator of an uninsured vehicle because of
11  bodily injury to the insured, or do not agree as to the amount of payment that may be owing under
12  this coverage, then, in the event the insured and the insurer elect by mutual agreement at the time
13  of the dispute to settle the matter by arbitration, the arbitration shall take place as described in
14  ORS 742.505. Any judgment upon the award rendered by the arbitrators may be entered in any court
15  having jurisdiction thereof, provided, however, that the costs to the insured of the arbitration pro-
16  ceeding do not exceed $100 and that all other costs of arbitration are borne by the insurer.
17  "Costs" as used in this provision does not include attorney fees or expenses incurred in the pro-
18  duction of evidence or witnesses or the making of transcripts of the arbitration proceedings. The
19  person and the insurer each agree to consider themselves bound and to be bound by any award made
20  by the arbitrators pursuant to this coverage in the event of such election. At the election of the
21  insured, the arbitration shall be held:

22  (a) In the county and state of residence of the insured;

23  (b) In the county and state where the insured's cause of action against the uninsured motorist
24  arose; or

25  (c) At any other place mutually agreed upon by the insured and the insurer.

26  (11) In the event of payment to any person under this coverage:

27  (a) The insurer shall be entitled to the extent of the payment to the proceeds of any settlement
28  or judgment that may result from the exercise of any rights of recovery of the person against any
29  uninsured motorist legally responsible for the bodily injury because of which payment is made;

30  (b) The person shall hold in trust for the benefit of the insurer all rights of recovery that the
31  person shall have against such other uninsured person or organization because of the damages that
32  are the subject of claim made under this coverage, but only to the extent that the claim is made or
33  paid herein;

34  (c) If the insured is injured by the joint or concurrent act or acts of two or more persons, one
35  or more of whom is uninsured, the insured shall have the election to receive from the insurer any
36  payment to which the insured would be entitled under this coverage by reason of the act or acts
37  of the uninsured motorist, or the insured may, with the written consent of the insurer, proceed with
38  legal action against any or all persons claimed to be liable to the insured for the injuries. If the
39  insured elects to receive payment from the insurer under this coverage, then the insured shall hold
40  in trust for the benefit of the insurer all rights of recovery the insured shall have against any other
41  person, firm or organization because of the damages that are the subject of claim made under this
42  coverage, but only to the extent of the actual payment made by the insurer;

43  (d) The person shall do whatever is proper to secure and shall do nothing after loss to prejudice
44  such rights;

45  (e) If requested in writing by the insurer, the person shall take, through any representative not

SB 411

1  in conflict in interest with the person, designated by the insurer, such action as may be necessary
2  or appropriate to recover payment as damages from such other uninsured person or organization,
3  such action to be taken in the name of the person, but only to the extent of the payment made
4  hereunder. In the event of a recovery, the insurer shall be reimbursed out of the recovery for ex-
5  penses, costs and attorney fees incurred by the insurer in connection therewith; and

6      (f) The person shall execute and deliver to the insurer any instruments and papers as may be
7  appropriate to secure the rights and obligations of the person and the insurer established by this
8  provision.

9      (12)(a) The parties to this coverage agree that no cause of action shall accrue to the insured
10  under this coverage unless within two years from the date of the accident:

11      (A) Agreement as to the amount due under the policy has been concluded;

12      (B) The insured or the insurer has formally instituted arbitration proceedings;

13      (C) The insured has filed an action against the insurer; or

14      (D) Suit for bodily injury has been filed against the uninsured motorist and, within two years
15  from the date of settlement or final judgment against the uninsured motorist, the insured has
16  formally instituted arbitration proceedings or filed an action against the insurer.

17      (b) For purposes of this subsection:

18      (A) "Date of settlement" means the date on which a written settlement agreement or release is
19  signed by an insured or, in the absence of these documents, the date on which the insured or the
20  attorney for the insured receives payment of any sum required by the settlement agreement. An
21  advance payment as defined in ORS 31.550 shall not be deemed a payment of a settlement for pur-
22  poses of the time limitation in this subsection.

23      (B) "Final judgment" means a judgment that has become final by lapse of time for appeal or by
24  entry in an appellate court of an appellate judgment.

25      **SECTION 4.** ORS 742.524 is amended to read:

26      742.524. (1) Personal injury protection benefits [*as*] required by ORS 742.520 [*shall*] consist of the
27  following payments for the injury or death of each person:

28      (a) All reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and
29  prosthetic services incurred within [*one year*] **two years** after the date of the person's injury, but
30  not more than $15,000 in the aggregate for all such expenses of the person. Expenses of medical,
31  hospital, dental, surgical, ambulance and prosthetic services [*shall be*] **are** presumed to be reason-
32  able and necessary unless the provider [*is given*] **receives** notice of denial of the charges not more
33  than 60 calendar days after the insurer receives from the provider notice of the claim for the ser-
34  vices. At any time during the first 50 calendar days after the insurer receives notice of claim, the
35  provider shall, within 10 business days, answer in writing questions from the insurer regarding the
36  claim. For purposes of determining when the 60-day period provided by this paragraph has elapsed,
37  counting of days shall be suspended if the provider does not supply written answers to the insurer
38  within 10 days and may not resume until the answers are supplied.

