Michael Brian, OSB No. 710309
michael@brianlawfirm.com
Brian Law Firm LLC
1611 East Barnett Rd
Medford, Or 97501
Telephone: (541) 772-1334
Facsimile: (541) 770-5560

Travis Eiva, OSB No. 052440
travis@zempereiva.com
Zemper Eiva Law LLC
101 East Broadway, Ste. 303
Eugene, OR 97401
Telephone: (541)-636-7480
Facsimile: (458) 205-8658


of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| TRAVIS BATTEN,<br><br>               Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>               Defendant. | Case No. 3:19-cv-01200-MC<br><br>Consolidated with:<br>Case No. 1:18-cv-00676-MC<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Pursuant to Fed. R. Civ. P. 56(a)<br>Request for Oral Argument |

## LR 7-1(a) CERTIFICATION

The attorneys for plaintiff made a good faith effort through telephone calls and email to resolve the basis for this Motion and were unable to do so.

/ / / / /

## MOTION

Plaintiff Travis Batten respectfully moves this Court for an order granting partial summary judgment that the uninsured ("UM") coverage (and policy limits for such coverage) under State Farm Policy Nos. 110 5075-C11-37A and 274 2245-A12-37E apply to the subject motor vehicle injuries suffered by Mr. Batten.

## INTRODUCTION

Travis Batten was catastrophically injured when a negligent uninsured motorist struck a car in which he was a passenger. The motorist only had $20,000 in liability coverage and consequently was an uninsured motorist as that term is understood in Oregon law, *see* ORS 742.502 *et seq.* Before the accident, Mr. Batten had purchased three (3) separate liability insurance policies from defendant State Farm, paying separate premiums for each. Each policy had UM coverage with a $250,000 policy limit. Because Mr. Batten's injuries were severe, permanent, and far exceeded the liability insurance available from the negligent driver, he sought UM benefits up to the limits on each policy, totaling $750,000. State Farm asserted that a special clause in the policies limited Mr. Batten's available UM benefits to no more than the single limits of one of the policies. Thereafter, State Farm paid the limits of one of the policies but refused to pay the limits on the remaining two policies.

Because Oregon Law requires that every liability policy provide UM coverage up to the liability limits described on the policy's declarations page, plaintiff brought this breach of contract action to obtain the UM benefits under the remaining two policies.

Plaintiff now moves this Court for partial summary judgment that the UM benefits on the two remaining State Farm policies are applicable to his injuries up to the combined policy limits of $500,000. [1]

## LEGAL STANDARD

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hoffman v. Foremost Signature Ins. Co.*, 989 F. Supp. 2d 1070, 1075, 2013 WL 5723313 (D. Or. 2013) (citing *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002), which in turn quoted *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir.1995) (citing *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994)). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Fed.R.Civ.P. (56)(c).

/ / / / /

/ / / / /

---

[1] If this Court agrees with plaintiff that the UM coverage from each of the three policies are available, plaintiff still must prove at trial that he has suffered sufficient damages to receive all or some of the benefits from those policies.

**FACTS**

Travis Batten, an Oregon citizen, was a passenger in a car driven by a co-worker while on a business trip in Louisiana. Dkt. No. 30-1 of Case No. 1:18-cv-00676-MC at Exhibit 2, ¶ 3 (Declaration of Erickson Incorporated) and Exhibit 4, ¶4-5 (Declaration of Collin Bowns). A negligent driver in another car drove into their lane of travel from the opposite direction and hit their car almost head on. Mr. Batten was catastrophically injured.

The negligent driver had the Louisiana statutory minimum applicable limits for motor vehicle liability insurance of $20,000, Dkt. No. 30-1 of Case No. 1:18-cv-00676-MC at Exhibit 6 (Affidavit of Louisiana Driver), which is less than Oregon's statutory minimum of $25,000 under ORS 806.070. Accordingly, under Oregon law he is considered an "uninsured motorist." ORS 742.500(5) (defining an "uninsured" motorist as a driver with liability limits "less than the amounts or limits prescribed for bodily injury or death under ORS 806.070").

At the time of the collision, Mr. Batten held three State Farm Auto Policies (Nos. 110 5075-C11-37A, 274 2245-A12-37E, and 065 0652-F10-37C) that were in effect and issued in Oregon. Dkt. 14-1 Declaration of Ralph Spooner at Exhibits 1-3. The declarations page on each policy identifies the effective dates of each policy (policy period) and the premiums Mr. Batten paid for coverages under each policy, including specific premiums for UM coverage. The declarations page of each policy also indicates the limits for liability and UM coverage at $250,000 per person/$500,000 per accident. The relevant portions of the declarations page of each policy are shown below.

