Travis Eiva, OSB No. 052440
travis@zempereiva.com
Zemper Eiva Law LLC
101 East Broadway, Ste. 303
Eugene, OR 97401
Telephone: (541)-636-7480
Facsimile: (458) 205-8658

of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| TRAVIS BATTEN,<br><br>      Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>      Defendant. | Case No. 3:19-cv-01200-MC<br><br>Consolidated with:<br>Case No. 1:18-cv-00676-MC<br><br>DECLARATION OF TRAVIS EIVA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM'S MOTION FOR SUMMARY JUDGMENT |

I, Travis Eiva, do hereby state as follows:

1. I make this Declaration in support of Plaintiff's Opposition to Defendant State Farm's Motion for Summary Judgment.

2. Exhibit 1 to this Declaration is a true and correct copy of Legislative Statements of Arthur Towers made to the Oregon Legislature on behalf of the Oregon Trial Lawyers Association, in favor of Oregon Senate Bill 411 (2015), and *available at* https://olis.oregonlegislature.gov/liz/2015R1/Downloads/CommitteeMeetingDocument/43495 .

3. Exhibit 2 to this Declaration is a true and correct copy of the written opinion of Multnomah County Judge Katherine von Ter Stegge in the case of *Collacchi v. State Farm Mutual Automobile Insurance Company*, Multnomah County Case No. 18CV49030 (Dec. 3, 2019).

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

DATE: February 7, 2020.

ZEMPER EIVA LAW LLC

/s/Travis Eiva
Travis Eiva, OSB No. 052440

# Consumer Protection in Auto Insurance

## SB 411 (with -1 amendments)

**Topic One: Getting What You Pay For (Stacking)**
An unfair loophole in Oregon law prevents victims of underinsured motorists (UIM) from accessing insurance benefits they've been paying for in premiums, month after month, year after year.  **SB 411 allows Oregon to join Washington and more than half of the other states in allowing consumers to stack their coverage on top of the at-fault driver's liability coverage so injured consumers get what they've paid for.**

**Example:** You are hit by an underinsured motorist and have medical bills of $75,000. The at-fault driver has $25,000 of liability insurance. You collect that. You have your own policy of $25,000 underinsured motorist coverage. In this instance you would only get $25,000 in coverage rather than the two policies stacked together for $50,000 in coverage.  Why?



Under current law, the at-fault driver's $25,000 is subtracted from your underinsured motorist coverage. **SB 411 would STACK your $25,000 in coverage on top of the underinsured motorist's liability coverage.**

**Topic Two: Putting Injured Motorists Before Insurance Companies (PIP)**
Personal Injury Protection (PIP) is a mandatory special (minimum) $15,000 benefit for which motorists pay a separate premium.  PIP is used for speedy payment of medical bills and wage loss. This payment could be issued before there is a determination of fault in the accident. If the other driver is at fault, their insurance pays up to the maximum of their liability coverage. Those funds are used to pay medical bills, lost wages, non-economic and vehicular damage **and to repay the $15,000 PIP that the injured driver's insurance company has already paid out.**   Under current Oregon law, your insurance company's PIP money is repaid to the insurance company **before** you**,** the injured motorist, get paid for **total** damages. SB 411 would allow the injured motorist to recover their **total** damages first. Then, if there is money left over from the perpetrator's liability insurance, the PIP is reimbursed. This system is in place in 38 other states.

The bill also makes a slight but important modification to the duration of PIP coverage. Currently PIP pays for medical bills incurred within a year of the accident. Without changing the amount of PIP coverage available, the bill would extend the coverage for medical bills from one year to two.

*Arthur Towers, Oregon Trial Lawyers Association, 503-799-1017 arthur@oregontriallawyers.org 1/27/15*

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR MULTNOMAH COUNTY

| | |
|---|---|
| LORAINE COLLACCHI, Personal Representative for the Estate of Brenna M. Collacchi, deceased,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMANY,<br><br>Defendant. | Case No. 18CV49030<br><br>OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

I. Introduction

Oral argument on the parties' cross-motions for summary judgment was held before the Court on November 22, 2019.[1] At that hearing, Plaintiff was represented by Michael Rosenbaum and Aaron Reichenberger. Defendant was represented by Ralph Spooner. Upon consideration of the parties' briefing and oral arguments in support of their own, and in opposition to, the opposing party's motion, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment for the reasons set forth below.