39      (b) If the injured person is usually engaged in a remunerative occupation and if disability con-
40  tinues for at least 14 days, 70 percent of the loss of income from work during the period of the in-
41  jured person's disability until the date the person is able to return to the person's usual occupation.
42  This benefit is subject to a maximum payment of $3,000 per month and a maximum payment period
43  in the aggregate of 52 weeks. As used in this paragraph, "income" includes but is not limited to
44  salary, wages, tips, commissions, professional fees and profits from an individually owned business
45  or farm.

SB 411

(c) If the injured person is not usually engaged in a remunerative occupation and if disability continues for at least 14 days, the expenses reasonably incurred by the injured person for essential services that were performed by a person who is not related to the injured person or residing in the injured person's household in lieu of the services the injured person would have performed without income during the period of the person's disability until the date the person is reasonably able to perform such essential services. This benefit is subject to a maximum payment of $30 per day and a maximum payment period in the aggregate of 52 weeks.

(d) All reasonable and necessary funeral expenses incurred within one year after the date of the person's injury, but not more than $5,000.

(e) If the injured person is a parent of a minor child and is required to be hospitalized for a minimum of 24 hours, $25 per day for child care, with payments to begin after the initial 24 hours of hospitalization and to be made for as long as the person is unable to return to work if the person is engaged in a remunerative occupation or for as long as the person is unable to perform essential services that the person would have performed without income if the person is not usually engaged in a remunerative occupation, but not to exceed $750.

(2) With respect to the insured person and members of that person's family residing in the same household, an insurer may offer forms of coverage for the benefits required by subsection (1)(a), (b) and (c) of this section with deductibles of up to $250.

**SECTION 5.** ORS 742.544 is amended to read:

742.544. (1) A provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person only to the extent that the total amount of benefits paid exceeds the [*economic*] damages [*as defined in ORS 31.710*] suffered by that person. As used in this section, "total amount of benefits" means the amount of money recovered by a person from:

(a) Applicable underinsured motorist benefits described in ORS 742.502 (2);

(b) Liability insurance coverage available to the person receiving the personal injury protection benefits from other parties to the accident;

(c) Personal injury protection payments; and

(d) Any other payments by or on behalf of the party whose fault caused the damages.

(2) Nothing in this section requires a person to repay more than the amount of personal injury protection benefits actually received.

**SECTION 6. The amendments to ORS 742.502, 742.504, 742.524 and 742.544 by sections 2 to 5 of this 2015 Act apply to motor vehicle liability policies that are issued or renewed on or after the effective date of this 2015 Act.**

————————

78th OREGON LEGISLATIVE ASSEMBLY--2015 Regular Session

# SENATE AMENDMENTS TO
# SENATE BILL 411

By COMMITTEE ON BUSINESS AND TRANSPORTATION

February 17

1   On page 1 of the printed bill, line 3, after "742.504," insert "742.506,".

2   On page 2, line 25, delete "insured's".

3   In line 32, delete ", less the amount recovered from other motor vehicle liability insurance pol-
4   icies,".

5   On page 3, line 19, delete ", less the amount recovered from other motor vehicle liability in-".

6   In line 20, delete "surance policies,".

7   On page 8, delete lines 9 through 11.

8   In line 12, delete "(c)" and insert "(b)".

9   In line 20, delete "(d)" and insert "(c)".

10   In line 23, delete "(e)" and insert "(d)".

11   In line 37, delete "amount by which the".

12   In line 40, after "vehicle" insert a period and delete the rest of the line and line 41.

13   Delete lines 42 through 45.

14   On page 9, delete lines 1 through 3.

15   In line 4, delete "(c)" and insert "(b)".

16   On page 11, after line 31, insert:

17   "**SECTION 6.** ORS 742.506 is amended to read:

18   "742.506. Notwithstanding the contrary provisions of any policy, the provisions of ORS 742.504
19   (9)[(a) to (c)] shall control allocation of responsibility between insurers, except that if all policies
20   potentially involved expressly allocate responsibility between insurers, or self-insurers, without
21   repugnancy, then the terms of the policies shall control.".

22   In line 32, delete "6" and insert "7" and after "742.504," insert "742.506,".

23   In line 33, delete "5" and insert "6".

24   ————————————

LC 1586/SB 411-1

Exhibit 6 Page 1 of 1

EXHIBIT
6