The declarations page of Policy No. 110 5075-C11-37A, in relevant part, provides:

## DECLARATIONS PAGE

| | |
|---|---|
| POLICY NUMBER | 110 5075-C11-37A |
| POLICY PERIOD OCT 06 2017 to MAR 11 2018 12:01 A.M. Standard Time | |

. . . . .

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 1985 | TOYOTA | XTRA CAB | PICKUP | JT4RN66D3F5057813 | 603H50M000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A P2 | Combined Premium | $109.94 |
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person, Each Accident | |
| | $250,000      $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P2 | Personal Injury Protection Coverage | |
| | (See Policy Schedule for Limits.) | |
| D | Comprehensive Coverage | $16.93 |
| G | Collision Coverage - $250 Deductible | $28.94 |
| H | Emergency Road Service Coverage | $4.56 |
| U | Uninsured Motor Vehicle Coverage | $37.52 |
| | Bodily Injury Limits | |
| | Each Person, Each Accident | |
| | $250,000      $500,000 | |

| | | |
|---|---|---|
| Total premium for OCT 06 2017 to MAR 11 2018. | $197.89 | This is not a bill. |

Exhibit 1 attached to Declaration of Travis Eiva.

The declarations page of Policy No. 065 0652-F10-37C, in relevant part, provides:

| DECLARATIONS PAGE |
| --- |

| POLICY NUMBER    065 0652-F10-37C |
| --- |
| POLICY PERIOD OCT 06 2017 to DEC 10 2017<br>    12:01 A.M. Standard Time |

. . . . .

| YOUR CAR | | | | | |
| --- | --- | --- | --- | --- | --- |
| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
| 1997 | TOYOTA | 4 RUNNER | SPORT WG | JT3HN86R4V0085719 | 603H50M000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
| --- | --- | --- |
| A P2 | Combined Premium | $56.17 |
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000      $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P2 | Personal Injury Protection Coverage | |
| | (See Policy Schedule for Limits.) | |
| D | Comprehensive Coverage | $11.68 |
| G | Collision Coverage - $250 Deductible | $20.59 |
| H | Emergency Road Service Coverage | $1.89 |
| U | Uninsured Motor Vehicle Coverage | $15.51 |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $250,000      $500,000 | |
| Total premium for OCT 06 2017 to DEC 10 2017. | | $105.84  This is not a bill. |

Exhibit 2 attached to Declaration of Travis Eiva.

The declarations page of Policy No. 274 2245-A12-37E, in relevant part, provides:

## DECLARATIONS PAGE

POLICY NUMBER   274 2245-A12-37E
POLICY PERIOD OCT 06 2017 to JAN 12 2018
    12:01 A.M. Standard Time

. . . . .

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|------------|--------------------|-------|
| 1978 | FORD | F150 SUPER | PICKUP | X14HKAJ6781 | 603H50M000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A P2 | Combined Premium | $72.94 |
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $250,000      $500,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P2 | Personal Injury Protection Coverage | |
| | (See Policy Schedule for Limits.) | |
| D | Comprehensive Coverage | $5.05 |
| G | Collision Coverage - $250 Deductible | $12.02 |
| H | Emergency Road Service Coverage | $2.82 |
| U | Uninsured Motor Vehicle Coverage | $23.23 |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $250,000      $500,000 | |

| | Total premium for OCT 06 2017 to JAN 12 2018. | $116.06   This is not a bill. |

Exhibit 3 attached to Declaration of Travis Eiva.

The insurer also placed a special clause in each policy that negated the UM coverage and policy limits of one policy if the UM coverage and policy limits on a different State Farm policy applied to the injuries:

**If Other Uninsured Motor Vehicle Coverage of Any Kind Applies**

1. If Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy and any kind of Uninsured Motor Vehicle Coverage provided by one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

Dkt. 14-1 Declaration of Ralph Spooner at Exhibit 1, p. 29; Exhibit 2, p. 29; Exhibit 3, p. 29. Under that clause, no matter the seriousness of the insured's injuries and no matter that the insured paid separate premiums under separate policies to have UM coverage up to the limits described on each policy's declarations page, the insured was only entitled to the UM coverage and limits of one policy.