II. Analysis

In resolving the cross-motions, the parties agree that the first contested issue the Court must decide is whether or not, at the time of her death in a car accident, three of the four State Farm policies purchased by her parents to provide coverage to Brenna Collacchi were still in effect. The parties also agree that if the Court finds that the policies were in effect, it should then decide whether the State Farm

---

[1] Plaintiff's Motion is titled "Motion for Summary Judgment." In Plaintiff's Reply in Support of Summary Judgment, Plaintiff explains that its Motion seeks a legal determination as to whether or not the policies in question were in effect and whether the anti-stacking language in the contracts is enforceable. Plaintiff does not ask the Court to make any determination regarding Plaintiff's damages. For this reason, this motion is more accurately a motion for partial summary judgment and does not resolve all issues in the case, leaving some for trial.

1 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

insurance policy provisions limiting the Collacchis' underinsured motorist coverage (UIM) to the single highest policy limit is void as a matter of law. Accordingly, the Court first addresses whether or not State Farm's notices effectively cancelled the policies in question.

    a. The Cancellation Notices

State Farm maintains that it complied with the legal requirements to cancel the Collacchi policies for nonpayment of premiums and that the cancellation of all three policies was effective one calendar day before Brenna Collacchi lost her life. At oral argument, the parties agreed that there is no genuine issue of material fact as to whether or not State Farm mailed a cancellation notice to Lorraine and Mark Collacchi, the joint policy holders, at the address listed on the three policies. The uncontested evidence is that State Farm did mail cancellation notices to that listed address, which is 14323 SE Carmichael Ct., Portland, Oregon, 97086. What Plaintiff disputes is the legal validity of the cancellation notices. Plaintiff challenges the cancellation notices for the following reasons: Insufficiency of proof of mailing of the cancellation notices to the address listed on the policies; evidence that Lorraine Collacchi lived at the mailing address listed for the policies but never received the cancellations in the mail; the fact that State Farm had an updated address for Mark Collacchi and State Farm concedes it did not mail the cancellation notice to him at that address; and finally that when the Collacchis paid the past due amount, State Farm applied the amounts it received to the policies in a manner that establishes the policies were not cancelled.

It is an uncontested fact that State Farm never mailed a cancellation notice to Mark Collacchi at the most recent address it had notice of for Mr. Collacchi, which was 15032 SE 128th Ave., Clackamas, Oregon. (*Rosenbaum Dec.*, Ex. 1, 8/19/19 Letter of Ralph Spooner). At oral argument, defense counsel explained that State Farm considers Mr. Collacchi "the account holder," although both Lorraine and Mark Collacchi are policy holders and insureds for each of the policies in question.

The parties disagree as to whether or not State Farm had a contractual obligation to mail a set of cancellation notices to Mr. Collacchi at his most recent address in Clackamas. Under the terms of each of the policies, State Farm "may cancel this policy by mailing or delivering a written notice to the most recent policy address that we have on record for an insured." *Weathers Dec.*, Ex. 3, p. 44. The Court is

2 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EXHIBIT 2: Page 2 of 8

persuaded that this contract language does differ from the requirements set forth in ORS 742.564(1), which allows for sufficient notice of cancellation by an insurer with mailing to the named insured at the address shown in the policy. The plain language in State Farm's own contract imposes a different, and potentially more burdensome, requirement on State Farm to identify the most recent policy address it has on record for the insured.

Here, it is uncontested that on September 28, 2016, Mark Collacchi applied for renter's insurance through his State Farm agent, John Matlock. That insurance application shows that he applied in his own name for coverage as the renter and sole occupant of the SE 128th Ave. address in Clackamas to begin October 1, 2016. (*Mark Collacchi Dec.*, Ex. 1). In the pre-eligibility section of the renter's insurance application, Mr. Collacchi is listed as being a State Farm customer for 31 years and being currently insured by State Farm. *Id.* The quote generated for Mr. Collacchi by State Farm for renter's insurance applies a discount for having active home and auto policies. *Id.* It should also be noted that the cancellation notices entered in the record state in capital letters, "IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT." That statement appears right under the name and phone number of the Collacchis' agent, John Matlock. (*Bailey Dec.*, Ex.s 3-5). The home and auto policies in question have a change of address provision which reads, "*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to us by (1) *you*...." (*emphasis in original*) (*Weathers Dec.*, Ex. 1, p. 41).