## LEGAL ANALYSIS

I. **Oregon Statutes Require that State Farm Provide Travis Batten UM Benefits Under All Three Policies.**

The scope of UM coverage in Oregon is governed by statute. Those statutes set out (1) *when* UM coverage is mandatory, (2) the *type* of injuries that trigger payment

benefits under the UM coverage, and (3) the ***amount*** of UM payment benefits that must be provided under the coverage.

A.  When UM coverage is required.

With regard to ***when*** UM coverage must be available:  The Oregon legislature has "mandated that all motor vehicle motor vehicle liability policies include 'uninsured motorist coverage.'" *Mid-Century Ins. Company v. Perkins*, 209 Or. App. 613, 621, 149 P.3d 265, 269 (2006) (quoting Or Laws 1967, ch 482).  The mandatory inclusion of UM coverage is currently set forth in 742.502(1), which provides that "***[e]very motor vehicle liability policy***" issued for delivery in Oregon "***shall provide in the policy . . .  uninsured motorist coverage***."  (emphasis added). In sum, all Oregon liability policies must include UM coverage.

Moreover, an insurer cannot arbitrarily define the scope or limits of UM coverage provided in the policy.  Instead, the legislature passed ORS 742.504, which provides model minimum terms of UM coverage, mandating that "[*e*]***very policy*** required to provide [UM] coverage . . . shall provide [such] coverage [that] is no less favorable" than the provisions set forth in ORS 742.504.  (Emphasis added).

Here, plaintiff held three separate liability policies with State Farm. *See also Mid-Century*, 344 Or. at 210, 179 P.3d at 641 ("policy" means the "contract between the insurer and the insured").  Plaintiff paid separate premiums for each policy contract and entered into each policy contract for different policy periods.  Under Oregon law, each of those policies must contain its own UM coverage that, at a minimum, provides coverage that is

as least as favorable to the insured as the scope of coverage set out by ORS 742.504. *Erickson v. Farmers Ins. Co. of Oregon*, 331 Or. 681, 685, 21 P.3d 90, 93 (2001) ("Any UM provisions that are less favorable to an insured than those required under ORS 742.504(1) to (12) are unenforceable against an insured in Oregon. However, an insurer may add terms to an Oregon policy that are . . . more favorable to the insured than those required by the statutes.").

B. The type of injuries that trigger UM benefits.

ORS 742.504 sets out the ***type*** of injuries that trigger benefits under the UM coverage. That is:

> the insurer will pay all sums that the insured . . . is legally entitled to recover as damages from the . . . operator of an uninsured vehicle because of bodily injury sustained by the insured[.]

ORS 742.504(1)(a). As a result, each State Farm policy must provide UM coverage for any injuries to the insured that are caused by a negligent driver, when that driver does not have sufficient liability insurance to compensate the insured for those injuries.

Here, plaintiff clearly suffered the ***type*** of injuries for which the statute mandates UM coverage and benefits. He was injured by a negligent driver who caused him to suffer profound losses with likely damages in the millions of dollars, but the negligent driver only had $20,000 in liability insurance to address those injuries.

C. The amount of UM benefits State Farm must provide under each policy.

Oregon statutes also set out the ***amount*** of money benefits that an insurer must provide in UM coverage. Specifically, ORS 742.504(7)(a) provides that the "***limit of***

*liability stated in the declarations* . . . *is the limit of the insurer's [UM] liability*." (emphasis added).  In other words, the amount of available UM benefits tracks the policy limits of the insured's liability coverage as stated on the "declarations" page of the policy.

Here, the declarations page of each liability policy indicates a liability limit of $250,000.  Declaration of Travis Eiva at Exhibits 1-3.  Accordingly, State Farm must pay up to $250,000 in benefits under the UM coverage for each policy.

    D.    <u>Summary: A simple case under Oregon law.</u>

In sum, this is a simple case under Oregon law.  Oregon statutes require that each liability policy include UM coverage.  ORS 742.502(1).  Oregon statutes also require that such UM coverage applies to any injuries suffered by an insured that are caused by a negligent driver, when that driver does not have sufficient liability insurance to compensate the insured for those injuries.  ORS 742.504(1)(a).  Finally, Oregon statutes require that the amount of available UM benefits must track the policy limits of the insured's liability coverage as stated on the "declarations" page of the policy. ORS 742.504(7)(a).

Plaintiff meets all of those elements.  Consequently, plaintiff is entitled to up to $750,000 in UM benefits from the three liability policies ($250,000 per policy) in effect at the time of the accident.