The Court finds on these facts that State Farm did have a contractual obligation to mail a cancellation notice to Mr. Collacchi at his most recent Clackamas address. At the time of State Farm's mailing of the cancellation notices, Mr. Collacchi had already gone to the same insurance agent to whom he was directed by State Farm to notify about a change of address, and had indeed informed John Matlock of a change of address in the process of applying for and securing renter's insurance—the application for which also put the agent on notice that Mr. Collacchi had an existing homeowner's policy for a different physical address. Mr. Collacchi also complied with his obligation to change his address under the homeowner and auto policies under the terms of those contracts. At the time the cancellation notices

3 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

were sent to the SE Carmichael Ct. address, State Farm concedes it had a different, more recent address for its insured Mark Collacchi, but it did not mail a cancellation notice there. Even in the most favorable version of the facts available to State Farm—that Lorraine Collacchi received a cancellation notice at the policy address but no notices were mailed to Mark Collacchi at the Clackamas address—State Farm nonetheless failed to mail cancellation notices that complied with its own contractual requirements. State Farm's failure to meet that obligation renders the cancellation notices it did mail to the SE Carmichael Ct. address insufficient to cancel the policies. Consequently, the Court finds all three policies were still in effect at the time of Brenna Collacchi's death.

With regard to Plaintiff's argument that the way State Farm applied the late payment likewise rendered the cancellation of the three policies ineffective, the Court finds there is a genuine issue of material fact that exists on this evidentiary record and the matter cannot be resolved in either party's favor at the summary judgment stage. As the Court finds that the policies were all in effect at the time of the accident, Plaintiff need not prevail on this particular issue to have the enforceability of the contracts decided in its favor.

      b. Internal Stacking of UIM Coverage

Because the Court finds that the three policies in question were in effect at the time of Brenna Collacchi's death, the Court next turns to the issue of whether the anti-stacking language for the UIM limits in the policies is valid and enforceable under current Oregon law. The parties agree that the language in the policies themselves prohibits stacking of UIM limits; it reads: "the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies." *Weathers Dec.*, Ex. 1, p. 29. The parties also agree on the same basic analytical framework for determining whether the contractual anti-stacking language is enforceable—and that is to determine whether or not it is in conflict with the current applicable law in Oregon regarding UIM coverage. ORS 742.504(1) to (12) sets out a comprehensive model UM/UIM policy of insurance. *Vega v. Farmers Insurance*, 323 Or 291, 302 (1996). Any UIM policy provisions that are less favorable to an insured than those required under ORS 742.504(1) to (12) are unenforceable against an insured in Oregon. *Erickson v.*

4 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Farmers Ins. Co. of Oregon*, 331 Or 681, 685 (2001). However, an insurer may add terms to an Oregon policy that are neutral or more favorable to the insured than those required by the statutes. *Id.*

Under ORS 742.504, "[e]very policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy." The provision at issue in this action is ORS 742.504(9), which reads:

With respect to bodily injury to an insured:

(A) While occupying a vehicle owned by a named insured under this coverage, the insurance under this coverage is primary.

(B) While occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any primary insurance available to the occupant that is similar to this coverage, and this excess insurance coverage shall then apply only to the sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages for bodily injury or death that is caused by accident and that arises out of owning, maintaining or using an uninsured vehicle.

In order to resolve the cross-motions, the Court must determine if the internal anti-stacking language from the State Farm policies is less favorable than the law for UIM coverage set forth in ORS 742.504(9); if not, then the provisions are enforceable and, if so, then the policy provisions are invalid and unenforceable.

On its face, ORS 742.504(9) neither explicitly allows nor prohibits internal stacking of UIM coverage where multiple policies are in force. The current version of ORS 742.504(9) has been in effect since 2016. It is the result of a successful effort to significantly amend the law in the area of UIM coverage. In *Heffner v. Farmers Ins. Co. of Oregon*, 213 Or App 289, 295–96 (2007), under the previous version of the statute, the Oregon Court of Appeals found that anti-stacking language for UIM coverage in insurance contracts was then valid and enforceable, finding the prior version of ORS 742.504(9) to be consistent with anti-stacking language in the contracts. The language in ORS 742.504(9) on which the

5 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EXHIBIT 2: Page 5 of 8

*Heffner* Court relied has been completely eliminated from the current text of the statute.[2] The parties agree that the primary purpose of the revisions to ORS 742.504(9), as enacted by the successful passage of SB 411, was to allow the stacking of an insured's UIM coverage on top of, or in addition to, the at-fault driver's liability limit. Before the SB 411 amendments to ORS 742.504(9), UIM benefits were measured by comparing the UIM limit in the insured's policy to the tortfeasor's liability limit, which was subtracted from the UIM benefit to be paid. *Vogelin v. American Family Mut. Ins. Co.*, 346 Or 490, 506 (2009).