**II.    Oregon Statutes prohibit State Farm from enforcing terms that negate the above-described UM benefits.**

As explained earlier, defendant insurer inserted a clause in the UM coverage, which, if applied, would negate UM coverage and benefits in two of plaintiff's policies with State Farm.  That clause sets forth that the insured is not entitled to any UM coverage or benefits

in a policy if UM benefits up to the limits have been provided on a different State Farm policy. The provision provides:

> If Other Uninsured Motor Vehicle Coverage of Any Kind Applies
>
> 1. If Uninsured Motor Vehicle Bodily Injury Coverage provided by this policy and Uninsured Motor Vehicle Coverage of any kind provided by one or more other vehicle policies issued to you or any resident relative by the State Farm Companies apply to the same bodily injury, then:
>
>> a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and
>> b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the polices. We may choose one or more policies from which to make payment.

Because the clause renders UM coverage under the other policies illusory, it undermines the minimum UM coverage that ORS 742.504 requires each policy to contain UM coverage up to the limits listed in the declarations page of that policy. Therefore, the clause is more restrictive than the statutory minimum coverage and unenforceable against plaintiff. *Erickson v. Farmers Ins. Co. of Oregon*, 331 Or. 681, 685, 21 P.3d 90, 93 (2001) ("Any UM provisions that are less favorable to an insured than those required under ORS 742.504(1) to (12) are unenforceable against an insured in Oregon. However, an insurer may add terms to an Oregon policy that are . . . more favorable to the insured than those required by the statutes.").

To be sure there are quite a few exclusionary clauses and limitations on UM benefits recognized as appropriate in the model-minimum coverage required under ORS 742.504(1)-(12). For example, ORS 742.504(4)(a) allows the negation of UM coverage if

the insured settles with the underlying liability driver without the consent of the insurer. ORS 742.504(4)(b) allows for the negation of UM coverage under a policy if the insured was occupying or struck by a car that was regularly used by the insured but the insured did not identify that vehicle in the policy. Also, ORS 742.504(d) sets forth that no UM benefits are available for damages that have been paid for by the liability insurance of the uninsured motorist. Likewise, ORS 742.504(7)(b) provides that no UM benefits will be provided for damages paid for by workers' compensation benefits. However, there is no subsection of ORS 742.504 that allows State Farm to negate UM coverage (and the applicable limits of that coverage) under one policy because similar coverage is also available under another policy.

In briefing to state courts on this issue and in its Summary Judgment Motions recently filed in this and three other federal cases currently addressing the same issue, State Farm has cited to several different statutory subsections as authorizing its clause negating statutorily mandated UM coverage. For example, defendant has cited to the interplay between ORS 742.504(2)(j)(c) and ORS 742.504(7) as one statutory basis for the negation clause. Defendant also has cited to ORS 742.506 as another basis for the negation clause.

Of course, to determine whether any of those subsections allow defendant to enforce the negation clause, this court must engage in an exercise of statutory interpretation. The Oregon Supreme Court instructs that when interpreting an Oregon statute the main goal is to ascertain the intent of the legislature under the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610 12, 859 P2d 1143 (1993), *as modified by State v.*

*Gaines*, 346 Or 160, 171 72, 206 P3d 1042 (2009). A court begins by examining the statutory text in context. *Gaines*, 346 Or at 171 72 (stating methodology). "[T]here is no more persuasive evidence of the intent of the legislature than 'the words by which the legislature undertook to give expression to its wishes.'" *Id.* at 171 (quoting *State ex rel Cox v. Wilson*, 277 Or 747, 750, 562 P2d 172 (1977)). Here, there is nothing in the text or context of those statutory subsections that permit defendant's clause to negate UM coverage.

A.    <u>ORS 742.504(2)(j)(C) and ORS 742.504(7)</u>

ORS 742.504(2)(j)(C) and ORS 742.504(7) do not provide authority for defendant's negation clause. ORS 742.504(2) provides numerous operative definitions for the minimal UM coverage required by the statute. Subsection (2)(j) defines the phrase "[s]ums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages" that is used in ORS 742.504(1)(a), which describes the type of losses protected by UM coverage. *See* ORS 742.504(1)(a) ("the [UM] insurer will pay all sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages from the owner or operator of an uninsured[/underimnsured] vehicle"). Subsection (2)(j) defines that phrase as

(j) . . . the amount of damages that:

(A) A claimant could have recovered in a civil action from the owner or operator at the time of the injury after determination of fault or comparative fault and resolution of any applicable defenses;

(B) Are calculated without regard to the tort claims limitations of ORS 30.260 (Definitions for ORS 30.260 to 30.300) to 30.300 (ORS 30.260 to 30.300 exclusive); and

(C) Are no larger than benefits payable under the terms of the policy as provided in subsection (7) of this section.