This Court finds that the internal anti-stacking language for UIM coverage in the Collacchi's policies is void and unenforceable because it conflicts with the current version of ORS 742.504(9). The Court reaches this conclusion based in part on the elimination of the anti-stacking language in the prior statute under which internal anti-stacking UIM language in contracts had been upheld; the specific language in the current version of ORS 742.504(9); as well as the discussions of the intent of the changes made by SB 411 at the time it was proposed. The position papers in support of SB 411 stress the importance of allowing the stacking of an insured's UIM coverage on top of the at-fault driver's liability coverage, so that Oregon insurance holders get the benefit of the insurance for which they have paid. *Spooner Dec.*, Ex.s 5 & 7. The press releases from the Oregon House and Senate both stress that SB 411 changes will allow Oregon consumers to access the coverage they pay for every month, some of which was previously inaccessible to them under the previous version of the law. *Id.*, Ex.s 9-10. Upholding the internal anti-stacking provisions of the State Farm policies does not allow the Collacchis to access all of the UIM coverage they were paying for every month; such a decision would be at cross-purposes with the

---

[2] "ORS 742.504(9)(b) consists of two limitations that apply to cases in which an insured suffers bodily injury caused by the driver of an uninsured or underinsured vehicle and there is more than one insurer involved. First, the statute imposes a limit on the total amount of coverage that the insured may receive. That limit consists of 'the higher of the applicable limits of this insurance or such other insurance' as may otherwise apply. *See Erickson*, 331 Or. at 686, 21 P.3d 90 ("[P]aragraph (b) [of ORS 742.504] permits an insurer to limit its UM coverage to an amount of damages deemed not to exceed the higher of the applicable limits of the policies."). Second, the statute imposes a limit on the amount any single insurer must contribute to that total. That limit is expressed in terms of a fraction, *viz.*, the limits of a single policy divided by the 'sum of the applicable limits of liability of this insurance and such other insurance.'" *Heffner v. Farmers Ins. Co. of Oregon*, 213 Or App 289, 295–96 (2007).

6 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SB 411 changes to ORS 742.504(9), which ensured that Oregonians are able to enjoy the benefit of the actual UIM insurance for which they have paid. Additionally, the language in the current version of ORS 742.504(9) makes clear that the purpose of UIM coverage as excess insurance is to compensate the insured for what the insured "is legally entitled to recover as damages for bodily injury or death…." The statute contemplates that UIM coverage will be used to pay for the remainder of the insured's damages above and beyond what the policy of the at-fault driver pays. Here, State Farm maintains it must pay only the UIM policy limit from a single policy to Brenna Collacchi's estate, regardless of the amount of damages sustained, and regardless of the fact that she had UIM coverage from multiple policies. Payment from a single UIM policy fails to compensate the estate for the remainder of the damages the estate has accrued and is "legally entitled" to recover; accordingly, the UIM anti-stacking policy language is in conflict with ORS 742.504(9) and provides the estate with less coverage than ORS 742.504(9) requires.

III. Conclusion

For the reasons set forth above, the three State Farm policies that were the subject of State Farm's legally insufficient cancellation notices were in full force and effect at the time of the car accident that killed Brenna Collacchi. Because the internal UIM anti-stacking language of the policies conflicts with ORS 742.504(9), those provisions are void and the UIM coverage from all applicable policies can be stacked to compensate the estate for damages subsequently proven at trial in excess of the amount already tendered by State Farm for UIM coverage.

///
///
///
///
///
///
///
///

7 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED as to the legal issues it sought to have to determined. Summary Judgment is also GRANTED for Plaintiff as to Defendant's Declaratory Judgment Counterclaim. Defendant's Motion for Summary Judgment is DENIED in its entirety.

DATED this 3rd day of December, 2019.

Katharine von Ter Stegge
Multnomah County Circuit Court Judge

Original: Court File
cc: Michael Rosenbaum/Aaron Reichenberger, Plaintiff's Counsel
Ralph Spooner, Counsel for Defendant

8 — OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EXHIBIT 2: Page 8 of 8