The subsection merely sets forth that UM coverage is available (1) up to the amount the underinsured/underinsured driver could be held liable to the insured; (2) when determining the amount the underinsured/underinsured driver could be held liable there is no application of statutory tort caps; and (3) subject to the parameters of available benefits described under ORS 742.504(7). The subsection is silent on the clause defendant seeks to enforce here.

ORS 742.504(7) provides four parameters on the UM benefits, referenced as subsections (a)-(b), and none of those parameters allow for the availability of UM benefits in one policy to be negated by the availability of UM benefits in another policy. For example, subsection (7)(a) merely sets forth that the benefits are payable up to the same amount as the liability policy limits on the declarations page:

(a) The limit of liability stated in the declarations as applicable to "each person" is the limit of the insurer's liability for all damages . . . and . . . the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

Therefore, just as plaintiff stated in the previous argument section, the amount of benefits payable under the UM coverage tracks the amount payable under the "limit of liability stated in the declarations" page for that policy.

Subsection (7)(b) provides the following parameter on UM benefits:

(b) Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by the amount paid and the present value of all amounts payable on account of the bodily injury under any workers' compensation law, disability benefits law or any similar law.

That subsection simply indicates that no UM benefits are available for harms that have also been covered by workers' compensation insurance or disability benefits laws. That section provides no support for defendant. Indeed, the existence of this subsection cuts against defendant. Specifically, it shows that the legislature knows how to reduce the coverage based on the existence of other insurance. *Carrigan v. State Farm*, 326 Or 97, 103, 949 P2d 705 (1997) ("If the legislature desires [a particular outcome] it does not lack the linguistic tools necessary to achieve that outcome"). Simply put, if the legislature intended to allow insurers to limit UM coverage under one policy based on availability of UM coverage under another policy it could have done so. But it did not.

Subsection (7)(c) provides the following parameter on UM benefits:

(c) Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by the credit given to the insurer pursuant to subsection (4)(d)(C) or (D)[2] of this section.

---

[2] ORS 742504(4)(d)(C-D) provides:

(d) This coverage does not apply with respect to underinsured motorist benefits unless:

. . . . . .

(C) The insured gives credit to the insurer for the unrealized portion of the described liability limits as if the full limits had been received if less than the described limits have been offered in settlement, and the insurer has consented under paragraph (a) of this subsection; or

That subsection merely sets forth that no UM benefits will be provided for harms that are compensable under the liability limits of the underinsured driver. That subsection has nothing to do with limiting UM coverage in one policy based on the existence of UM coverage of another policy.

Subsection (7)(d) does not limit the UM coverage at all. It provides:

> (d) The amount payable under the terms of this coverage may not be reduced by the amount of liability proceeds offered, described in subsection (4)(d)(B) or (D) of this section, that has not been paid to the injured person. If liability proceeds have been offered and not paid, the amount payable under the terms of the coverage shall include the amount of liability limits offered but not accepted due to the insurer's refusal to consent. The insured shall cooperate so as to permit the insurer to proceed by subrogation or assignment to prosecute the claim against the uninsured motorist.

That subsection only makes clear that the credit the insurer enjoys under ORS 742.504(7)(c) for any available liability policies of the underinsured driver will not apply in some circumstances in which the insured is prevented from obtaining any money from that liability policy. Generally, this provision applies when the liability insurance of the negligent driver is not available because it was paid out to others injured in the car collision or because the UM insurer refuses to provide its insured with consent to settle the claim with the underinsured driver.

---

> (D) The insured gives credit to the insurer for the unrealized portion of the described liability limits as if the full limits had been received if less than the described limits have been offered in settlement and, if the insurer has refused consent under paragraph (a) of this subsection, the insured protects the insurer's right of subrogation to the claim against the tortfeasor.

Nothing in the text or context of ORS 742.504(2)(j) and ORS 742.504(7) allows an insurance company to negate UM coverage (and the limits of that coverage) in one policy based on the use of UM coverage and its limits in another policy. Those statutory subsections provide no basis to enforce State Farm's negation clause.

B. ORS 742.506

ORS 742.506 also does not provide authority for State Farm's negation clause. That statute simply provides a framework for determining which UM insurer pays first when there are multiple, applicable UM coverages for one collision. It does not provide insurers an opportunity to erase applicable UM coverage under one policy because of the existence of UM coverage under another policy.

ORS 742.506 provides:

> Notwithstanding the contrary provisions of any policy, the provisions of ORS 742.504 (Required provisions of uninsured motorist coverage) (9) shall control allocation of responsibility between insurers, except that if all policies potentially involved expressly allocate responsibility between insurers, or self-insurers, without repugnancy, then the terms of the policies shall control.

The first part of ORS 742.506 makes clear that the allocation of responsibility between multiple UM insurers generally is controlled by ORS 742.504(9)[3]

---

[3] ORS 742.504(9) provides:

> (a) With respect to bodily injury to an insured:
>
>> (A) While occupying a vehicle owned by a named insured under this coverage, the insurance under this coverage is primary.

ORS 742.504(9) sets forth that under certain circumstances, when there are multiple policies with UM coverage that apply to an insured's injuries, there are rules as to which policy pays benefits first and which policy pays benefits second. For example, subsection (9)(a)(A) provides that if the insured is in his or her own car, then the insured's own UM coverage is applied to cover the losses first. To the extent that there may be an additional policy with UM coverage that applies to those losses (*for example* in some cases an employer's liability policy also may provide UM benefits if the insured was driving his or her own car on behalf of the employer), then the benefits of that second UM coverage would only apply to injuries in excess of those already covered by the insured's own policy. Subsection (9)(a)(B) provides that if the insured is injured while in a car he or she does not own, then the insured's own UM coverage would only apply after all UM benefits from the policy that insures the car have been spent. Subsection (9)(b) provides special rules for which UM coverage is triggered first when the insured is a passenger of public transportation or taxis.

---

(B) While occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any primary insurance available to the occupant that is similar to this coverage . . . [.]

(b) With respect to bodily injury to an insured while occupying any motor vehicle used as a public or livery conveyance, the insurance under this coverage shall apply only as excess insurance over any other insurance available to the insured that is similar to this coverage[.]

When none of those circumstances exist and there are multiple policies with applicable UM coverage, for example when the insured is hit as a pedestrian, then the *Lamb-Weston* doctrine applies, which requires that the UM coverage under each policy be paid on a pro rata basis up to the respective limits of each policy. *See Lamb-Weston, Inc. v. Ore. Auto. Ins. Co*., 219 Or. 110, 341 P.2d 110, *reh'g den*., 219 Or. 130, 346 P.2d 643 (1959) (setting out the pro rata share rule).

The second part of ORS 742.506 does nothing more than provide insurers an opportunity to create other sequencing rules as to which insurer pays primary and which pays excess as long as each the terms of each applicable policy agrees with that sequencing. ORS 742.506 in no way allows an insurer to negate UM coverage under one policy because of the existence of UM coverage under another policy. Indeed, if this Court were to adopt State Farm's argument that ORS 742.506 authorizes such a provision, then State Farm could write an even more onerous clause to negate its UM coverage even when ***another*** insurance company has provided applicable UM coverage for the loss. The absurdity of that position aside, the Oregon Court of Appeals has described the *Lamb-Weston* doctrine as rejecting such an approach to insurance coverage:

> [I]f two or more insurers provide coverage for the same loss, and each attempts to limit the extent of its liability when there is other applicable insurance, if the respective other insurance clauses purport to limit or preclude coverage on the basis of the existence of other coverage, then those clauses are disregarded and the liability of the individual insurers is prorated in the ratio that their respective policy limits bear to the cumulative limit of all of the applicable policies.

*Ind. Finishes & Systems v. Amer. Univ. Ins.*, 79 Or. App. 614, 616-17, 720 P.2d 382, *adh'd to as modified on recons.*, 80 Or. App. 743, 724 P.2d 333 (1986). State Farm simply cannot exclude coverage paid-for under one policy based on the existence of similar coverage that has been paid for under another policy.

## CONCLUSION

For the foregoing reasons, plaintiff Travis Batten respectfully requests that this Court grant his motion for partial summary judgment that the UM coverage under all three Stat Farm Policies are available for plaintiff's injuries.

DATE: January 31, 2020.


BRIAN LAW FIRM, LLC                    ZEMPER EIVA LAW LLC


  /s/Michael Brian                      /s/Travis Eiva
Michael Brian, OSB No. 710309        Travis Eiva, OSB No. 052440